1  Behrooz Mohazzabi
   766 Edgewater Blvd., Apt 104
2  Foster City, CA 94404
   Telephone: (925) 368-0757
3  Email: brucemohazzabi@gmail.com

4
   Plaintiff in Pro Per
5

6

7

8              **SUPERIOR COURT OF CALIFORNIA**

9                **COUNTY OF SAN FRANCISCO**

10                                  CASE NO.   CGC-21-591218

11  BEHROOZ MOHAZZABI, an individual

12              Plaintiff,

13  v.                                **COMPLAINT FOR FILING FALSE**
                                       **DOCUMENTS**
14  WELLS FARGO BANK

15              Defendant.

16

17

18                    **INTRODUCTION**

19      1.  Plaintiff, Behrooz Mohazzabi, is 76 years of age, living in 766 Edgewater Blvd.,

20  Apt. 104 Foster City California.

21      2.  Plaintiff filed a pending Complaint filed on July 23, 2020 against an individual,

22  Lorena Barba, with the Superior Court of California, County of Los Ageless - Case No.

23  20PSCP00194.

24      3.  Based on California rules, a copy of the Complaint must be served to the

25  defendant and a Proof of Service must be filed with the court.  Since there was no physical

26  address listed for Lorena Barba, Plaintiff called the telephone number (877) 548-9230, which

27  was provided by Lorena Barba on her letter dated November 21, 2016 (Exhibit 1).  Plaintiff

28  explained the reason for his call and asked for the physical address of Lorena Barba in order to

NO SUMMONS ISSUED

**FILED**

San Francisco County Superior Court

MAY 03 2021

CLERK OF THE COURT

BY:_____

Deputy Clerk

1   serve the Complaint.  Wells Fargo Bank representative(s) provided Lorena Barba's telephone
2   number instead, (336) 499-6486 to the Plaintiff.

3       4.  Plaintiff dialed (336) 499-6486 on July 29, 2020 at 12:10 P.M. CDT, which lasted
4   for 16 seconds before Plaintiff disconnected the call without leaving any message, and never
5   called that number again.  Lorena Barba dialed Plaintiff at 01:19 P.M. CDT of the same day and
6   the call lasted for 4 minutes and 47 seconds (Exhibit 2).  Plaintiff introduced himself and
7   explained the reason for his call, and asked for a physical address to serve Lorena Barba a copy
8   of the complaint.  However, Lorena Barba refused to provide this information and refused
9   service.

10      5.  On August 10, 2020, Plaintiff received a message from a man called "Matt",
11  telephone number (626) 324-4995, who asked Plaintiff to give call him back.  On August 11,
12  2020 around 3:30 P.M., Plaintiff returned Matt's call.  After Plaintiff introduced himself, Matt
13  started shouting and threatening Plaintiff with very rude language and said that he is working in
14  security for Wells Fargo Bank.  Matt continued to say something to the effect of, "you will be
15  trialed and you will go to jail unless you withdraw your Complaint against Lorena Barba".  The
16  Plaintiff reported this to the local police station, and officer Michael Acosta called Matt and
17  talked to him.  Officer Acosta told Plaintiff that if Matt bothers him again, to come back to the
18  police station.  Considering the age of the Plaintiff, he got anxiety. (See Exhibit 3).

19      6.  On August 20, 2020, Plaintiff was served a Restraining Order for Workplace
20  Violence from Wells Fargo Bank, N.A. against Plaintiff., Case No. 20PSRO00945 (Exhibit 4).

21      7.  Court hearing date for the Restraining Order was set to September 3, 2020 at
22  10:30 A.M.

23      8.  Plaintiff lost the Restraining Order Case.  A copy of the Reporter's Transcript of
24  Proceedings from the September 3, 2020 court hearing is attached hereto as (Exhibit 5).

25  //
26  ///
27  ///
28  ///

**UNDISPUTED FACTS**

1.   Plaintiff dialed (336) 499-6486 only once for 16 seconds and did not talk to anybody nor left any messages and never dialed this number again. Plaintiff's AT&T Prepaid Account History (total usage: voice, text, data, and details for 925-368-0757 from July 24, 2020 to August 23, 2020) is attached as Exhibit 2.

2.   Wells Fargo's security officer, "Matt", threatened Plaintiff on August 11, 2020. See Exhibit 3.

3.   Wells Fargo's attorney, Mark Wraight, made false accusations in his declaration, which is malicious. Page 2, Paragraph 6 of Exhibit 4, wrote:

> "I am informed and believe that on or about July 29,2020--two days after the arbitration ended in favor of Wells Fargo--Ms. Barba and her husband received multiple harassing phone calls from someone calling from (XXX) XXX-0757 phone number."

Counsel Mark Wraight related the filing of the Complaint against Lorena Barba to the arbitration case for two reasons; a) to mislead the court, b) as malice and to harass Plaintiff, and c) elder abuse. Since Wells' Fargo's attorney is well aware of the Complaint against Lorena Barba filed on July 23, 2020 before the result of arbitration besides, it took Plaintiff almost 20 days to prepare the Complaint and one week for the filing process.

4.   Lorena Barba lied in her declaration in Exhibit 4 when she wrote:

> "In late July my husband and I began receiving multiple harassing calls on our personal cell phones, a call from someone using the phone number (XXX) XXX-0757. My husband received about four calls from this number and told the individual to stop calling him. The individual demanded to speak with Lorena Barba. I received about three or four calls from the same number. I know this because our phones both have caller ID. The individual calling sounded like a man. He demanded my home address so he could serve me with a lawsuit filed by Behrooz Mohazzabi...."

5.   Lorena Barba lied repeatedly under oath in the court hearing that she received a number of calls from Plaintiff. The transcript of court hearing is enclosed as Exhibit 5.

**CAUSES OF ACTION**

1.   Defendant, Wells Fargo Bank, based on false accusation, which is malicious, filed a Restraining Order against Plaintiff, while Plaintiff lives 350 miles away from Los Angeles

1  County.

2      2.  Defendant knew that they could have had the alleged hard evidence, simply by

3  enclosing the list of all calls from Lorena Barba rather than a case of "he said, she said".  But

4  Defendant knowingly and intentionally did not include any evidence because they have none,

5  since the objective of Defendant was to add to Plaintiff's emotional anguish, suffering, and

6  malicious elder abuse PC 368.

7      3.  Defendant asked their security officer, "Matt", to call Plaintiff in order to malice

8  him and cause of mental and physical harm on Plaintiff.

9      4.  Defendant's actions have been abusive and fraudulent malicious and with reckless

10 indifference, outside all bounds of acceptable behavior.

11     5.  Defendant exploited the situation to interfere and create a rigged case, without any

12 evidence such as getting the list of all telephone calls from Lorena Barba for the period that she

13 claimed Plaintiff made harassing phone calls.

14     6.  Defendant's attorney, Mark Wraight, lied (as quoted above under undisputed

15 facts), and engaged in preparing or offering false evidence, which is malicious.  On Page 3,

16 Paragraph 14 of Exhibit 4, Mark Wraight wrote:

17     "Mr. Mohazzabi has a history of threatening violence--albeit to himself. Attached
       as Exhibit D is true and correct copy of two emails from Mr. Mohazzabi to Wells
18     Fargo threatening to harm himself.".

19 On the afternoon of October 28, 2016 at 12:06 P.M., one of the tellers in the branch of Wells

20 Fargo stole $20,000.00 from Plaintiff's account.  Plaintiff reported the incident to Wells Fargo

21 Bank's representative, Lorena Barba.  On November 21, 2016, Lorena Barba wrote to Plaintiff

22 on  Exhibit 1, stating:

23     "Furthermore, branch video was obtained of the disputed transaction and upon
       reviewing, the branch video; personal Banker JASON PAUL DAVIS at the
24     MISSION BAY Branch which is located on 286 KING ST. SAN FRANCISCO,
       CA 94107 has identified you performing the transaction.".
25

26 On March 31, 2020, Lorena Barba admitted that she lied in her letter dated November 19, 2016

27 as shown on Page 3, Paragraph 10 of (Exhibit 6), stating:

28     "As part of my work on Mr. Mohazzabi's claim, I prepared and sent him a letter

dated 21, 2016. In that letter I wrote ".. branch video was obtained..." My
reference to 'video' was intended to refer to the transactional snapshots (i.e. still
images) attached hereto. As far as I know, video in the traditional sense of a
moving image was not obtained from the Wells Fargo Tower Branch from
October 2016. I never received moving images, but only still images attached
hereto."

Lorena Barba confessed under penalty of perjury that she lied for more than 3 and a half years,

though Plaintiff responded to her letter on January 28, 2016 (Exhibit 7). However, Lorena Barba

did not come forward with the truth then. Plaintiff contacted the Board of Communications at

Wells Fargo to get his stolen money back from Wells Fargo Bank. There was plenty of

communication between Marylin, from the Board of Communications, and Plaintiff for weeks.

Marilyn used to make tortuous calls to Plaintiff. A few times, Plaintiff mentioned to her that her

language and behavior, as well as that of Wells Fargo, is beyond Plaintiff's tolerance limit. On

one occasion, Marylin made the Plaintiff cry over one of their telephone conversations –

especially when she rejected Plaintiff the proof that Plaintiff physically could not be at the Wells

Fargo branch for unauthorized transaction. Plaintiff got a LVMPD report (Exhibit 8), Detective

Craig MacGregor reported on April 21, 2017 that two Wells Fargo investigators, Theresa

(702)368-5781 and Jennifer (702) 368-6785, confirmed that there was no surveillance video of

the $20,000.00 withdrawal on the afternoon of October 28, 2016. One can only imagine how

frustrating it was for Plaintiff not to be able to get his money back from Wells Fargo after

LVMPD's report. One day Plaintiff got so frustrated that he decided to end his life, with hope

that justice would be served after his death. However, he was caught by Law Enforcement and

hospitalized in a special hospital for a few days. Plaintiff went through special treatment and

medication but he learned a lot from the psychologists and other patients to fight for his right.

One should be very strong to fight for his right especially with Wells Fargo Bank, since Wells

Fargo has no boundary for their malicious acts and harassment against Plaintiff. Please consider

the recently rigged file case that was set up by Wells Fargo and its attorneys against Plaintiff.

Defendant set up a restraining order case based on Ms. Ocana (Lorena Barba) false accusations,

whereas Defendant and its attorneys knew that Ms. Ocana is a professional liar and cheater due

to the following reasons: Ms. Ocana under penalty of perjury on March 31,2020 Exhibit 6;

attached several snapshots of the Claimant while withdrawing money. She said all these

1  snapshots from Plaintiff showing that the Plaintiff withdrew money from one branch so called

2  "Tower Building Branch" in Las Vegas. On April 22, 2020 (Exhibit 9) Defendant and its

3  attorneys were informed by Plaintiff by illustrating undisputed evidence that only 2 snapshots

4  belonged to the withdrawal of Tower Building Branch Las Vegas the rest of snapshots were

5  belonging to different places. Therefore Plaintiff proved; that Ms. Ocana (Ms.Lorina Barab)

6  declaration under penalty of perjury on March 31, 2020 (Appendix 6) was all lies and false

7  accusations. On April 28, 2020 (Appendix 10) Ms. Ocana under penalty of perjury formally

8  accepted that she lied under penalty of perjury on March 31, 2020 (Appendix 6). All snapshots

9  belonged to different branches except two snapshots which were performed by Claimant from

10  the Tower Building Branch in Las Vegas.

11          7.   Defendant's acts of willful interference were unlawful and unjustified.

12  ///

13  ///

14                              **PRAYER**

15          As a direct and approximate result of Defendant's actions for a) malice b) oppression

16  c) harassment, d) elder abuse, and e) false documents; Plaintiff is requesting for punitive

17  damages as well as $180,000.00 for compensation.

18

19

20

21  DATED: May 3, 2021          By: _____

22                                  Behrooz Mohazzabi
                                    Plaintiff in Pro Per

23

24

25

26

27

28

Exhibit 1



Liability Fraud and Claims Department
P. O. Box 5810
MAC E2001-013
El Monte  CA  91734-1810

November 21, 2016

BEHROOZ MOHAZZABI
POD BORZOYEH MOHAZZABI
AND ROOZBEH MOHAZZABI
PO BOX 646
LOS ALTOS CA 94023-0646

Subject: Resolution of your fraud claim
Claim #: 2016111500326
For accounts: xxxxxx-3494

Dear BEHROOZ MOHAZZABI,

Wells Fargo's Fraud Claims Department has completed its review of your claim for reimbursement.

Your claim includes one in branch withdrawal in the amount of $20,000.00 which posted to your account on 10/28/2016.

In researching your inquiry about possible fraud we found that your CA state issued Driver's License was used as identification in the disputed transactions.  In addition, the transaction was Pin validated.

Furthermore, branch video was obtained of the disputed transaction and upon reviewing the branch video; Personal Banker JASON PAUL DAVIS at the MISSION BAY Branch which is located on 286 KING ST. SAN FRANCISCO, CA 94107 has identified you as performing the transaction.

Based on the above information, your claim for reimbursement has been denied.

If you have any questions, please contact us at (877) 548-9230, Monday through Friday between 7:00 a.m. to 6:00 p.m., and Saturday between 7:00 a.m. and 3:00 p.m. Pacific Time.

Thank you.

Sincerely,

Lorena Barba
Financial Crimes Specialist
Liability Fraud and Claims Department

# Exhibit 2

### AT&T PREPAID Account History

### Total Usage - Voice, Text, Data Details for 925-368-0757 From 7/24/2020 to 8/23/2020

| Usage | Contact | Date | Time | Duration | Charges |
|---|---|---|---|---|---|
| Outgoing Call | 619-▓▓▓▓ | 7/24/2020 | 01:26:48 PM CDT | 0min 29sec | $0.00 |
| Outgoing Call | 619-▓▓▓▓ | 7/24/2020 | 01:27:51 PM CDT | 2min 48sec | $0.00 |
| Outgoing Call | 213-▓▓▓▓ | 7/24/2020 | 01:31:27 PM CDT | 0min 17sec | $0.00 |
| Outgoing Call | 619-▓▓▓▓ | 7/24/2020 | 01:34:07 PM CDT | 1min 2sec | $0.00 |
| Outgoing Call | 213-▓▓▓▓ | 7/24/2020 | 01:35:16 PM CDT | 0min 47sec | $0.00 |
| Data | NA | 7/24/2020 | 01:35:26 PM CDT | 281.68 MB | $0.00 |
| Outgoing Call | 213-▓▓▓▓ | 7/24/2020 | 05:53:31 PM CDT | 0min 9sec | $0.00 |
| Data | NA | 7/25/2020 | 02:00:44 AM CDT | 270.69 MB | $0.00 |
| Incoming Call | 650-▓▓▓▓ | 7/25/2020 | 02:13:46 PM CDT | 3min 45sec | $0.00 |
| Data | NA | 7/25/2020 | 03:00:50 PM CDT | 175.63 MB | $0.00 |
| Data | NA | 7/26/2020 | 07:34:05 AM CDT | 84.06 MB | $0.00 |
| Data | NA | 7/27/2020 | 01:34:08 AM CDT | 223.91 MB | $0.00 |
| Outgoing Call | 213-3▓▓▓▓ | 7/27/2020 | 12:43:50 PM CDT | 1min 32sec | $0.00 |
| Data | NA | 7/27/2020 | 01:19:55 PM CDT | 127.31 MB | $0.00 |
| Outgoing Call | 650-▓▓▓▓ | 7/27/2020 | 01:29:48 PM CDT | 9min 5sec | $0.00 |
| Data | NA | 7/28/2020 | 06:21:06 AM CDT | 190.72 MB | $0.00 |
| Outgoing Call | 213-▓▓▓▓ | 7/28/2020 | 01:08:55 PM CDT | 1min 34sec | $0.00 |
| Outgoing Call | 619-▓▓▓▓ | 7/28/2020 | 08:58:10 PM CDT | 0min 21sec | $0.00 |
| Outgoing Call | 213-3▓▓▓▓ | 7/28/2020 | 09:10:35 PM CDT | 8min 0sec | $0.00 |
| Incoming Call | 213-3▓▓▓▓ | 7/28/2020 | 09:32:22 PM CDT | 61.59 MB | $0.00 |
| Data | NA | 7/29/2020 | 11:06:06 AM CDT | 106.80 MB | $0.00 |
| Data | NA | 7/29/2020 | 11:33:27 AM CDT | 3min 54sec | $0.00 |
| Outgoing Call | 877-▓▓▓▓ | 7/29/2020 | 11:38:01 AM CDT | 4min 17sec | $0.00 |
| Outgoing Call | 844-▓▓▓▓ | 7/29/2020 | 11:42:50 AM CDT | 19min 13sec | $0.00 |
| Outgoing Call | 877-548-9230 | 7/29/2020 | 12:02:23 PM CDT | 7min 8sec | $0.00 |
| Outgoing Call | 877-548-9230 | 7/29/2020 | 12:10:09 PM CDT | 0min 16sec | $0.00 |
| Outgoing Call | 336-499-6486 | 7/29/2020 | 12:14:19 PM CDT | 2min 46sec | $0.00 |
| Outgoing Call | 619-▓▓▓▓ | 7/29/2020 | 12:32:02 PM CDT | 0min 47sec | $0.00 |
| Outgoing Call | 626-▓▓▓▓ | 7/29/2020 | 12:45:03 PM CDT | 0min 51sec | $0.00 |
| Incoming Call | 626-▓▓▓▓ | 7/29/2020 | 12:53:11 PM CDT | 0min 27sec | $0.00 |
| Outgoing Call | 650-▓▓▓▓ | 7/29/2020 | 12:58:06 PM CDT | 3min 41sec | $0.00 |
| Incoming Call | 336-499-6486 | 7/29/2020 | 01:19:23 PM CDT | 4min 47sec | $0.00 |
| Outgoing Text/Message | 213-▓▓▓▓ | 7/29/2020 | 01:33:58 PM CDT | NA | $0.00 |
| Outgoing Call | 844-▓▓▓▓ | 7/29/2020 | 03:18:17 PM CDT | 28min 22sec | $0.00 |

*Lorena Barba*

1

| Usage | Contact | Date | Time | Duration | Charges |
|---|---|---|---|---|---|
| Outgoing Text/Message | 213-■■■■ | 7/29/2020 | 04:45:10 PM CDT | NA | $0.00 |
| Outgoing Call | 213-■■■■ | 7/29/2020 | 04:45:39 PM CDT | 1min 1sec | $0.00 |
| Outgoing Call | 844-■■■■ | 7/29/2020 | 06:00:28 PM CDT | 0min 59sec | $0.00 |
| Outgoing Call | 650-■■■■ | 7/29/2020 | 07:17:37 PM CDT | 1min 51sec | $0.00 |
| Incoming Call | 909-■■■■ | 7/29/2020 | 07:58:33 PM CDT | 0min 10sec | $0.00 |
| Data | NA | 7/30/2020 | 04:57:26 AM CDT | 82.30 MB | $0.00 |
| Outgoing Call | 650-■■■■ | 7/30/2020 | 12:22:04 PM CDT | 3min 47sec | $0.00 |
| Outgoing Call | 626-■■■■ | 7/30/2020 | 12:26:56 PM CDT | 0min 18sec | $0.00 |
| Outgoing Call | 844-■■■■ | 7/30/2020 | 12:30:16 PM CDT | 40min 12sec | $0.00 |
| Outgoing Call | 619-■■■■ | 7/30/2020 | 01:16:31 PM CDT | 2min 5sec | $0.00 |
| Outgoing Call | 650-■■■■ | 7/30/2020 | 01:48:54 PM CDT | 2min 47sec | $0.00 |
| Outgoing Call | 650-■■■■ | 7/30/2020 | 02:48:52 PM CDT | 0min 4sec | $0.00 |
| Outgoing Call | 619-■■■■ | 7/30/2020 | 02:49:06 PM CDT | 1min 32sec | $0.00 |
| Outgoing Call | 800-■■■■ | 7/30/2020 | 03:19:28 PM CDT | 10min 55sec | $0.00 |
| Outgoing Call | 650-■■■■ | 7/30/2020 | 03:30:32 PM CDT | 1min 30sec | $0.00 |
| Outgoing Call | 800-■■■■ | 7/30/2020 | 03:33:34 PM CDT | 53min 6sec | $0.00 |
| Outgoing Call | 800-■■■■ | 7/30/2020 | 04:27:51 PM CDT | 4min 22sec | $0.00 |
| Outgoing Call | 213-■■■■ | 7/30/2020 | 04:35:12 PM CDT | 1min 48sec | $0.00 |
| Incoming Text/Message | C0D-■■■■ | 7/30/2020 | 04:58:34 PM CDT | NA | $0.00 |
| Outgoing Call | 800-■■■■ | 7/30/2020 | 05:00:44 PM CDT | 36min 37sec | $0.00 |
| Incoming Text/Message | C0D-■■■■ | 7/30/2020 | 05:26:08 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-■■■■ | 7/30/2020 | 05:33:31 PM CDT | NA | $0.00 |
| Outgoing Call | 650-■■■■ | 7/30/2020 | 05:37:57 PM CDT | 1min 50sec | $0.00 |
| Voicemail | 209-■■■■ | 7/30/2020 | 08:39:22 PM CDT | 0min 36sec | $0.00 |
| Data | NA | 7/30/2020 | 10:57:29 PM CDT | 101.67 MB | $0.00 |
| Voicemail | 209-■■■■ | 7/31/2020 | 11:51:55 AM CDT | 0min 23sec | $0.00 |
| Incoming Call | 888-■■■■ | 7/31/2020 | 12:09:12 PM CDT | 0min 56sec | $0.00 |
| Incoming Text/Message | 213-■■■■ | 7/31/2020 | 12:53:30 PM CDT | NA | $0.00 |
| Outgoing Call | 619-■■■■ | 7/31/2020 | 12:54:42 PM CDT | 2min 41sec | $0.00 |
| Outgoing Call | 619-■■■■ | 7/31/2020 | 04:08:54 PM CDT | 1min 31sec | $0.00 |
| Data | NA | 7/31/2020 | 04:57:31 PM CDT | 299.45 MB | $0.00 |
| Incoming Call | 619-■■■■ | 7/31/2020 | 05:22:04 PM CDT | 0min 51sec | $0.00 |
| Data | NA | 8/1/2020 | 04:37:16 AM CDT | 298.36 MB | $0.00 |
| Incoming Text/Message | 1C0DE1410200500 | 8/1/2020 | 01:22:25 PM CDT | NA | $0.00 |
| Outgoing Call | 661-■■■■ | 8/1/2020 | 01:24:21 PM CDT | 0min 9sec | $0.00 |
| Outgoing Call | 661-■■■■ | 8/1/2020 | 01:25:02 PM CDT | 4min 41sec | $0.00 |
| Outgoing Call | 877-■■■■ | 8/1/2020 | 01:50:46 PM CDT | 5min 8sec | $0.00 |

| <u>Usage</u> | <u>Contact</u> | <u>Date</u> | <u>Time</u> | <u>Duration</u> | <u>Charges</u> |
|---|---|---|---|---|---|
| Data | NA | 8/1/2020 | 04:57:46 PM CDT | 414.25 MB | $0.00 |
| Data | NA | 8/2/2020 | 01:13:18 AM CDT | 479.57 MB | $0.00 |
| Data | NA | 8/2/2020 | 06:34:20 AM CDT | 194.49 MB | $0.00 |
| Outgoing Call | 877-█████████ | 8/2/2020 | 05:38:28 PM CDT | 3min 11sec | $0.00 |
| Outgoing Call | 877-████████ | 8/2/2020 | 05:41:47 PM CDT | 10min 51sec | $0.00 |
| Data | NA | 8/2/2020 | 09:44:31 CDT | 490.40 MB | $0.00 |
| Data | NA | 8/3/2020 | 01:56:26 AM CDT | 113.20 MB | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/3/2020 | 10:02:59 AM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/3/2020 | 10:02:59 AM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/3/2020 | 10:03:09 AM CDT | NA | $0.00 |
| Data | NA | 8/3/2020 | 10:09:29 AM CDT | 269.22 MB | $0.00 |
| Incoming Call | 408-████████ | 8/3/2020 | 01:24:56 PM CDT | 0min 14sec | $0.00 |
| Outgoing Call | 866-████████ | 8/3/2020 | 01:59:35 PM CDT | 4min 37sec | $0.00 |
| Outgoing Call | 866-████████ | 8/3/2020 | 02:04:47 PM CDT | 2min 40sec | $0.00 |
| Outgoing Call | 866-████████ | 8/3/2020 | 02:08:34 PM CDT | 2min 40sec | $0.00 |
| Incoming Call | 917-████████ | 8/3/2020 | 02:17:29 PM CDT | 0min 13sec | $0.00 |
| Outgoing Call | 855-3█████████ | 8/3/2020 | 02:20:36 PM CDT | 0min 5sec | $0.00 |
| Outgoing Call | 855-3█████████ | 8/3/2020 | 02:21:00 PM CDT | 31min 26sec | $0.00 |
| Outgoing Call | 855-3█████████ | 8/3/2020 | 02:52:50 PM CDT | 31min 3sec | $0.00 |
| Outgoing Call | 800-9█████████ | 8/3/2020 | 03:38:19 PM CDT | 21min 10sec | $0.00 |
| Outgoing Call | 619-2█████████ | 8/3/2020 | 04:05:44 PM CDT | 1min 14sec | $0.00 |
| Outgoing Call | 619-2█████████ | 8/3/2020 | 04:07:12 PM CDT | 0min 45sec | $0.00 |
| Outgoing Call | 855-3█████████ | 8/3/2020 | 04:46:35 PM CDT | 6min 41sec | $0.00 |
| Incoming Call | 800-█████████ | 8/3/2020 | 05:07:22 PM CDT | 3min 5sec | $0.00 |
| Outgoing Call | 844-█████████ | 8/3/2020 | 05:11:13 PM CDT | 26min 3sec | $0.00 |
| Incoming Text/Message | C0D-█████████ | 8/3/2020 | 05:25:11 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-█████████ | 8/3/2020 | 05:42:02 PM CDT | NA | $0.00 |
| Outgoing Call | 800-8█████████ | 8/3/2020 | 06:23:34 PM CDT | 18min 58sec | $0.00 |
| Outgoing Call | 800-4█████████ | 8/3/2020 | 07:48:36 PM CDT | 56min 42sec | $0.00 |
| Incoming Text/Message | 424-2█████████ | 8/3/2020 | 07:56:02 PM CDT | NA | $0.00 |
| Incoming Text/Message | 424-2█████████ | 8/3/2020 | 07:56:02 PM CDT | NA | $0.00 |
| Incoming Text/Message | 424-█████████ | 8/3/2020 | 07:56:02 PM CDT | NA | $0.00 |
| Voicemail | 209-█████████ | 8/3/2020 | 07:57:46 PM CDT | 1min 55sec | $0.00 |
| Outgoing Call | 855-█████████ | 8/3/2020 | 08:46:43 PM CDT | 0min 45sec | $0.00 |
| Outgoing Call | 855-█████████ | 8/3/2020 | 08:47:46 PM CDT | 0min 41sec | $0.00 |
| Outgoing Call | 855-8█████████ | 8/3/2020 | 08:52:11 PM CDT | 0min 17sec | $0.00 |
| Data | NA | 8/4/2020 | 12:14:55 AM CDT | 540.01 MB | $0.00 |

| Usage | Contact | Date | Time | Duration | Charges |
|---|---|---|---|---|---|
| Data | NA | 8/4/2020 | 02:36:09 AM CDT | 342.74 MB | $0.00 |
| Outgoing Call | 619-███████ | 8/4/2020 | 12:29:45 PM CDT | 0min 39sec | $0.00 |
| Outgoing Call | 619-███████ | 8/4/2020 | 12:30:53 PM CDT | 0min 48sec | $0.00 |
| Incoming Call | 888-███████ | 8/4/2020 | 12:42:03 PM CDT | 0min 44sec | $0.00 |
| Data | NA | 8/4/2020 | 01:35:13 PM CDT | 366.84 MB | $0.00 |
| Outgoing Call | 619-███████ | 8/4/2020 | 01:39:40 PM CDT | 5min 5sec | $0.00 |
| Incoming Call | 619-███████ | 8/4/2020 | 02:08:48 PM CDT | 0min 51sec | $0.00 |
| Incoming Call | 855-███████ | 8/4/2020 | 02:34:39 PM CDT | 0min 13sec | $0.00 |
| Incoming Call | 925-███████ | 8/4/2020 | 02:47:28 PM CDT | 0min 36sec | $0.00 |
| Outgoing Call | 609-███████ | 8/4/2020 | 03:20:14 PM CDT | 4min 58sec | $0.00 |
| Outgoing Call | 609-███████ | 8/4/2020 | 03:26:19 PM CDT | 22min 15sec | $0.00 |
| Incoming Call | 925-███████ | 8/4/2020 | 06:29:43 PM CDT | 36min 18sec | $0.00 |
| Incoming Call | 510-███████ | 8/4/2020 | 08:07:20 PM CDT | 0min 12sec | $0.00 |
| Data | NA | 8/5/2020 | 12:18:46 AM CDT | 436.43 MB | $0.00 |
| Data | NA | 8/5/2020 | 06:12:43 AM CDT | 463.27 MB | $0.00 |
| Outgoing Call | 800-███████ | 8/5/2020 | 12:12:53 PM CDT | 3min 49sec | $0.00 |
| Outgoing Call | 800-███████ | 8/5/2020 | 12:18:30 PM CDT | 20min 4sec | $0.00 |
| Outgoing Call | 888-███████ | 8/5/2020 | 12:58:01 PM CDT | 9min 59sec | $0.00 |
| Outgoing Call | 619-255-0643 | 8/5/2020 | 01:11:48 PM CDT | 0min 36sec | $0.00 |
| Data | NA | 8/5/2020 | 01:18:20 PM CDT | 398.40 MB | $0.00 |
| Outgoing Call | 855-███████ | 8/5/2020 | 01:38:04 PM CDT | 6min 23sec | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/5/2020 | 02:24:30 PM CDT | NA | $0.00 |
| Incoming Call | 408-███████ | 8/5/2020 | 04:51:42 PM CDT | 3min 35sec | $0.00 |
| Outgoing Call | 650-███████ | 8/5/2020 | 05:07:00 PM CDT | 3min 22sec | $0.00 |
| Incoming Call | 925-███████ | 8/5/2020 | 06:08:09 PM CDT | 47min 52sec | $0.00 |
| Data | NA | 8/5/2020 | 10:07:32 PM CDT | 540.01 MB | $0.00 |
| Data | NA | 8/5/2020 | 11:47:32 PM CDT | 540.01 MB | $0.00 |
| Data | NA | 8/6/2020 | 01:44:11 AM CDT | 331.05 MB | $0.00 |
| Incoming Call | 191627785503 | 8/6/2020 | 11:29:02 AM CDT | 0min 44sec | $0.00 |
| Data | NA | 8/6/2020 | 12:21:09 PM CDT | 281.62 MB | $0.00 |
| Outgoing Call | 855-███████ | 8/6/2020 | 12:47:54 PM CDT | 0min 9sec | $0.00 |
| Outgoing Call | 800-███████ | 8/6/2020 | 12:49:26 PM CDT | 2min 21sec | $0.00 |
| Outgoing Call | 800-███████ | 8/6/2020 | 12:51:58 PM CDT | 27min 22sec | $0.00 |
| Outgoing Call | 800-███████ | 8/6/2020 | 01:19:39 PM CDT | 51min 23sec | $0.00 |
| Outgoing Call | 844-███████ | 8/6/2020 | 02:15:43 PM CDT | 1hr 1min 32sec | $0.00 |
| Voicemail | 209-███████ | 8/6/2020 | 02:39:22 PM CDT | 0min 11sec | $0.00 |
| Voicemail | 209-███████ | 8/6/2020 | 02:55:03 PM CDT | 0min 11sec | $0.00 |

4

| Usage | Contact | Date | Time | Duration | Charges |
|---|---|---|---|---|---|
| Outgoing Call | 844-███████ | 8/6/2020 | 03:17:37 PM CDT | 16min 29sec | $0.00 |
| Outgoing Call | 267-███████ | 8/6/2020 | 03:39:43 PM CDT | 0min 39sec | $0.00 |
| Outgoing Call | 844-███████ | 8/6/2020 | 03:40:31 PM CDT | 1min 55sec | $0.00 |
| Outgoing Call | 844-███████ | 8/6/2020 | 03:42:28 PM CDT | 2min 24sec | $0.00 |
| Outgoing Call | 844-███████ | 8/6/2020 | 03:44:58 PM CDT | 2min 46sec | $0.00 |
| Outgoing Call | 844-███████ | 8/6/2020 | 03:47:48 PM CDT | 0min 19sec | $0.00 |
| Outgoing Call | 844-███████ | 8/6/2020 | 03:48:09 PM CDT | 29min 58sec | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/6/2020 | 04:18:49 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/6/2020 | 04:50:54 PM CDT | NA | $0.00 |
| Outgoing Call | 650-525-0215 | 8/6/2020 | 05:55:05 PM CDT | 1min 42sec | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/6/2020 | 06:26:45 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/6/2020 | 06:39:04 PM CDT | NA | $0.00 |
| Data | NA | 8/7/2020 | 12:56:33 AM CDT | 540.01 MB | $0.00 |
| Data | NA | 8/7/2020 | 02:52:54 AM CDT | 308.94 MB | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/7/2020 | 03:05:53 PM CDT | NA | $0.00 |
| Data | NA | 8/7/2020 | 03:42:44 PM CDT | 453.73 MB | $0.00 |
| Outgoing Call | 800-███████ | 8/7/2020 | 03:49:20 PM CDT | 3min 17sec | $0.00 |
| Incoming Text/Message | 1C0-DE8-7808 | 8/7/2020 | 03:52:10 PM CDT | NA | $0.00 |
| Outgoing Call | 650-███████ | 8/7/2020 | 04:08:37 PM CDT | 0min 27sec | $0.00 |
| Incoming Call | 267-███████ | 8/7/2020 | 04:08:55 PM CDT | 6min 36sec | $0.00 |
| Outgoing Call | 650-███████ | 8/7/2020 | 04:15:48 PM CDT | 1min 26sec | $0.00 |
| Outgoing Call | 800-███████ | 8/7/2020 | 04:17:35 PM CDT | 3min 6sec | $0.00 |
| Incoming Text/Message | 1C0-DE8-7808 | 8/7/2020 | 04:20:15 PM CDT | NA | $0.00 |
| Outgoing Call | 925-366-1896 | 8/7/2020 | 04:24:22 PM CDT | 0min 52sec | $0.00 |
| Outgoing Call | 844-███████ | 8/7/2020 | 04:26:00 PM CDT | 2min 3sec | $0.00 |
| Outgoing Call | 800-███████ | 8/7/2020 | 05:35:15 PM CDT | 30min 37sec | $0.00 |
| Incoming Text/Message | 1C0-DE8-7808 | 8/7/2020 | 05:37:17 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/7/2020 | 05:59:52 PM CDT | NA | $0.00 |
| Outgoing Text/Message | C0D-E26-6278 | 8/7/2020 | 06:08:13 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/7/2020 | 06:08:19 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/7/2020 | 06:08:20 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/7/2020 | 06:10:38 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/7/2020 | 06:11:45 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/7/2020 | 06:16:47 PM CDT | NA | $0.00 |
| Data | NA | 8/7/2020 | 10:39:14 PM CDT | 536.40 MB | $0.00 |
| Data | NA | 8/8/2020 | 03:07:21 AM CDT | 350.14 MB | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/8/2020 | 02:00:19 AM CDT | NA | $0.00 |

| Usage | Contact | Date | Time | Duration | Charges |
|-------|---------|------|------|----------|---------|
| Incoming Text/Message | C0D-E26-6278 | 8/8/2020 | 02:00:20 PM CDT | NA | $0.00 |
| Data | NA | 8/8/2020 | 02:44:19 PM CDT | 371.20 MB | $0.00 |
| Outgoing Call | 650-▓▓▓ | 8/8/2020 | 09:43:57 PM CDT | 1min 35sec | $0.00 |
| Outgoing Call | 650-▓▓▓ | 8/8/2020 | 09:47:52 PM CDT | 4min 40sec | $0.00 |
| Outgoing Call | 925-▓▓▓ | 8/8/2020 | 09:54:31 PM CDT | 2min 13sec | $0.00 |
| Data | NA | 8/8/2020 | 11:27:05 PM CDT | 540.01 MB | $0.00 |
| Data | NA | 8/9/2020 | 01:25:20 AM CDT | 386.70 MB | $0.00 |
| Data | NA | 8/9/2020 | 08:59:50 AM CDT | 279.33 MB | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/9/2020 | 10:00:44 AM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/9/2020 | 11:19:58 AM CDT | NA | $0.00 |
| Incoming Call | 615-596-1240 | 8/9/2020 | 11:55:17 AM CDT | 0min 29sec | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/9/2020 | 12:00:32 PM CDT | NA | $0.00 |
| Incoming Call | 267-383-3354 | 8/9/2020 | 02:44:37 PM CDT | 0min 15sec | $0.00 |
| Data | NA | 8/9/2020 | 11:02:55 PM CDT | 540.01 MB | $0.00 |
| Data | NA | 8/10/2020 | 01:42:59 AM CDT | 284.08 MB | $0.00 |
| Incoming Call | 213-▓▓▓ | 8/10/2020 | 11:15:11 AM CDT | 1min 33sec | $0.00 |
| Voicemail | 209-▓▓▓ | 8/10/2020 | 11:46:47 AM CDT | 0min 3sec | $0.00 |
| Voicemail | 209-▓▓▓ | 8/10/2020 | 11:47:33 AM CDT | 0min 4sec | $0.00 |
| Voicemail | 209-▓▓▓ | 8/10/2020 | 12:45:24 PM CDT | 0min 44sec | $0.00 |
| Data | NA | 8/10/2020 | 01:44:06 PM CDT | 97.10 MB | $0.00 |
| Outgoing Call | 866-▓▓▓ | 8/10/2020 | 04:33:24 PM CDT | 52min 39sec | $0.00 |
| Outgoing Call | 844-▓▓▓ | 8/10/2020 | 05:49:12 PM CDT | 0min 6sec | $0.00 |
| Outgoing Call | 855-▓▓▓ | 8/10/2020 | 05:50:09 PM CDT | 0min 35sec | $0.00 |
| Outgoing Call | 844-▓▓▓ | 8/10/2020 | 05:51:02 PM CDT | 25min 6sec | $0.00 |
| Data | NA | 8/11/2020 | 07:01:41 AM CDT | 187.13 MB | $0.00 |
| Outgoing Call | 650-▓▓▓ | 8/11/2020 | 04:22:29 PM CDT | 3min 22sec | $0.00 |
| Outgoing Call | 626-374-4995 | 8/11/2020 | 05:31:30 PM CDT | 11min 2sec | $0.00 |
| Outgoing Call | 877-▓▓▓ | 8/11/2020 | 05:46:50 PM CDT | 1min 18sec | $0.00 |
| Outgoing Call | 800-▓▓▓ | 8/11/2020 | 05:48:47 PM CDT | 1min 3sec | $0.00 |
| Outgoing Call | 877-▓▓▓ | 8/11/2020 | 05:50:02 PM CDT | 2min 2sec | $0.00 |
| Data | NA | 8/11/2020 | 06:35:15 PM CDT | 17.02 MB | $0.00 |
| Outgoing Call | 650-▓▓▓ | 8/11/2020 | 08:56:46 PM CDT | 4min 57sec | $0.00 |
| Incoming Call | 650-▓▓▓ | 8/12/2020 | 12:23:02 PM CDT | 1min 35sec | $0.00 |
| Data | NA | 8/12/2020 | 12:35:17 PM CDT | 82.11 MB | $0.00 |
| Outgoing Call | 800-▓▓▓ | 8/12/2020 | 05:02:58 PM CDT | 0min 13sec | $0.00 |
| Outgoing Call | 415-▓▓▓ | 8/12/2020 | 05:03:35 PM CDT | 4min 31sec | $0.00 |
| Outgoing Call | 925-999-9655 | 8/12/2020 | 10:00:01 PM CDT | 1min 17sec | $0.00 |

6

*[handwritten:]* Matt security officer at wells fargo

| Usage | Contact | Date | Time | Duration | Charges |
|---|---|---|---|---|---|
| Data | NA | 8/13/2020 | 06:35:20 AM CDT | 107.09 MB | $0.00 |
| Incoming Call | 925-██████ | 8/13/2020 | 01:06:21 PM CDT | 1min 10sec | $0.00 |
| Incoming Text/Message | C0B9E26-6278 | 8/13/2020 | 02:18:19 PM CDT | NA | $0.00 |
| Outgoing Call | 844-███-████ | 8/13/2020 | 07:01:48 PM CDT | 34min 16sec | $0.00 |
| Outgoing Call | 844-898-████ | 8/13/2020 | 07:44:57 PM CDT | 3min 6sec | $0.00 |
| Voicemail | 209-██████ | 8/13/2020 | 07:56:46 PM CDT | 0min 16sec | $0.00 |
| Voicemail | 209-██████ | 8/13/2020 | 07:57:28 PM CDT | 0min 3sec | $0.00 |
| Voicemail | 209-██████ | 8/13/2020 | 08:05:56 PM CDT | 0min 2sec | $0.00 |
| Voicemail | 209-██████ | 8/13/2020 | 08:27:38 PM CDT | 0min 0sec | $0.00 |
| Outgoing Call | 651-███████ | 8/13/2020 | 08:39:30 PM CDT | 20min 33sec | $0.00 |
| Incoming Call | 651-██████ | 8/13/2020 | 09:04:39 PM CDT | 11min 25sec | $0.00 |
| Incoming Call | 206-██████ | 8/13/2020 | 11:15:35 PM CDT | 15min 27sec | $0.00 |
| Data | NA | 8/14/2020 | 12:17:47 AM CDT | 105.82 MB | $0.00 |
| Data | NA | 8/14/2020 | 05:59:25 PM CDT | 11.65 MB | $0.00 |
| Data | NA | 8/14/2020 | 11:12:24 PM CDT | 136.90 MB | $0.00 |
| Voicemail | 209-██████ | 8/15/2020 | 11:28:03 AM CDT | 0min 14sec | $0.00 |
| Voicemail | 209-██████ | 8/15/2020 | 11:28:58 AM CDT | 0min 18sec | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:11 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:11 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-███████ | 8/15/2020 | 11:32:11 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:11 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:11 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:11 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:18 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:18 AM CDT | NA | $0.00 |
| Incoming Text/Message | 205-██████ | 8/15/2020 | 11:32:18 AM CDT | NA | $0.00 |
| Data | NA | 8/15/2020 | 02:31:05 PM CDT | 46.81 MB | $0.00 |
| Outgoing Call | 650-███████ | 8/15/2020 | 04:16:32 PM CDT | 0min 16sec | $0.00 |
| Outgoing Call | 650-3█████ | 8/15/2020 | 04:17:34 PM CDT | 2min 17sec | $0.00 |
| Data | NA | 8/16/2020 | 08:31:06 AM CDT | 161.21 MB | $0.00 |
| Outgoing Call | 650-2█████ | 8/16/2020 | 01:28:53 PM CDT | 1min 20sec | $0.00 |
| Outgoing Call | 650-3█████ | 8/16/2020 | 05:12:18 PM CDT | 1min 36sec | $0.00 |
| Data | NA | 8/17/2020 | 12:33:12 AM CDT | 150.73 MB | $0.00 |
| Outgoing Call | 415-██████ | 8/17/2020 | 11:17:20 AM CDT | 2min 17sec | $0.00 |
| Data | NA | 8/17/2020 | 06:24:55 PM CDT | 60.96 MB | $0.00 |
| Incoming Text/Message | 1C0-DE9-7633 | 8/17/2020 | 07:11:29 PM CDT | NA | $0.00 |
| Incoming Text/Message | 1C0-DE9-7633 | 8/17/2020 | 07:11:29 PM CDT | NA | $0.00 |

7

| Usage | Contact | Date | Time | Duration | Charges |
|---|---|---|---|---|---|
| Incoming Text/Message | 1C0-DE9-7633 | 8/17/2020 | 07:11:31 PM CDT | NA | $0.00 |
| Data | NA | 8/18/2020 | 11:48:28 AM CDT | 157.62 MB | $0.00 |
| Data | NA | 8/19/2020 | 04:09:14 AM CDT | 162.51 MB | $0.00 |
| Outgoing Call | 925-999-9855 | 8/19/2020 | 07:27:52 PM CDT | 1min 4sec | $0.00 |
| Data | NA | 8/19/2020 | 09:06:33 PM CDT | 33.74 MB | $0.00 |
| Data | NA | 8/20/2020 | 03:16:48 AM CDT | 15.39 MB | $0.00 |
| Data | NA | 8/20/2020 | 07:26:55 AM CDT | 325.16 MB | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/20/2020 | 04:47:26 PM CDT | NA | $0.00 |
| Incoming Text/Message | C0D-E26-6278 | 8/20/2020 | 04:47:26 PM CDT | NA | $0.00 |
| Outgoing Call | 619-███████ | 8/20/2020 | 05:58:05 PM CDT | 1min 13sec | $0.00 |
| Outgoing Call | 909-███████ | 8/20/2020 | 06:06:19 PM CDT | 0min 29sec | $0.00 |
| Incoming Call | 619-███████ | 8/20/2020 | 06:06:37 PM CDT | 4min 14sec | $0.00 |
| Outgoing Call | 619-███████ | 8/20/2020 | 08:20:21 PM CDT | 1min 41sec | $0.00 |
| Data | NA | 8/20/2020 | 08:38:01 PM CDT | 121.97 MB | $0.00 |
| Voicemail | 209-███████ | 8/21/2020 | 09:55:48 AM CDT | 0min 30sec | $0.00 |
| Outgoing Call | 619-███████ | 8/21/2020 | 09:56:13 AM CDT | 7min 34sec | $0.00 |
| Voicemail | 209-███████ | 8/21/2020 | 10:25:46 AM CDT | 0min 7sec | $0.00 |
| Incoming Call | 925-3██████8 | 8/21/2020 | 11:05:33 AM CDT | 16min 22sec | $0.00 |
| Incoming Call | 925-██████4 | 8/21/2020 | 01:52:28 PM CDT | 0min 7sec | $0.00 |
| Data | NA | 8/21/2020 | 01:53:15 PM CDT | 47.66 MB | $0.00 |
| Outgoing Call | 909-███████ | 8/21/2020 | 02:23:17 PM CDT | 3min 19sec | $0.00 |
| Outgoing Call | 213-███████ | 8/21/2020 | 02:28:47 PM CDT | 5min 22sec | $0.00 |
| Outgoing Call | 619-███████ | 8/21/2020 | 03:12:36 PM CDT | 2min 33sec | $0.00 |
| Incoming Call | 619-███████ | 8/21/2020 | 03:15:36 PM CDT | 3min 12sec | $0.00 |
| Outgoing Call | 877-███████ | 8/21/2020 | 03:28:08 PM CDT | 0min 43sec | $0.00 |
| Outgoing Call | 877-███████ | 8/21/2020 | 03:29:12 PM CDT | 14min 32sec | $0.00 |
| Incoming Call | 800-7██████ | 8/21/2020 | 04:41:49 PM CDT | 0min 18sec | $0.00 |
| Data | NA | 8/22/2020 | 07:53:17 AM CDT | 311.95 MB | $0.00 |
| Data | NA | 8/22/2020 | 07:16:12 PM CDT | 207.52 MB | $0.00 |
| Data | NA | 8/23/2020 | 12:32:45 PM CDT | 222.12 MB | $0.00 |

| Usage Summary | Talk | 20hrs 9mins 30sec | $0.00 |
|---|---|---|---|
| | Data | 15.5GB | $0.00 |
| | Sponsored Data | 0.00KB | $0.00 |
| | Mobile Hotspot Data | 0.00KB | $0.00 |
| | Text | 51 | $0.00 |
| | Total Charges | | $0.00 |

*Time is US/Central

9

Exhibit 3

Dear Police officer,

I Behrooz Mohazzabi, 76 years of age, living 766 Edgewater Apt. No. Foster City 94404. There was a message on my cell on August 10, 2020. From a person Called Matt from Wells Fargo Bank located in El Monte California Tel.: (626)374-4995. Who asked me to call him back. On August 11, around 3:30 PM, I returned his call, after I introduced myself and referenced his message he started threatening me with very rude language that "you will be trailed and you will go to jail till you withdraw your complaint due to the server".

I have filed a complaint in Superior Court of California in Los Angeles versus Ms. Lorena Barba, an individual who works for Wells Fargo Bank in relation to a $20,000.00 robbery from my account in the one the branch of Wells Fargo Bank. Based on the rule of the Supreme Court of California, I have to serve a copy of Complaint to Ms. Barba Lorena and get a proof of service. I hired on-line a professional registered server in Los Angeles county to serve her the complaint and get proof of service from her. But she refused to be served at the time.

Since then I got anxiety, and getting scared, I think This guy Math is taking advantage of my age.

Respectfully,

Behrooz Mohazzabi

Cell: (925)368-0757

August 13, 2020



**Police Department**
(650) 286-3300

Estero Municipal
Improvement District

**Michael Acosta**
Traffic Officer

1030 E. Hillsdale Blvd.
Foster City, CA 94404

1: (650) 294-7595
F: (650) 349-0790
macosta@fostercity.org
fostercitypd.org



# Exhibit 4




Case Number: **20 PSR000945**

(15) ☒ **No Fee to Serve Orders**

I ask the court to order the sheriff or marshal to serve the respondent with the others for free because this request for orders is based on a credible threat of violence or stalking.

(16) ☐ **Court Costs**

I ask the court to order the respondent to pay my court costs.

(17) ☐ **Additional Orders Requested**

I ask the court to make the following additional orders *(specify)*:

☐ Additional orders requested are stated in Attachment 17.

_____
_____
_____
_____
_____
_____
_____
_____

(18) Number of pages attached to this form, if any: _45_

Date: _August 12, 2020_

_Mark I. Wraight_
*Lawyer's name (if any)*                          *Lawyer's signature*

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: _August 12, 2020_

_Lorena Ocana_
*Name of petitioner*                               *Signature*

_Fraud and Claims Ops Specialist_
*Title*

**This is not a Court Order.**

**WV-109**   Notice of Court Hearing

Clerk stamps date here when form is filed.

**FILED**
Superior Court of California
County of Los Angeles

AUG 1 4 2020

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shaunna Radcliffe

(1) **Petitioner (Employer)**

a.   Name: Wells Fargo Bank, N.A.

Lawyer for Petitioner *(if any for this case)*:

Name: Mark I. Wraight _____ State Bar No.:228303

Firm Name: Severson & Werson, APC

b.   Address *(If you have a lawyer, give your lawyer's information.)*:

Address:  One Embarcadero Center, Suite 2600

City: San Francisco _____ State:CA _____ Zip:94111

Telephone: (415) 398-3344 _____ Fax: (415) 956-0439

E-Mail Address: miw@severson.com; bjh@severson.com

Fill in court name and street address:

Superior Court of California, County of
Los Angeles
Pomona Branch
400 Civic Center Plaza,
Pomona, CA 91766

Fill in case number:

Case Number:
20PSR00N945

(2) **Employee in Need of Protection**

Full Name: Lorena Ocana

(3) **Respondent (Person From Whom Protection Is Sought)**

Full Name: Behrooz Mohazzabi

*The court will complete the rest of this form.*

(4) **Notice of Hearing**

A court hearing is scheduled on the request for restraining orders against the respondent:

| Hearing Date → | Date: 9-3-20   Time: 10:30am | Name and address of court if different from above: |
|---|---|---|
| | Dept: K   Room: 417 | |

(5) **Temporary Restraining Orders** *(Any orders granted are on Form WV-110, served with this notice.)*

a.   Temporary Restraining Orders for personal conduct and stay away orders as requested in Form WV-100, *Request for Workplace Violence Restraining Orders,* are *(check only one box below)*:

(1) ☒ All GRANTED until the court hearing.

(2) ☐ All DENIED until the court hearing. *(Specify reasons for denial in b, below.)*

(3) ☐ Partly GRANTED and partly DENIED until the court hearing. *(Specify reasons for denial in b, below.)*

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2012, Mandatory Form
Code of Civil Procedure, § 527.8
Approved by DOJ

Notice of Court Hearing
(Workplace Violence Prevention)

WV-109, Page 1 of 3
→

 

Case Number:

**20 PSR000 0 6 5**

b. Reasons that Temporary Restraining Orders as requested in Form WV-100, *Petition for Workplace Violence Restraining Orders,* for personal conduct or stay away are denied are:

(1) ☐ The facts as stated in Form WV-100 do not sufficiently show reasonable proof that the employee has suffered unlawful violence or a credible threat of violence by the respondent, and that great or irreparable harm to the employee would result if a temporary restraining order is not issued.

(2) ☐ Other *(specify):*  ☐ As stated on Attachment 5b.

_____
_____
_____
_____
_____

(6) **Service of Documents by the Petitioner**

At least ☒ five ☐ _____ days before the hearing, someone age 18 or older—not you or anyone to be protected—must personally give (serve) a court file-stamped copy of this Form WV-109, *Notice of Court Hearing,* to the respondent along with a copy of all the forms indicated below:

a.  WV-100, *Petition for Workplace Violence Restraining Orders* (file-stamped)

b. ☒ WV-110, *Temporary Restraining Order* (file-stamped) IF GRANTED

c.  WV-120, *Response to Petition for Workplace Violence Restraining Orders* (blank form)

d.  WV-120-INFO, *How Can I Respond to a Petition for Workplace Violence Restraining Orders*

e.  WV-250, *Proof of Service of Response by Mail* (blank form)

f. ☐ Other *(specify):* _____

Date: 8-14-2020                         _____
                                        Judicial Officer

                                        JOHN A. SLAWSON

**To the Petitioner:**

- The court cannot make the restraining orders after the court hearing unless the respondent has been personally given (served) a copy of your request and any temporary orders. To show that the respondent has been served, the person who served the forms must fill out a proof of service form. Form WV-200, *Proof of Personal Service,* may be used.

- For information about service, read Form WV-200-INFO, *What Is "Proof of Personal Service"?*

- If you are unable to serve the respondent in time, you may ask for more time to serve the documents. Use Form WV-115, *Request to Continue Court Hearing and to Reissue Temporary Restraining Order.*




Case Number:
**20 PSR000945**

- If you want to respond to the request for orders in writing, file Form WV-120, *Response to Request for Workplace Violence Restraining Orders,* and have someone age 18 or older—**not you or anyone to be protected**—mail it to the petitioner.
- The person who mailed the form must fill out a proof of service form. Form WV-250, *Proof of Service of Response by Mail,* may be used. File the completed form with the court before the hearing and bring a copy with you to the court hearing.
- Whether or not you respond in writing, go to the hearing if you want the judge to hear from you before making an order. You may tell the judge why you agree or disagree with the orders requested.
- You may bring witnesses and other evidence.
- At the hearing, the judge may make restraining orders against you that could last up to three years and may order you to sell or turn in any firearms that you own or possess.



### Request for Accommodations
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the hearing. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons with Disabilities and Response* (Form MC-410). (Civ. Code, § 54.8.)

*(Clerk will fill out this part.)*

—**Clerk's Certificate**—

I certify that this *Notice of Court Hearing* is a true and correct copy of the original on file in the court.

SHERRI R CARTER

Date: AUG 1 4 2020

Clerk, by _____ Deputy

**Notice of Court Hearing**
(Workplace Violence Prevention)

M. MEZA

 

**WV-110**   Temporary Restraining Order

*Clerk stamps date here when form is filed.*

FILED
Superior Court of California
County of Los Angeles

AUG 14 2020

Sherri R. Carter, Executive Officer/Clerk
By _Shaunna Radcliffe_ Deputy
Shaunna Radcliffe

① Petitioner (Employer)

a. Name: Wells Fargo Bank, N.A

Lawyer for Petitioner *(if any, for this case):*

Name: Mark I. Wraight      State Bar No.:228303

Firm Name: Severson & Werson, APC

b. Your Address *(If you have a lawyer, give your lawyer's information.):*

Address: One Embarcadero Center, Suite 2600

City: San Francisco      State: CA   Zip: 94111

Telephone: (415) 398-3344      Fax: (415) 956-0439

E-Mail Address: miw@severson.com; bjh@severson.com

*Fill in court name and street address:*

Superior Court of California, County of
Los Angeles
Pomona Branch
400 Civic Center Plaza, Pomona, CA
91766

*Court fills in case number when form is filed.*

Case Number:
20PSRO00945

② Employee (Protected Person)

Full Name: Lorena Ocana

③ Respondent (Restrained Person)

Full Name: Behrooz Mohazzabi

Description:

Sex: ☒ M  ☐ F  Height: Unknown  Weight: Unknown   Date of Birth: 5/9/1944

Hair Color: Bald      Eye Color: Brown      Age: 76   Race: Middle Eastern

Home Address *(if known):*  1117 Marquita Ave

City: Burlingame      State: CA      Zip: 94010

Relationship to Employee: Customer of Wells Fargo Bank

④ ☒ Additional Protected Persons

In addition to the employee, the following family or household members or other employees are protected by the temporary orders indicated below:

| Full Name | Sex | Age | Household Member? | Relation to Employee |
|---|---|---|---|---|
| Oscar Ocana | M | 47 | ☒ Yes ☐ No | Husband |
| Sophia Ocana | F | 17 | ☒ Yes ☐ No | Daughter |
| Oliver Ocana | M | 3 | ☒ Yes ☐ No | Son |

☐ Additional protected persons are listed at the end of this Order on Attachment 4.

⑤ Expiration Date

*This Order expires at the end of the hearing scheduled for the date and time below:*

Date: 9 - 3 - 2020   Time: 10:30  ☒ a.m. ☐ p.m.

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2017, Mandatory Form
Code of Civil Procedure, §§ 527.8 and 527.9
Approved by DOJ

Temporary Restraining Order (CLETS—TWH)
(Workplace Violence Prevention)

WV-110, Page 1 of 5
→



Case Number:
**20 PSR000 9 A 5**

**To the Respondent**

The court has issued the temporary orders checked as granted below. If you do not obey these orders, you can be arrested and charged with a crime. You may have to go to jail for up to one year, pay a fine of up to $1,000, or both.

**(6) Personal Conduct Orders**

☐ Not Requested    ☐ Denied Until the Hearing    ☒ Granted as Follows:

a. You are ordered not do the following things to the employee
   ☒   and to the other protected persons listed in ④:

   (1) ☒ Harass, molest, strike, assault (sexually or otherwise), batter, abuse, destroy personal property of, or disturb the peace of the person.

   (2) ☒ Commit acts of violence or make threats of violence against the person.

   (3) ☒ Follow or stalk the person during work hours or to or from the place of work.

   (4) ☒ Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by e-mail, by fax, or by other electronic means.

   (5) ☒ Enter the workplace of the person.

   (6) ☒ Take any action to obtain the person's address or locations. If this item is not checked, the court has found good cause not to make this order.

   (7) ☐ Other (specify):
       ☐ Other personal conduct orders are attached at the end of this Order on Attachment 6a(7).
       _____
       _____
       _____
       _____

b. Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate this order. However, you may have your papers served by mail on the petitioner.

**(7) Stay-Away Order**

☐ Not Requested    ☐ Denied Until the Hearing    ☒ Granted as Follows:

a. You must stay at least _/ 00_ yards away from (check all that apply):

   (1) ☒ The employee
   (2) ☒ Each other protected person listed in ④
   (3) ☒ The employee's workplace
   (4) ☒ The employee's home
   (5) ☐ The employee's school
   (6) ☒ The employee's children's school

   (7) ☒ The employee's children's place of child care
   (8) ☒ The employee's vehicle
   (9) ☐ Other (specify):
       _____
       _____
       _____
       _____

b. This stay-away order does not prevent you from going to or from your home or place of employment.

**This is a Court Order**



Case Number: **20PSR000945**

---

8  **No Guns or Other Firearms and Ammunition**

a. You cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get guns, other firearms, or ammunition.

b. You must:
(1) Sell to or store with a licensed gun dealer or turn in to a law enforcement agency any guns or other firearms in your immediate possession or control. This must be done within 24 hours of being served with this Order.
(2) File a receipt with the court within 48 hours of receiving this Order that proves that your guns or firearms have been turned in, sold, or stored. *(You may use form WV-800,* Proof of Firearms Turned In, Sold, or Stored *for the receipt.)*

c. ☐ The court has received information that you own or possess a firearm.

9  **Other Orders**

☒ Not Requested     ☐ Denied Until the Hearing     ☐ Granted as Follows *(specify)*:

_____

_____

_____

☐ Additional orders are attached at the end of this Order on Attachment 9.

**To the Petitioner**

10  **Mandatory Entry of Order Into CARPOS Through CLETS**

This Order must be entered into the California Restraining and Protective Order System (CARPOS) through the California Law Enforcement Telecommunications System (CLETS). *(Check one)*:

a. ☐ The clerk will enter this Order and its proof-of-service form into CARPOS.

b. ☒ The clerk will transmit this Order and its proof-of-service form to a law enforcement agency to be entered into CARPOS.

c. ☐ By the close of business on the date that this Order is made, the employer or the employer's lawyer should deliver a copy of the Order and its proof-of-service form to the law enforcement agencies listed below to enter into CARPOS:

Name of Law Enforcement Agency                    Address *(City, State, Zip)*

_____      _____

_____      _____

☐ Additional law enforcement agencies are listed at the end of this Order on Attachment 10.

11  **No Fee to Serve (Notify) Restrained Person**     ☒ Ordered     ☐ Not Ordered

The sheriff or marshal will serve this Order without charge because:

a. ☒ The Order is based on a credible threat of violence or stalking.

b. ☐ The petitioner is entitled to a fee waiver.

**This is a Court Order**

Case Number **20 PSR00 0 945**

(12) Number of pages attached to this Order, if any: _____

Date: **8-14-2020**                                          _Judicial Officer_   JOHN A. SLAWSON



**Warnings and Notices to the Restrained Person in (2)**

## You Cannot Have Guns or Firearms

You cannot own, have, possess, buy or try to buy, receive or try to receive, or otherwise get guns, other firearms, or ammunition while this Order is in effect. If you do, you can go to jail and pay a $1,000 fine. You must sell to or store with a licensed gun dealer or turn in to a law enforcement agency any guns or other firearms that you have or control as stated in item (8) above. The court will require you to prove that you did so.

## Notice Regarding Nonappearance at Hearing and Service of Order

If you have been personally served with this Temporary Restraining Order and form WV-109, *Notice of Court Hearing*, but you do not appear at the hearing either in person or by a lawyer, and a restraining order that is the same as this Temporary Restraining Order except for the expiration date is issued at the hearing, a copy of the order will be served on you by mail at the address in item (3).

If this address is not correct or you wish to verify that the Temporary Restraining Order was converted into a restraining order at the hearing without substantive change, or to find out the duration of the order, contact the clerk of the court.

## After You Have Been Served With a Restraining Order

- Obey all the orders. Any intentional violation of this Order is a misdemeanor punishable by a fine or by imprisonment in a county jail, or by both fine and imprisonment. (Pen. Code, § 273.6.)
- Read form WV-120-INFO, *How Can I Respond to a Petition for Orders to Stop Workplace Violence?*, to learn how to respond to this Order.
- If you want to respond, fill out form WV-120, *Response to Petition for Workplace Violence Restraining Orders*, and file it with the court clerk. You do not have to pay any fee to file your response if the petition claims that you threatened violence against or stalked the employee, or placed the employee in reasonable fear of violence.
- You must have form WV-120 served on the petitioner or the petitioner's attorney by mail. You cannot do this yourself. The person who does the service should complete and sign form WV-250, *Proof of Service of Response by Mail*. File the completed proof of service with the court clerk before the hearing date or bring it with you to the hearing.

- In addition to the response, you may file and have declarations served, signed by you and other persons who have personal knowledge of the facts. You may use form MC-030, *Declaration*, for this purpose. It is available from the clerk's office at the court shown on page 1 of this form or at *www.courts.ca.gov/forms*. If you do not know how to prepare a declaration, you should see a lawyer.
- Whether or not you file a response, you should attend the hearing. If you have any witnesses, they must also go to the hearing.
- At the hearing, the judge can make restraining orders against you that last for up to three years. Tell the judge why you disagree with the orders requested.

**This is a Court Order**

 

Case Number: **20 PSR000 9 4 5**

## Instructions for Law Enforcement

### Enforcing the Restraining Order
This order is enforceable by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Restraining and Protective Orders System (CARPOS). Agencies are encouraged to enter violation messages into CARPOS. If the law enforcement agency has not received proof of service on the restrained person, the agency must advise the restrained person of the terms of the order and then must enforce it. Violations of this order are subject to criminal penalties.

### Start Date and End Date of Orders
This order *starts* on the date next to the judge's signature on page 4. The order *ends* on the expiration date in item 5 on page 1.

### If the Protected Person Contacts the Restrained Person
Even if the protected person invites or consents to contact with the restrained person, this order remains in effect and must be enforced. The protected person cannot be arrested for inviting or consenting to contact with the restrained person. The order can be changed only by another court order. (Pen. Code, § 13710(b).)

### Conflicting Orders—Priorities for Enforcement
If more than one restraining order has been issued, the orders must be enforced according to the following priorities: (See Pen. Code, § 136.2, Fam. Code, §§ 6383(h)(2), 6405(b).)
1. *EPO:* If one of the orders is an *Emergency Protective Order* (form EPO-001) and is more restrictive than other restraining or protective orders, it has precedence in enforcement over all other orders.
2. *No Contact Order:* If there is no EPO, a no-contact order that is included in a restraining or protective order has precedence over any other restraining or protective order.
3. *Criminal Order:* If none of the orders includes a no contact order, a domestic violence protective order issued in a criminal case takes precedence in enforcement over any conflicting civil court order. Any nonconflicting terms of the civil restraining order remain in effect and enforceable.
4. *Family, Juvenile, or Civil Order:* If more than one family, juvenile, or other civil restraining or protective order has been issued, the one that was issued last must be enforced.



SHERRI R CARTER

*(Clerk will fill out this part.)*
—Clerk's Certificate—

I certify that this *Temporary Restraining Order* is a true and correct copy of the original on file in the court.

Date: AUG 1 8 2020   Clerk, by _____, Deputy
M. MEZA

## This is a Court Order



**WV-100**  Petition for Workplace Violence
Restraining Orders

Read *How Do I Get an Order to Prohibit Workplace Violence* (form
WV-100-INFO) before completing this form. NOTE: Petitioner must
be an employer with standing to bring this action under Code of
Civil Procedure section 527.8. Also fill out *Confidential CLETS
Information* (form CLETS-001) with as much information as you know.

*Clerk stamps date here when form is filed.*

**FILED**
Superior Court of California
County of Los Angeles

AUG 1 4 2020

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shauna Radcliffe

① Petitioner (Employer)

a. Name: Wells Fargo Bank, N. A.

is a ☐ corporation    ☐ sole proprietorship

☒ *(specify):* National Association

and is filing this suit on behalf of the employee identified in item ②.

b. Lawyer for Petitioner *(if any for this case)*
Name: Mark I. Wraight    State Bar No.: 228303
Firm Name: Severson & Werson, APC

Petitioner's Address *(If the petitioner has a lawyer, give the lawyer's
information.)*

c. Address: One Embarcadero Center, Suite 2600
City: San Francisco    State: CA    Zip: 94111
Telephone: (415) 398-3344    Fax: (415) 956-0439
E-Mail Address: miw@severson.com; bjh@severson.com

*Fill in court name and street address:*

Superior Court of California, County of
Los Angeles
Pomona Branch
400 Civic Center Plaza, Pomona, CA
91766

*Court fills in case number when form is filed.*

Case Number:
20 PSR000945

② Employee in Need of Protection

Full Name: Lorena Ocana

Sex: ☐ M    ☒ F    Age: 39

③ Respondent (Person From Whom Protection Is Sought)

Full Name: Behrooz Mohazzabi    Age: 76

Address *(if known):* 1117 Marquita Ave

City: Burlingame    State: CA    Zip: 94010

④ Additional Protected Persons

a. Are you asking for protection for any family or household members of the employee or for any other
employees at the employee's workplace or at other workplaces of the petitioner?

☒ Yes ☐ No    *(If yes, list them):*

| Full Name | Sex | Age | Household Member? | Relationship to Employee |
|---|---|---|---|---|
| Oscar Ocana | M | 47 | ☒ Yes ☐ No | Husband |
| Sophia Ocana | F | 17 | ☒ Yes ☐ No | Daughter |
| Oliver Ocana | M | 3 | ☒ Yes ☐ No | Son |

☐ Additional protected persons are listed in Attachment 4a.

**This is not a Court Order**

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2018, Mandatory Form
Code of Civil Procedure, §§ 527.8 and 527.9    Petition for Workplace Violence Restraining Orders
(Workplace Violence Prevention)    WV-100, Page 1 of 6
→

 

Case Number:
**20PSR000945**

(4) b. Why do these people need protection? *(Explain):*
☐ Response is stated in Attachment 4b.
Respondent has made repeated harassing phone calls to Ms. Ocana and her family, and has made credible threats
of violence against Ms. Ocana including sending individuals to her home. Please see attached declarations.

(5) **Relationship of Employee and Respondent**

a. How does the employee know the respondent? *(Describe):*   ☐ Response is stated in Attachment 5a.
Respondent is a customer of Wells Fargo. Please see attached declarations of Mark I. Wraight and Lorena
Ocana.

b. Respondent ☐ is   ☒ is not   a current employee of petitioner. *(Explain any decision to retain, terminate,
or otherwise discipline the respondent):*   ☐ Response is stated in Attachment 5b.
_____
_____

(6) **Venue**
Why are you filing in this county? *(Check all that apply):*
a. ☐ The respondent lives in this county.
b. ☒ The respondent has caused physical or emotional injury to the petitioner's employee in this county.
c. ☐ Other *(specify):* _____

(7) **Other Court Cases**
a. Has the employee or any of the persons named in (4) been involved in another court case with the respondent?

☐ No   ☒ Yes   *If yes, check each kind of case and indicate where and when each was filed:*

| | Kind of Case | Filed in *(County/State)* | Year Filed | Case Number *(if known)* |
|---|---|---|---|---|
| (1) ☐ | Workplace Violence | | | |
| (2) ☐ | Civil Harassment | | | |
| (3) ☐ | Domestic Violence | | | |
| (4) ☐ | Divorce, Nullity, Legal Separation | | | |
| (5) ☐ | Paternity, Parentage, Child Support | | | |
| (6) ☐ | Eviction | | | |
| (7) ☐ | Guardianship | | | |
| (8) ☐ | Small Claims | | | |
| (9) ☐ | Postsecondary School Violence | | | |
| (10) ☐ | Criminal | | | |
| (11) ☒ | Other *(specify):* Civil business dispute | Los Angeles/California | 2020 | 20PSCP00194 |

b. Are any restraining orders or criminal protective orders now in effect relating to the employee or any of the
persons in (4) and the respondent?   ☒ No   ☐ Yes   *(If yes, attach a copy if you have one.)*

**This is not a Court Order**

 

Case Number:
**20 PSRO00 945**

## 8  Description of Respondent's Conduct

a. Respondent has *(check one or more)*:
   (1) ☒ Assaulted, battered, or stalked the employee
   (2) ☒ Made a credible threat of violence against the employee by making knowing or willful statements or engaging in a course of conduct that would place a reasonable person in fear for his or her safety or the safety of his or her immediate family.

b. One or more of these acts *(check either or both)*:
   (1) ☒ Took place at the employee's workplace
   (2) ☒ Can reasonably be construed to be carried out in the future at the employee's workplace
   Address of workplace: 14048 Palm Ave., Baldwin Park, CA 91706

c. Describe what happened. *(Provide details; include the dates of all incidents beginning with the most recent; tell who did what to whom; identify any witnesses):*
   ☒ Response is stated in Attachment 8c.
   Response is stated in the Declarations of Mark I. Wraight and Lorena Ocana

d. Was the employee harmed or injured?   ☐ Yes  ☒ No  *(If yes, describe harm or injuries):*
   ☐ Response is stated in Attachment 8d.

e. Did the respondent use or threaten to use a gun or any other weapon?   ☐ Yes  ☒ No  *(If yes, describe):*
   ☐ Response is stated in Attachment 8e.

**This is not a Court Order.**




Case Number:
**20 PSR000 945**

f. For any of the incidents described above, did the police come?  ☐ Yes  ☒ No  ☐ I don't know
⑧ If yes, did the employee or the respondent receive an Emergency Protective Order?
   ☐ Yes  ☐ No  ☐ I don't know
   If yes, the order protects *(check all that apply):*
   ☐ the employee      ☐ the respondent         ☐ one or more of the persons in ④.
   *(Attach a copy of the order if you have one.)*

**Check the orders you want** ☑

⑨ ☒ **Personal Conduct Orders**
   I ask the court to order the respondent *not* to do any of the following things to the employee or to any person to
   be protected listed in ④:

   a. ☒ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy
         personal property of, or disturb the peace of the person.
   b. ☒ Commit acts of unlawful violence on or make threats of violence to the person.
   c. ☒ Follow or stalk the person during work hours or to or from the place of work.
   d. ☒ Contact the person, either directly or indirectly, by any means, including, but not limited to, in person, by
         telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by
         other electronic means.
   e. ☒ Enter the person's workplace.
   f. ☒ Other *(specify):*
         ☐ As stated in Attachment 9f.
         Stay away from Ms. Ocana's residence.

   *The respondent will be ordered not to take any action to get the addresses or locations of any protected person
   unless the court finds good cause not to make the order.*

⑩ **Stay-Away Order**
   a.  I ask the court to order the respondent to stay at least ____100____ yards away from *(check all that apply):*

   (1) ☒ The employee.                          (8) ☒ The employee's vehicle.
   (2) ☒ The other persons listed in ④.         (9) ☐ Other *(specify):*
   (3) ☒ The employee's workplace.
   (4) ☒ The employee's home.
   (5) ☐ The employee's school.
   (6) ☒ The school of the employee's
         children.
   (7) ☒ The place of child care of the employee's
         children.

**This is not a Court Order**

 

Case Number:
**20 PSR000945**

b. If the court orders the respondent to stay away from all the places listed above, will he or she still be able to get to his or her home, school, or job? ☒ Yes ☐ No *(If no, explain):*

10

☐ Response is stated on Attachment 10b.

---

⑪ **Guns or Other Firearms and Ammunition**

Does the respondent own or possess any guns or other firearms? ☐ Yes ☐ No ☒ I don't know

*If the judge grants a protective order, the respondent will be prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a gun, other firearm, and ammunition while the protective order is in effect. The respondent will also be ordered to turn in to law enforcement, or sell to or store with a licensed gun dealer, any guns or firearms within his or her immediate possession or control.*

⑫ ☒ **Temporary Restraining Order**

I request that a Temporary Restraining Order (TRO) be issued against the Respondent to last until the hearing. I am presenting form WV-110, *Temporary Restraining Order,* for the court's signature together with this Petition.

Has the Respondent been told that you were going to go to court to seek a TRO against him/her?
☒ Yes ☐ No     *(If you answered no, explain why below):*

☐ Reasons are stated in Attachment 12.

⑬ ☐ **Request for Less Than Five Days' Notice of Hearing**

*You must have your papers personally served on the respondent at least five days before the hearing, unless the court orders a shorter time for service. (Form WV-200-INFO explains what is proof of personal service. Form WV-200, Proof of Personal Service, may be used to show the court that the papers have been served.)*

If you want there to be fewer than five days between service and the hearing, explain why:

☐ Reasons are stated in Attachment 13.

⑭ ☒ **No Fee for Filing**

I ask that there be no filing fee because the respondent has threatened violence against the employee, or stalked the employee, or acted or spoken in a manner that has placed the employee in reasonable fear of violence.

**This is not a Court Order**

 

## DECLARATION OF MARK I. WRAIGHT

1

2 I, Mark I. Wraight, declare and state as follows:

3   1.   I am a duly licensed attorney admitted to practice law in all of the courts in

4 California. I am a shareholder of Severson & Werson, A Professional Corporation, attorneys for

5 Petitioner Wells Fargo, N.A.("Wells Fargo" or "Bank") in this matter. I have personal knowledge

6 of the facts set forth in this declaration and if called as a witness, I could and would competently

7 testify thereto.

8   2.   On October 16, 2019, Behrooz Mohazzabi initiated arbitration in the American

9 Arbitration Association. Wells Fargo retained Severson to represent it in the arbitration. As part of

10 his arbitration demand, Mr. Mohazzabi included his phone number as (XXX) XXX-0757.

11 Attached hereto as Exhibit A is a true and correct partially redacted copy of Mr. Mohazzabi's

12 "Demand for Arbitration" he filed with the American Arbitration Association as well as a note that

13 was served on Wells Fargo with his Demand ("Dear Sirs: Please note: Do not call contact me by

14 mail. Please call me at (XXX) XXX-0757 or email: bXXXXXXXXXXXXX@gmail.com(e)"). I

15 have redacted the first six digits of Mr. Mohazzabi's phone number, as well as his address and

16 email address. However, I can confirm that the complete phone number matches the phone

17 number that called Ms. Ocana.

18   3.   On April 29, 2020, Wells Fargo filed its motion for summary judgment. As part of

19 its moving papers a Wells Fargo employee, Lorena Ocana, submitted a declaration authenticating

20 evidence supporting Wells Fargo's defense.

21   4.   On July 27, 2020 Arbitrator Gilda Turitz granted Wells Fargo's motion for

22 summary judgment in arbitration and entered an award in favor of Wells Fargo.

23   5.   Throughout the arbitration, Mr. Mohazzabi repeatedly made the unfounded claim

24 that Ms. Ocana tampered with evidence. Mr. Mohazzabi repeatedly called Ms. Barba a thief, a

25 liar, and a criminal in multiple documents filed with the AAA.

26

27

28

07685.2481/15452804.3

1    6.    I am informed and believe that on or about July 29, 2020—two days after the

2    arbitration ended in favor of Wells Fargo— Ms. Barba and her husband received multiple

3    harassing phone calls from someone calling from the (XXX) XXX-0757 phone number.

4        7.    On July 29, my office sent Mr. Mohazzabi a cease and desist letter instructing him

5    to stop all communications with Wells Fargo employee Lorena Barba (Ocana). Attached as

6    Exhibit B is a true a correct copy of the cease and desist letter.

7        8.    The next day, on July 30, Wells Fargo was served with a complaint filed by

8    Behrooz Mohazzabi against Lorena Barba (Ocana). My office contacted Mr. Mohazzabi and

9    informed him we would be representing Ms. Ocana in his new lawsuit and that we would accept

10   service of the summons and complaint on behalf of Ms. Ocana and requested that Mr. Mohazzabi

11   direct all future correspondence to the law firm.

12       9.    On July 31, my office received a notice of receipt and acknowledgement with a

13   copy of the complaint. We informed Mr. Mohazzabi we would be returning the notice of receipt

14   and acknowledgment within the period allowed by statute.

15       10.    Attached hereto as Exhibit C is a true and correct copy of an email chain of

16   correspondence between my office and Mr. Mohazzabi. On August 5, Mr. Mohazzabi sent an

17   email which suggests that he had in fact called Ms. Ocana using a telephone number Wells Fargo

18   provided to him. It is unclear what Mr. Mohzaabi meant that the phone number was "provided to

19   us by Wells Fargo." Ms. Ocana's personal phone number was not disclosed during the prior

20   arbitration.

21       11.    I am informed and believe that on or about August 10, 2020, Ms. Ocana and her

22   husband continued to receive the harassing calls, this time from a blocked number. I understand

23   that the caller would hang up whenever Ms. Ocana or her husband answered the phone.

24       12.    I am further informed and believe that a male knocked on the front door of Ms.

25   Ocana's residence just after 11:00 PM on August 9, 2020. This man was rude to Mr. Ocana (who

26   answered the door) and demanded to speak with Ms. Barba (Ocana). After this man left, Mr.

27   Ocana observed him watching the Ocana's residence from a parked car until midnight.

28

07685.2481/15452804.3                                    2

                                                      DECLARATION OF MARK I. WRAIGHT

1      13.    Ms. Ocana has informed me she is fearful for her safety and the safety of her family

2  and that she has sent her minor children to stay with her parents.

3      14.    Mr. Mohazzabi has a history of threatening violence—albeit to himself. Attached

4  as **Exhibit D** is a true and correct copy of two emails from Mr. Mohazzabi to Wells Fargo

5  threatening to harm himself.

6      15.    I declare under penalty of perjury under the laws of the State of California that the

7  foregoing is true and correct.  This Declaration was executed on August 12th, 2020, in Orinda,

8  California.

 

                                       Mark I. Wraight

07685.2481/154528043

DECLARATION OF MARK I. WRAIGHT

# EXHIBIT A

 

| From: | ProSeAdministrator6@adr.org |
|---|---|
| To: | WellsFargomop@cscinfo.com; [redacted]@gmail.com |
| Subject: | Behrooz Mohazzabi v. Wells Fargo Bank - Case 01-19-0003-2880 |
| Date: | Friday, November 8, 2019 2:13:20 PM |
| Attachments: | image993816h.PNG |
| | PROCS062.tif |
| | SINTAKF31880.pdf |
| | Online Settlement Tool Guide.pdf |
| | Online Settlement Tool FAQ.pdf |
| | PROCS059.pdf |

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.

 Pro Se Administrator 6
Case Administrator

American Arbitration Association

E: ProSeAdministrator6@adr.org

adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

Dear Sirs:

Please note: Do not contact me by mail

Please call me ███████ —0757 or

email : b███████ @ gmail. come

RECEIVED
Voorhees, NJ

OCT 16 2019

American Arbitration Association




 AMERICAN ARBITRATION ASSOCIATION  | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION |

Pro Se Arbitration Administration Team
P.O. Box 19609
Johnston, RI 02919

## AMERICAN ARBITRATION ASSOCIATION
### Initial List of People, Firms, Companies, and/or Groups Involved in the Arbitration

In the Matter of the Arbitration between:

Case Number: 01-19-0003-2880

Behrooz Mohazzabi
-vs-
Wells Fargo Bank
Pro Se  Administrator 6, ProSeAdministrator6@adr.org
DATE: November 8, 2019

An Arbitrator serving on this case must know the names of all persons, firms companies or other groups involved in this arbitration in or to make proper disclosures of any interests or relationships. The arbitrator uses the information you provide below to check his or her records for any interests or relationships. Providing complete information on this document is also important because it lowers to possibility of having to remove the arbitrator because of an interest or relationship after he or she begins serving on the case.

The AAA does not give this list to the opposing party and the parties are not required to share this list with each other, although the parties may do so voluntarily. This list will be given to the arbitrator, together with the filing documents. The arbitrator will need to divulge any relevant information when making appropriate and necessary disclosures in accordance with the applicable arbitration rules.

This form will only be used to check for conflicts and is not a preliminary or final witness list.

Please list all people, firms, companies, and/or groups involved in the arbitration, including, but not limited to, witnesses, consultants, attorneys, and all other interested parties. Subsidiary and other related entities of any person, firm, company or other group should also be included on this list.

NAME                          AFFILIATION                    ADDRESS

PARTY NAME AND DATE                    PLEASE CIRCLE ONE:   CONSUMER / BUSINESS

  

RECEIVED
Voorhees, NJ

DEMAND FOR ARBITRATION

 **AMERICAN ARBITRATION ASSOCIATION®**   OCT 16 2019   CONSUMER ARBITRATION RULES

American Arbitration Association
Complete this form to start arbitration under an arbitration agreement in a contract.

1. Which party is sending in the filing documents? (check one) ☑ Consumer ☐ Business

2. Briefly explain the dispute: Well Fargo Bank withdraw $2,000.00 from my account ufor themself. Branch I got the report police - Filed with federal court.

3. Specify the amount of money in dispute, if any: $$20,000.00 + Eldery abuse + physical + mental herasment + punitive Damages

4. State any other relief you are seeking:
☑ Attorney Fees ☑ Interest ☐ Arbitration Costs ☑ Other; explain: Eldery abuse + Harasment + Punitive Damage

5. Identify the requested city and state for the hearing if an in-person hearing is held:    I must be in state
City: my account is oppened San Francisco State: Select... California where I opened my acc
San Franciso Bay Area

6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed.

Consumer: account

Name: BEHROOZ MOHAZZABI

| | | |
|---|---|---|
| Address: ███████████████ | | |
| City: ███████████████ | State: Select... ███ | Zip Code: ███ |
| Telephone: ████████-0757 | Fax: | |
| Email Address: B███████@gmial.com | | |

Consumer's Representative (if known):

Name:

Firm: Wells FARGO BANK

| | | |
|---|---|---|
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |

Business:

Name:

| | | |
|---|---|---|
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |

 

 **AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

| Business' Representative (if known): | | |
|---|---|---|
| Name: *WELL FARGO Bank* | | |
| Firm: *Wells FARGO Bank* | | |
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |
| Date: | | |

7. Send a copy of this completed form to the AAA together with:

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit www.adr.org and click on File or Access Your Case and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### * * *

BEHROOZ MOHAZZABI,

      Plaintiff,

    v.

WELLS FARGO, N.A.,

      Defendant.

Case No. 2:18-cv-02137-RFB-VCF

ORDER

## I.    INTRODUCTION

Before the Court are two interrelated motions: Defendant Wells Fargo, N.A.'s (Wells Fargo) Motion to Compel Arbitration, and Defendant Wells Fargo's Motion to Seal its Reply. ECF Nos. 4, 16. For the following reasons, the Court grants both motions.

## II.    PROCEDURAL BACKGROUND

Plaintiff Behrooz Mohazzabi ("Mohazzabi") sued Wells Fargo on or around October 8, 2018 in the Eighth Judicial District Court for the state of Nevada. ECF No. 1-1. He alleges that $20,000 was unlawfully withdrawn from his checking account with Wells Fargo Bank on October 28, 2016. Mohazzabi further alleges that Wells Fargo employees failed to properly investigate the incident. Mohazzabi asserts breach of contract, breach of implied covenant of good faith and fair dealing, quantum meruit, conversion, elder abuse in violation of section 41.1395 of the Nevada Revised Statutes ("NRS"), fraudulent concealment, deceptive trade

1   practices in violation of NRS section 598, and negligent hiring, training, supervision and

2   retention claims in his complaint.

3       Wells Fargo removed the case to federal court on November 6, 2018 and filed its motion

4   to compel arbitration on that same date. ECF Nos. 1, 4. A response and reply were filed. ECF

5   Nos. 11, 15. Wells Fargo also filed a motion to seal its reply. ECF No. 16.

6

7   III.    FACTUAL BACKGROUND

8

9       Mohazzabi visited a Wells Fargo branch on or about October 3, 2016, and signed up for a

10  checking account. While at the bank, he signed a Consumer Account Application. Above the

11  Consumer Account Application, just above Mr. Mohazzabi's signature, it states in relevant part

12

13  that:

14          I have received a copy of the applicable account agreement and the
            privacy policy (each may be amended from time to time) and agree to be

15          bound by their terms. I also agree to the terms of the dispute resolution
            program described in the foregoing agreements. Under the dispute

16          resolution program, our disputes will be decided before one or more
            neutral persons in an arbitration proceeding and not by a jury trial or a

17          trial before a judge. (emphasis in the original)

18

19  In addition to the Consumer Account Application, Wells Fargo alleges that Mohazabbi received

20  a copy of a Consumer Account Agreement ("CAA"). While the parties dispute whether

21  Mohazzabi ever received a copy of the CAA, they do not dispute the contents of the agreement

22  itself. The CAA contains a provision requiring arbitration of "any unresolved disagreement,"

23  before the American Arbitration Association.

24

25      Mohazzabi maintains in a declaration submitted with the Court that he never received the

26  CAA and that no one explained to him that he was waiving his right to a jury trial. Wells Fargo

27  argues that Mohazzabi consented to have the CAA and other disclosure documents emailed to

28  him. Wells Fargo states that its internal records indicate that Mohazzabi clicked on the consent

1  button to accept disclosure documents electronically. Furthermore Wells Fargo notes that its

2  bankers cannot complete the new account opening process until the customer accepts and

3  acknowledges electronic receipt of the CAA and the other disclosure documents.

4         Finally, Wells Fargo moves to seal the documents it submitted to the Court regarding

5  Mohazzabi's account, on the grounds that the documents contain Mohazzabi's personally

6

7  identifiable information  and information that is proprietary to Wells Fargo.

8      IV.   LEGAL STANDARD

9         a.  Motion to Compel Arbitration

10         The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract

11  evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

12  arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

13  in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides two methods for

14  enforcing arbitration: (1) an order compelling arbitration of a dispute; and (2) a stay of pending

15  litigation raising a dispute referable to arbitration. 9 U.S.C §§ 3, 4.

16         "By its terms, the Act leaves no place for the exercise of discretion by a district court, but

17  instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to

18  which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S.

19  213, 218 (1985). The FAA limits the district court's role to determining (1) whether the parties

20  agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the

21  claims at issue. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014).

22  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope

23  of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp.

24  v. Mercury Const. Corp., 460 U.S. 1, 24–25 (1983). Thus, "[t]he standard for

25  demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny

26  an arbitration motion, since the Act is phrased in mandatory terms." Republic of Nicar. v. Std.

27  Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991). In fact, "Section 2 of the FAA requires courts to

28  enforce agreements to arbitrate according to their terms, in order to place an arbitration agreement

- 3 -

1  upon the same footing as other contracts and to overrule the judiciary's longstanding refusal to

2  enforce agreements to arbitrate." O'Conner v. Uber Technologies, Inc., 904 F.3d 1087, 1093 (9th

3  Cir. 2018) (internal quotations and citations omitted). However, "arbitration is a matter of contract

4  and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

5  submit." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648

6  (1986) (internal quotation omitted).

7         The determination of whether a particular issue should be decided by the arbitrator rather

8  than the court is governed by federal law. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d

9  1126, 1130 (9th Cir. 2000). However, when deciding whether the parties agreed to arbitrate a

10  certain matter, courts generally apply ordinary state law principles of contract interpretation. First

11  Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

12         Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case

13  are within the reach of an arbitration agreement. 9 U.S.C. § 3. Although the statutory language

14  supports a mandatory stay, the Ninth Circuit has interpreted this provision to allow a district court

15  to dismiss the action. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988). A

16  request for a stay is not mandatory. Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d

17  143, 147 (9th Cir. 1978).

18         b.  Motion to Seal

        Courts have long recognized "a general right to inspect and copy public records and

19  documents, including judicial records and documents." Kamakana v. City & Cty. of Honolulu,

20  447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589,

21  597 & n.7 (1978) (quotation marks omitted). However, this right is not absolute. Id. There is a

22  "strong presumption in favor of access" to dispositive motions or their attachments, and a party

23  seeking to seal such documents bears the burden of overcoming this presumption by providing a

24  compelling and fact-based reason for the document to be sealed. Id. (citations and quotation

25  marks omitted)."[I]f the court decides to seal certain judicial records [attached to

26  dispositive motions], it must base its decision on a compelling reason and articulate the factual

27

28

1   basis for its ruling, without relying on hypothesis or conjecture." Id. at 1179 (citation and

2   quotation marks omitted). Compelling reasons include sensitive personal information contained

3   in the records. Id. at 1182.

4

5   V.   DISCUSSION

6       Mohazzabi tries to argue both that he did not consent to arbitration, and that even if the

7   Court found that he did, that the arbitration provision is unenforceable on procedural and

8   substantive unconscionability grounds. The Court disagrees. Based on the evidence submitted by

9   the parties, the Court finds that Mohazzabi and Wells Fargo entered a binding contract to arbitrate,

10  and that the contract is not unconscionable under Nevada state law.

11      The Court first addresses the question of whether the parties consented to arbitration. It is

12  undisputed that Mohazzabi signed a consumer account application that stated above the signature

13  block that he understood that he was consenting to alternative dispute resolution. The Court also

14  finds compelling the evidence that Wells Fargo submitted from its internal database indicating that

15  Mohazzabi had access to and received documents, including the CAA, after providing his email

16  address to Wells Fargo, and clicked "I Accept" on a consent button acknowledging receipt and

17  agreement to the terms contained therein. The Court finds that this is sufficient evidence that

18  Mohazzabi received and consented to the arbitration agreement contained within the CAA.

19      Under Nevada law, an arbitration clause is procedurally unconscionable "when a party

20  lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining

21  power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable

22  upon a review of the contract." KJH & RDA Investor Group, LLC v. Eighth Judicial Dist. Court

23  of State ex rel. Cty. of Clark, 281 P.3d 1192 (Nev. 2009) (internal citations omitted). "The gist of

24  this element 'focuses on two factors: oppression and surprise.'" Id. "An adhesive contract is "a

25  standardized contract form offered to consumers . . . on a 'take it or leave it' basis, without

26  affording the consumer a realistic opportunity to bargain." Burch v. Second Judicial Dist. Court of

27  State ex. rel Cty. of Washoe, 49 P.3d 647, 649 (Nev. 2002). "The distinctive feature of an adhesion

28  contract is that the weaker party has no choice as to its terms." Id.

1      Adhesive contracts are increasingly common for consumers in the marketplace today. KJH

2   & RDA Investor Group, LLC, 281 P.3d, at 1192 (noting that the average consumer "faces adhesive

3   contracts as a reality of obtaining basic goods and services"). However, "[a]n adhesion contract

4   need not be unenforceable if it falls within the reasonable expectations of the weaker or "adhering"

5   party and is not unduly oppressive." Obstetrics and Gynecologists William G. Wixted, M.D. v.

6   Pepper, 693 P.2d 1259, 1261 (Nev. 1985).

7      In this case, the Court finds that the CAA and its corresponding arbitration provision was

8   an adhesive contract. The contract is clearly proforma and prospective customers are not truly

9   given a realistic opportunity to negotiate its terms. Indeed, Wells Fargo itself explains that

10  prospective customers wishing to open an account with the bank could not do so unless the

11  customer acknowledged receipt of and agreed to the terms of the CAA. To expedite the new

12  account process, Wells Fargo employees required customers who did not elect to receive hard

13  copies of the CAA to provide their email addresses on their mobile devices during the account

14  opening process. If the prospective customer had not already consented to receipt of documents

15  electronically, the Wells Fargo employee could not open the new bank account until they clicked

16  "accept." At no point in this process are prospective customers told they can negotiate terms of the

17  contract. The requirement that customers who opt not to receive physical copies of the CAA have

18  their mobile devices with them may also put pressure on prospective customers to agree to terms

19  hurriedly. These are all factors that indicate that Wells Fargo's CAA is an adhesive contract, and

20  because the consumer lacks a meaningful opportunity to agree to the clause terms, is procedurally

21  unconscionable.

22      However, while the Court does find that the agreement was an adhesive contract and

23  procedurally unconscionable, the Court does not find that the agreement was substantively

24  unconscionable. Under Nevada law, a contract may be substantively unconscionable when it

25  contains oppressive terms or is one-sided. Gonski v. Second Judicial Dist. Court of State ex rel

26  Washoe, 245 P.3d 1164, 1169 (Nev. 2010) overruled on other grounds by U.S. Home Corp. v.

27  Michael Ballesteros Trust, 415 P.3d 32 (Nev. 2018). The language regarding agreement to

28  arbitration is contained in the consumer application that customers sign and is also in the

1   accompanying CAA. The CAA describes the arbitration procedures in clear language that provides
2   both consumers and the bank with an opportunity to arbitrate. ECF No. 4-1 ("If your banker is
3   unable to resolve your dispute, you agree that either Wells Fargo or you can initiate arbitration as
4   described in this section."). The agreement requires each party to bear its own costs. Id. The
5   arbitration provision does include a class action waiver, but the Supreme Court has held that such
6   provisions are not per se unconscionable and that state law cannot render them so. AT&T Mobility
7   LLC v. Concepcion, 563 U.S. 333, 348-49 (2011). The Court thus does not find the contract
8   inherently oppressive or one-sided under Nevada law. Because the Court is required to find that a
9   contract is both procedurally and substantively unconscionable in order to find it unconscionable
10  as a whole, and the Court does not find that the arbitration agreement is substantively
11  unconscionable, the Court will not void the arbitration agreement on grounds of unconscionability.
12  Greystone Nevada, LLC v. McCoy, 416 P.3d 198 (Nev. 2018).

13      The Court notes that the arbitration agreement provides that any dispute, including disputes
14  as to the arbitration agreement's "meaning, application or enforcement," must be submitted to
15  arbitration. The Court thus finds that this arbitration clause is broad enough to require that all of
16  Mohazzabi's claims are arbitrated. The Court therefore exercises its discretion as articulated by
17  the Ninth Circuit in Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988) to
18  dismiss all claims in this action.

19      Furthermore, the Court also finds that personally sensitive information is contained in
20  Wells Fargo's reply to its motion to compel arbitration. Compelling reasons being found, the Court
21  will permit Wells Fargo to file its exhibits to its reply brief to its motion to compel arbitration
22  under seal.

23
24
25
26
27
28

1

2      VI.   CONCLUSION

3         IT IS THEREFORE ORDERED that Defendant Wells Fargo, N.A.'s Motion to Compel

4   Arbitration, (ECF No. 4), and Motion to Seal Reply (ECF No. 16) are granted.

5         IT IS FURTHER ORDERED that all claims in this case are dismissed as the Court finds

6   that they are subject to mandatory arbitration.

7         The Clerk of the Court is instructed to close the case.

8

9        DATED: September 25, 2019.

10

11                                 RICHARD F. BOULWARE, II

                                      UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



AMERICAN ARBITRATION ASSOCIATION®

# Online Settlement Tool Guide

How to Locate the Online Settlement Tool:

Step 1: To access the tool, navigate to AAA WebFile® located on the American Arbitration Association® homepage at www.adr.org and click on "My Account". Follow the login instructions. If you do not already have an account, please contact your case administrator.

Step 2: Next, you may click on either "My Cases" within the sidebar on the left or click on "View My Cases" located on the main screen.



Step 3: Locate the case within the "My Cases" Grid. To locate the case, use the search features at the top of the case grid as noted below.



Step 4: Once you have located the case, click on the associated case number to be directed to the case record. The Online Settlement Tool is located on the right-hand side of the case record and is titled "Make Settlement Offers".



AMERICAN ARBITRATION ASSOCIATION°

How to Make an Offer:

Step 1: Within the case record, click on "Make Settlement Offers".



Step 2: Under the heading "Make Offer", complete each of the required boxes.



Step 3: After all of the information has been added, click "Submit Offer". A pop-up box will appear to confirm the offer has been successfully transmitted.



**AMERICAN ARBITRATION ASSOCIATION®**

How to Review My Pending Offers:

Step 1: Within the case record, click on "View Offer History".

Step 2: Locate the offer with a status of "Active". Click "View" to view the offer details.



How to Retract an Offer or Extend the Expiration of an Offer Due Date:

Step 1: Navigate to the case record.

Step 2: Click on "View Offer History".

Step 3: Locate the offer with a status of "Active". Click "View" to view the offer details.

Step 4: In the top right-hand of the screen, click "Actions" and use the drop down box to select either Retract Offer or Extend Expiration Date.



*Retraction Note:* Please note that you cannot retract an offer if the offer has been accepted.

*Extension Note:* You can extend an offer; however, you cannot move it to an earlier due date.



**AMERICAN ARBITRATION ASSOCIATION**°

How to Respond to an Offer or Counteroffer:

If the opposing party makes an offer or counteroffer, you will receive an email with notice of the offer/counteroffer.
To view the offer/counteroffer, log-in to AAA WebFile and follow the steps below.

Step 1:  Navigate to either "My Tasks" within the sidebar on the left or click on "View Pending Tasks" located on the
main screen.

Step 2:  Within the tasks grid, locate and click on the task "Review Settlement Offer/Counteroffer" for the corresponding
case.

Step 3:  You will be directed to the case record. In the "Pending Case Tasks" grid, click on the task "Review Settlement
Offer/Counteroffer".



Step 4:  Next, click on "View" under "Offer Details".

Step 5:  Once you have reviewed the offer, click "Close" and navigate to the "Respond to Offer" section as noted below.
You may elect to counter, accept or reject the offer within this section.



ONLINE SETTLEMENT TOOL



**AMERICAN ARBITRATION ASSOCIATION°**

# Online Settlement Tool FAQ

1.  **What is the online settlement tool?**

    The settlement tool is an online portal in which the parties may submit settlement offers and counteroffers in an attempt to resolve the case amongst themselves. *Note: this tool is currently only available for consumer cases.*

2.  **Where can I access the tool?**

    The tool can be found on AAA WebFile® under "My Cases." Upon opening your case, you will see a red button on the left side of the screen that says "Make a Settlement Offer." Note: Pro se individuals and representatives with case access can utilize the tool at all times.

    - To access the tool, navigate to AAA WebFile located on the American Arbitration Association® homepage at www.adr.org and click on "My Account."
    - From there, follow the login instructions. If you do not already have an account, please contact your case administrator.
    - Next, you may click on either "My Cases" within the sidebar on the left or click on "View My Cases" located on the main screen. To locate the case, use the search feature at the top of the case grid.
    - Once you have located the case, click on the associated case number to be directed to the case record.
    - The Online Settlement Tool is located on the right-hand side of the case record and is titled "Make Settlement Offers".

3.  **How does it work?**

    Parties who use the tool can submit either lump sum or itemized offers and/or counteroffers up until the case is closed. There is also a comment section that will allow the parties to provide an explanation and additional terms and conditions for their offer. Should the parties reach a resolution using the tool, the AAA® case administrator will be notified, and will contact the parties shortly after.

4.  **Can I retract an offer?**

    Yes. Offers or counteroffers may be retracted at any time prior to the other party accepting or declining it.

5.  **Is it mandatory to use the tool?**

    No, however, the AAA certainly encourages its use if the parties are attempting to work out a settlement. The parties are free to use any method most convenient to engage in settlement negotiations.

 

 AMERICAN ARBITRATION ASSOCIATION®

6.  Will the arbitrator and/or the AAA see my offer, counteroffer, or offer rejection?

    No. Neither the arbitrator nor the AAA will have access to the communications; however, the AAA will receive an email notification that an offer or counteroffer has been accepted.

7.  Can I track previous offers and counteroffers?

    Yes. All offers/counteroffers can be viewed in the "View Offer History" tab.

8.  Can I extend the amount of time for the other side to accept my offer/counteroffer?

    Yes, the timing of offers and counteroffers can be extended.

9.  Can I make a non-monetary offer using the tool?

    No, although you can add non-monetary terms/items in the comments section of your offer.

10. Are settlement offers using the tool final and binding?

    Yes. Therefore, we encourage the parties to be certain of the terms they're offering to the other side. Similar to offline settlement negotiations, use of the tool requires a good faith effort on the part of both parties.

11. There are more than two parties on my case. Can I use the tool for my case?

    Unfortunately, the tool is only designed to handle two-party cases, and is not available for cases involving more than two parties.

12. I accepted an offer in error. What should I do?

    Contact your case administrator as soon as possible so he/she is aware of the issue. Also, contact the other party to let them know you accepted the offer in error.

13. Can I continue to proceed with my arbitration case even while using the tool?

    Yes, the arbitration will proceed as scheduled even if the parties are actively using it. However, if the parties believe progress is being made using the tool, and would like to put the arbitration case on hold, they may do so by contacting their case administrator.

 

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION



Pro Se Arbitration Administration Team
P.O. Box 19609
Johnston, RI 02919

November 8, 2019

Behrooz Mohazzabi

Via Email to: ▓▓▓▓▓@gmail.com

Wells Fargo Bank
301 South College Street
Charlotte, NC 28202
Via Email to: wellsfargosop@cscinfo.com

Case Number: 01-19-0003-2880

Behrooz Mohazzabi
-vs-
Wells Fargo Bank

RESPONSE DATE: November 22, 2019

Dear Parties:

Thank you for choosing the American Arbitration Association (AAA) to assist you in resolving your dispute. This case is being administered by the Pro Se Arbitration Administration Team. Please review the Pro Se Arbitration Information Sheet, which will provide you with some basic information about the AAA's administration process. You may also view our website, www.adr.org/pro-se.

This will acknowledge that the filing requirements have been met. Your case is now assigned to me for administration.

We invite the parties to utilize the AAA WebFile® Online Settlement Tool, which affords you the ability to engage in online settlement negotiations. Through this tool the parties can submit offers and counteroffers, as well as the ability to reject or accept these offers. Parties may elect to submit either a lump sum or itemized offer. There is also a comments section where a party can include specific and additional terms of the offer. For a step-by-step guide, please see the attached Online Settlement Tool Guide and Online Settlement Tool FAQ.

The Consumer Arbitration Rules have been applied to this matter.

### Administrative Fees:

- Consumer is responsible for $200 as their share of the filing fee, which has been satisfied.
- Business is responsible for $300 as their share of the filing fee, which has not been paid.
- A nonrefundable Case Management Fee of $1,400 will be assessed to the business 60 days after the date of this letter or upon the appointment of the arbitrator, whichever comes first.
- An additional administrative fee of $500 is payable by the Business when there is an evidentiary hearing process and telephonic or in-person hearings are held.

Unpaid fees are due on or before the above response date.



Invoices can be paid online through AAA's WebFile without first having to register. Visit www.adr.org and select 'File & Manage a Case' from the home page then choose "Pay Online - Pay case related invoices as a guest". To pay online you will need your AAA case number and Pay Pin. Your Pay PIN can be found in the lower left corner of your invoice or statement. The AAA accepts Visa, MasterCard and American Express. If you are mailing the payment, please send it to the address on the invoice and include the top portion of the invoice with payment. Checks should be made payable to the American Arbitration Association.

Pursuant to section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the Association a declaration under of oath regarding your monthly income and the number of persons in your household. Please contact the undersigned if you have any questions regarding the waiver of administrative fees.

### Arbitrator Compensation:

- Arbitrators serving on a case with an in-person or telephonic hearing will receive compensation at a rate of $2,500 per day.
- Arbitrators serving on a desk arbitration/documents only case will receive compensation at a rate of $1,500 per case.
- Deposits for arbitrator compensation must be received prior to the administrative appointment of an arbitrator or the AAA may decline to further administer this matter.

### Answer:

- The Respondent has until the above response date to file an answer to the claim.
- Answers received after the due date will still be provided to the arbitrator.
- Please reference the Rules if filing a counterclaim.
- Per Consumer Rule R-2(e) "If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed."

### Initial List of People Form:

- We ask that the enclosed Initial List of People Form be returned to the AAA by the above response date. Further instructions are provided on the enclosed reference sheet.

### Hearing Type and Locale of In-Person Hearing:

- If an in-person hearing is to be held, the requested hearing location is , . Please refer to the Consumer Arbitration Rules for information regarding the Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place).
- If no disclosed claim or counterclaim exceeds $25,000, the matter shall be resolved by the Procedures for the Resolution of Disputes through Document Submission contained in the Consumer Arbitration Rules, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

### Next Administrative Step:

- When appropriate fees and arbitrator compensation deposits are on hand, the AAA will administratively appoint an Arbitrator from the National Roster and we will provide you with the completed arbitrator appointment documents.



o   Upon appointment of the arbitrator, the Case Management Fee is due from the Business. Send to my attention any requests to delay the appointment of the arbitrator. However, the Case Management Fee is incurred by the Business sixty (60) days from the date of this letter.

o   Once all fees and deposits are on hand, a preliminary management hearing will be scheduled.

## Small Claims Court Option:

o   We draw your attention to R-9 of the Consumer Arbitration Rules. If a party's claim is within the jurisdiction of a small claims court, either party may choose to exercise the small claims option. If either party would like this matter decided by a small claims court, please send your written request to the case administrator and copy all other parties. If the parties disagree over whether the claim is within the jurisdiction of a small claims court, the case will proceed in arbitration and the arbitrator may make a final determination on whether the claim may proceed to small claims court.

## Mediation:

o   Mediation is available to the parties at any time prior to the issuance of the award. In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome. If you would like more information about the AAA's mediation services please contact me or visit Mediation.org for more information.

## CA CCP §1282.4

o   Your attention is directed to California Code of Civil Procedure Section 1282.4, regarding representation by an attorney not licensed to practice in the State of California. Please refer to the State Bar of California website if you need a certification form as described in the statute. Admissions requirements, Out of State Attorney Arbitration Counsel FAQ, and other information may be found at The State Bar of California.

Under California law (the Ethics Standards for Neutral Arbitrators in Contractual Arbitration), upon the appointment of an arbitrator in consumer arbitrations, the AAA is required to disclose certain information regarding cases we have administered. Also, pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, consumer arbitrations. To fulfill our obligations under California law the AAA relies on the information provided by the parties. Therefore, we ask that you take the time to review party names in the case caption (located under the case number at the top of this letter) and immediately advise the undersigned if any changes need to be made.

Please review the enclosed Consumer Arbitration Reference Sheet and Steps of the Consumer Arbitration Process as well as our website at www.adr.org for additional information regarding the administration process.

The AAA appreciates the opportunity to assist you with your dispute resolution needs.

Sincerely,
/s/
Pro Se Administrator 6
Case Administrator
Email: ProSeAdministrator6@adr.org
Fax: (866)644-0234

Supervisor Information: Pro Se Manager 4, Manager of ADR Services, ProSeManager4@adr.org
Enclosures



## PRO SE ARBITRATION ADMINISTRATION INFORMATION SHEET

Thank you for filing a case with the American Arbitration Association ("AAA").

We would like to introduce you to the AAA and the Pro Se Arbitration Administration Team. This information is being provided in order to educate parties on the role of the AAA in administering the case that has been filed.

Because you are proceeding with your arbitration without representation, which the AAA refers to as a Pro se party, the AAA has assigned the administration of your case to its Pro Se Arbitration Administration Team. Below is some basic information about the arbitration process you need to be aware of:

- The AAA is an independent organization that is not affiliated with the individuals, companies or law firms involved with this dispute. The arbitrator is not an employee of the AAA, but rather the AAA maintains rosters of individuals with expertise, qualifications and knowledge in a variety of subject matters and fields.

- The AAA manages only the administrative aspects of the arbitration, such as the appointment of the arbitrator and handling the fees associated with the arbitration. The AAA and/or the arbitrator do not assist the parties in presenting their case.

- The AAA and/or the arbitrator do not provide legal advice or assistance to the parties and cannot give advice about your case or what documents you should use as evidence. If you need legal advice, you should consider consulting with an attorney.

- The AAA does not decide the outcome of a case or make any rulings on issues such as what documents must be shared with each side. The arbitrator makes such decisions or rulings and the AAA cannot overrule or change an arbitrator's decisions or rulings.

- Unless directed otherwise, communications with the AAA for cases administered by the AAA's Pro Se Arbitration Administration Team are to be conducted only in writing. In general, the AAA will not accept phone calls and all communications must be in writing/email.

  - Unless the AAA directs the parties differently, all written communications should be shared with the other parties involved in the arbitration. If you fail to share communications with the other party, the AAA or the arbitrator might not act on any requests or objections contained within those communications.

- It is very important that the parties follow the deadlines set in the Rules and by the AAA. When a deadline is set for a party to take an action, that action must be taken by that time. If a party is unable to meet a deadline, they should send a written communication to the case administrator immediately.

Finally, a variety of resources for pro se arbitration parties is provided by the AAA on our website, www.adr.org/pro-se. These include a document entitled "Find an Attorney or Other Legal Representation," should you have an interest in finding representation in this arbitration.

## *CONSUMER ARBITRATION REFERENCE SHEET*

### APPLICATION OF CONSUMER RULES:

The AAA applies the Consumer Arbitration Rules to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The Consumer Rules and the Consumer Due Process Protocol may be found on our web site at www.adr.org.

In order to determine if the arbitration agreement substantially and materially complies with the due process standards of the Consumer Due Process Protocol, the AAA reviews the parties' arbitration clause only, and not the entire contract. The AAA's review of the arbitration clause is only an administrative review to determine whether the clause complies with the AAA's minimum due process standards in consumer arbitrations. However, the AAA's review is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

### COMMUNICATION:

The AAA will make maximum use of electronic mail when communicating in writing, and requests that the parties do the same. If you have not provided us with your email address, we ask that you do so at this time. If a party does not provide us with their email address, then that party will have to rely on receiving correspondence via regular mail.

This case will be administered by facilitating the exchange of appropriate written correspondence either through the AAA or directly to the arbitrator. To ensure the proper handling of case-related documents, the parties are asked to always copy the AAA and all other parties. The AAA will determine if written communication was properly served to all participants and will provide that correspondence to parties or the arbitrator as needed.

### EXTENSION REQUESTS:

The AAA has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of the administrative process, please try to obtain the other party's agreement prior to contacting the AAA. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

### AAA WEBFILE:

We invite the parties to visit our website to learn more about managing your case online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, such as filing additional claims; entering the Initial List of People information; viewing invoices and submitting payments; sharing and managing documents; and review of status, and hearing dates and times. If the case does not show up when you log in, please contact your Administrator.

### MEDIATION:

 

The AAA provides mediation services for all cases. Mediation is a private, non-binding process under which the parties submit their dispute to a third-party mediator. The mediator may suggest ways of resolving the dispute, but does not impose a settlement on the parties; the parties attempt to negotiate their own settlement agreement. If you would like more information about the AAA's mediation services including our Fixed Rate Mediation Program for cases involving only two parties with claims under $75,000 for the flat rate of $850, please contact your case administrator or visit AAAMediation.org for more information.

## REFUND SCHEDULE:

For cases filed prior to September 1, 2018, the AAA has a Refund Schedule found in the Costs of Arbitration section of the Rules. If the case is closed as settled or withdrawn within 30 calendar days of the claimant having met their filing requirements, the business is eligible for a 50% refund of the business's filing fees. However, no refund of the filing fee will be made once an arbitrator has been appointed and no refunds will be made on awarded cases. If the case is closed as settled or withdrawn prior to receipt of filing fees from the business, the AAA will bill the business in accordance with this refund schedule.

If the parties enter settlement negotiations at any time after the AAA has opened its file, you should take into consideration the refund schedule in the Rules. The AAA will only refund filing fees as outlined in the Rules and does not refund arbitrator costs incurred when parties settle their dispute or withdraw their claims. We encourage parties to resolve their disputes as amicably as possible and this notice is just to alert you to this issue so that it does not become a concern in the future.

## REQUIREMENT PER CALIFORNIA STATUTE:

Pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, all of our consumer arbitrations. The AAA's Consumer Arbitration Statistics are available on the consumer page of the AAA's website.

To fulfill our obligations under California law the AAA relies on the information provided by the parties. Therefore, we ask that you review the party names in the case caption and immediately advise your case administrator of any needed changes.

 

### American Arbitration Association /
### International Centre for Dispute Resolution
### Standards of Conduct for Parties and Representatives

The American Arbitration Association ("AAA") and its international division, the International Centre for Dispute Resolution ("ICDR"), strive at all times to provide dispute resolution services in accordance with our Shared Mission, Vision, and Values. AAA and ICDR employees' conduct is governed by *Standards of Ethics and Business Conduct*, and the conduct of our arbitrators and mediators is governed by separate codes of ethics as well. These codes include the *Code of Ethics for Arbitrators in Commercial Disputes*, the *Code of Professional Responsibility for Arbitrators of Labor-Management Disputes*, and the *Model Standards for Conduct of Mediators*.

The AAA also requires that parties and their representatives ("Participants") conduct themselves in an appropriate manner when utilizing the AAA's services. Participants in AAA cases are required to abide by the following standards of conduct, and failure to do so may result in the AAA declining to further administer a particular case or caseload.

*Participants in AAA-administered cases shall treat all employees and others involved in the proceedings in a courteous, respectful and civil manner.*

*Participants must respect the AAA's policy against any form of unlawful discrimination based on an individual's gender, race, ethnicity, age, religion, national origin, or any other legally-protected characteristic.*

*Participants shall not engage in harassing, threatening, or intimidating conduct toward AAA employees or neutrals. Party representatives shall advise their clients and witnesses of the appropriate conduct that is expected of them during the proceedings.*

*Participants shall refrain from using vulgar, profane, or otherwise inappropriate language.*

*Participants shall direct case-related communications only to their assigned case management staff at the phone, email, or address provided by AAA staff, and shall copy the other parties on such communications as required by the rules governing the case, or as directed by the AAA. Those assigned case-management staff will raise matters with other AAA executives directly and as necessary.*

*Participants shall not contact members of the AAA's Board of Directors on case-related matters. The AAA's Board has no involvement in the day-to-day management of the AAA, and AAA Directors do not have any authority or input regarding the administration or outcome of a particular matter.*

*Threats of violence or unlawful conduct will not be tolerated and will be forwarded to law enforcement authorities.*

*Participants shall not repeatedly file unmeritorious demands for arbitration, pleadings, or other papers, or engage in other tactics that the AAA or an arbitrator determines are frivolous, filed for the purpose of harassment, or primarily intended to cause unnecessary delay or increased costs.*

*Participants shall not withdraw a previously filed matter for the purpose of refiling the same or similar matter due to their discontent with the actions or decisions of the AAA, its case administrator, or the arbitrator/mediator.*

*Participants shall not have previously been declared to be a vexatious litigant or similar equivalent in any state or federal court or by an arbitrator in a prior arbitration.*

# EXHIBIT B



# Severson & Werson
### A Professional Corporation

Benjamin J. Howard
Attorney
Direct Line: (415) 677-5695
bjh@severson.com

One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

July 29, 2020

**Via Electronic Mail Only**
Mr. Behrooz Mohazzabi
Email: ▓▓▓▓▓@gmail.com

Dear Mr. Mohazzabi:

It has been brought to my attention that someone using your phone number has been repeatedly attempting to contact a Wells Fargo employee and the employee's spouse. As you know, my office is representing Wells Fargo in connection with your arbitration claim. It is inappropriate for you, or anyone acting on your behalf, to be contacting anyone connected to the Bank about your claim. Moreover, these repeated calls are harassing and annoying, and they are causing anxiety and concern.

PLEASE IMMEDIATELY CEASE, DESIST, AND REFRAIN FROM MAKING ANY FURTHER ATTEMPTS TO DIRECTLY OR INDIRECTLY CONTACT ANY BANK EMPLOYEES AND THEIR FAMILY MEMBERS—THIS INCLUDES LEAVING VOICEMAIL MESSAGES, TEXT MESSAGING, AND SENDING E-MAIL COMMUNICATIONS.

If you do not cease and desist, the Bank will take all actions necessary and appropriate to protect its employees and their family members from you and those acting on your behalf—including reporting these actions to law enforcement and seeking Court intervention.

If you have any questions, please feel free to contact me directly. Do not contact any Bank employee or family members.

Regards,

Benjamin J. Howard

BJH:MIW

07685.2360/15438532.2                San Francisco ~ Orange County

EXHIBIT C




> I will sign and return the notice of acknowledgment and receipt within 20 days per CCP § 415.30. Now that you have been advised we are representing Ms. Barba, you are not allowed to contact her, either directly or indirectly through others working on your behalf (this includes family members, process servers, paralegals). All communications to Ms. Barba must be directed to us.
>
> Thanks,
> Ben
>
> Benjamin J. Howard
> Attorney
> One Embarcadero Center, Suite 2600
> San Francisco, CA 94111
>
> Main: (415) 398-3344
> Direct: (415) 677-5695
> Email: mailto:bjh@severson.com
> http://www.severson.com
>
> This transmission, and any derivative transmission, may contain privileged and/or confidential information. If you are not the intended recipient, do not use, disseminate, or copy this material. Delivery of this transmission to any person other than the intended recipient does not waive any right or privilege. If you received this transmission in error, please immediately notify the sender and delete the transmission.
>
> -----Original Message-----
> From: bruce mohazzabi <b███████████@gmail.com>
> Sent: Wednesday, August 5, 2020 2:08 PM
> To: Benjamin J. Howard <bjh@severson.com>
> Subject: Proof of service
>
> Hello Ben,
> Could you please sign the proof of service and email it back to us.
> Thanks,
> Bruce
>
> Sent from my iPhone
>

# EXHIBIT D

 

Board of Communications                                      boardcommunications@wellsfargo.com

From:              bruce mohazzabi <b▮▮▮▮▮▮▮▮@gmail.com>
Sent:              Thursday, May 25, 2017 12:19 AM
To:                Board Communications; Craig MacGregor; Keith Barlow
Subject:           Case no. 117729529,

Marlin,
Congratulation, what kind people are you, how do you want to handle your conscious for the rest of your life.
First you said the surveillance video of Oct. 27, 2016 is lost. Now you saying (none existent surveillance video
tape for afternoon of Oct. 28, 2016 is lost, since I never been on that Branch on the afternoon Oct. 28, 2016).
Lorena Barba sent 2 set pictures with no dates to Claiming of morning and afternoon of Oct. 28, 2016. now she
has told to Dedicative Craig MacGreger the Surveillance video of afternoon of October 28, 2016 is lost. What
shame, the copy of her claim should still be in Wells Fargo Bank Branch in San Francisco.
Any how I am not could take this much of fraud and coverup of crime.
I am ending my life tonight, I hope justest prevail. and you could live with your conscious.
Behrooz Mohazzabi

1




Board of Communications                                    BoardCommunications@wellsfargo.com

From:                bruce-mohazzabi-<b[redacted]@gmail.com>
Sent:                Saturday, May 20, 2017 5:14 PM
To:                  Board Communications; Craig MacGregor
Subject:             case no. 117729529

Marlin,

Crime cover up happened by Lorena Barba and you by changing the evidence of crime.
Detective Craig MacGregor from Las Vegas talked with 3 different Wells Fargo fraud investigation in Las
Vegas, all three confirmed that there is no surveillance video or pictures showing me withdraw money for the
afternoon Oct. 28, 2016. they also confirmed there are 2 surveillance video belong to morning of 27 and
morning of 28, 2016.
Obviously you both cheated on dates and evidence.
I told you few times I cannot take it. By the time justice prevailed, I am not going to be alive.
As a result divide my money equally, my money plus all cause action for my death, between two sons,
Borzoych and Roozbeh Mohazzabi, Both their name are on my account.

Behrooz Mohazzabi

## DECLARATION OF LORENA OCANA

I, Lorena Barba, state and declare as follows:

1.      I have been employed by Wells Fargo Bank, N.A. for over 17 years.  I am currently employed as a Fraud and Claims Ops Specialist at Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank"). In my employment with Wells Fargo, I sometimes go by my maiden name Lorena Barba. I make this declaration in support of the Bank's Application for a workplace violence restraining order against Behrooz Mohazzabi.

2.      In November 2016, Mr. Mohazzabi reported to the Bank an alleged unauthorized withdrawal from his account at a Las Vegas, Nevada Wells Fargo branch. In mid-November 2016, I was assigned to research Mr. Mohazzabi's claim against the Bank. On November 21, 2016, I sent a letter on behalf of the Bank denying Mr. Mohazzabi's claim. Mr. Mohazzabi's claim was denied because his California Driver License was used as identification in the disputed withdrawal, the transaction was PIN validated, and surveillance images of Mr. Mohazzabi were obtained of him completing the transaction. A true and correct copy of that letter is attached as Exhibit A.

3.      I understand that Mr. Mohazzabi then filed a lawsuit against the Bank for the disputed withdrawal. In connection with that legal matter, I signed a declaration.

4.      In late July, my husband and I began receiving multiple harassing calls on our personal cell phones from someone using the phone number (XXX) XXX-0757. My husband received about four calls from this number and told the individual to stop calling him. The individual demanded to speak with Lorena Barba. I received about three or four calls from the same number. I know this because our phones both have caller ID. The individual calling sounded like a man. He demanded my home address so he could serve me with a lawsuit filed by Behrooz Mohazzabi. My husband and I both told the man to stop calling. It was very concerning to both of us that someone had our personal cell phone numbers.

5.      The calls did not stop and we both blocked the (XXX) XXX-0757 phone number. My husband and I continued to receive phone calls, although from an unknown/blocked number.

07685.2481/15452292.4



1   My husband received one and I received about four more of these unknown/blocked numbers, but

2   the caller would hang up as soon as either of us answered. Prior to the calls that began in late July

3   from the 0757 number, my husband and I did not regularly receive calls from blocked numbers

4   where the caller hung up as soon as we answered. I suspect that the calls are being made by Mr.

5   Mohazzabi or someone on his behalf.

6       6.      On July 30, I learned that Mr. Mohazzabi had filed a lawsuit against me.

7       7.      On August 9, at or around 11:04 P.M. an individual loudly knocked on my front

8   door. In order to get to my front door, the man had to open the gate at the entrance to my property.

9   This woke up my entire family, including my two kids, and my dogs who began barking at the

10  stranger. My husband answered the front door. I was able to overhear some of the conversation.

11  The individual demanded to speak with me. The tone of his voice was angry, rude, and impatient.

12  He eventually left. My husband told me that he saw the man sitting in his car, apparently watching

13  our home, until about midnight. My husband described the man as tall, thin, and appears to be in

14  his mid 30's. Based on pictures I've seen of Mr. Mohazzabi, I do not believe it was him. But

15  because this occurred shortly after the harassing phone calls, and after I learned of the lawsuit, and

16  because the man referred to me by name, I suspect that this was someone that Mr. Mohazzabi sent.

17      8.      My family and I feel threatened by the repeated phone calls and the disturbing

18  middle-of-the-night encounter.

19      9.      On August 10, 2020, fearing for the safety of my family, I filed a police report with

20  the Baldwin Park Police Department, incident report #20-23208.

21      10.     I am currently working from home due to the global pandemic and current

22  government restrictions.

23      11.     I am aware that Mr. Mohazzabi is angry that I denied his claim back in November

24  2016. I am also aware that Mr. Mohazzabi repeatedly accused me of tampering with evidence and

25  called me a thief, a liar, and a criminal in his legal action against Wells Fargo. Because of this, and

26  because of the harassing phone calls and the upsetting encounter on August 9, I am fearful that

27  Mr. Mohazzabi will act violently towards me and my family.

28

07685.2481/15452292.4

2

DECLARATION OF LORENA OCANA

1      I declare under penalty of perjury under the laws of California that the foregoing is true

2 and correct. Executed at Baldwin Park, California this 12th day of August, 2020.

3

4

5                            LORENA OCANA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07685.2481/15452292.4                       3                                              DECLARATION OF LORENA OCANA

EXHIBIT A

 

Liability Fraud and Claims Department
P. O. Box 5810
MAC E2001-013
El Monte CA 91734-1810

November 21, 2016

BEHROOZ MOHAZZABI



Subject: Resolution of your fraud claim
Claim #: 2016111500326
For accounts: xxxxxx-3494

Dear BEHROOZ MOHAZZABI,

Wells Fargo's Fraud Claims Department has completed its review of your claim for reimbursement.

Your claim includes one in branch withdrawal in the amount of $20,000.00 which posted to your account on 10/28/2016.

In researching your inquiry about possible fraud we found that your CA state issued Driver's License was used as identification in the disputed transactions. In addition, the transaction was Pin validated.

Furthermore, branch video was obtained of the disputed transaction and upon reviewing the branch video; Personal Banker JASON PAUL DAVIS at the MISSION BAY Branch which is located on 286 KING ST. SAN FRANCISCO, CA 94107 has identified you as performing the transaction.

Based on the above information, your claim for reimbursement has been denied.

If you have any questions, please contact us at (877) 548-9230, Monday through Friday between 7:00 a.m. to 6:00 p.m., and Saturday between 7:00 a.m. and 3:00 p.m. Pacific Time.

Thank you.

Sincerely,

Lorena Barba
Financial Crimes Specialist
Liability Fraud and Claims Department

**WV-120**

## Response to Petition for Workplace Violence Restraining Orders

Clerk stamps date here when form is filed.

### Use this form to respond to the *Petition* (form WV-100)

- Read *How Can I Respond to a Petition for Workplace Violence Restraining Orders?* (form WV-120-INFO) to protect your rights.
- Fill out this form and take it to the court clerk.
- Have someone age 18 or older—not you—serve the petitioner or the petitioner's lawyer by mail with a copy of this form and any attached pages. (*Use form WV-250, Proof of Service of Response by Mail.*)

Fill in court name and street address:

Superior Court of California, County of

(1) **Petitioner (Employer)**
Name: _____

(2) **Employee Seeking Protection**
Full Name: _____

Fill in case number:

Case Number:

(3) **Respondent (Person From Whom Protection Is Sought)**
a.  Your Name: _____

   Your Lawyer (*if you have one for this case*)
   Name: _____    State Bar No.: _____
   Firm Name: _____

b.  Your Address (*You may give a mailing address if you want to keep your street address private; skip this if you have a lawyer.*)
   Address: _____
   City: _____ State: _____ Zip: _____
   Telephone: _____ Fax: _____
   E-Mail Address: _____

The court will consider your response at the hearing. Write your hearing date, time, and place from form WV-109, item (4) here:

| Hearing Date | → Date: _____ Time: _____ |
|---|---|
| | Dept: _____ Room: _____ |

If you were served with a Temporary Restraining Order, you must obey it until the hearing. At the hearing, the court may make orders against you that last for up to three years.

(4) ☐ **Personal Conduct Orders**
a.  ☐ I agree to the orders requested.
b.  ☐ I do not agree to the orders requested.
   (*Specify why you disagree in item* (11) *on page 3.*)
c.  ☐ I agree to the following orders (*specify below or in item* (11) *on page 3*):
   _____
   _____
   _____

(5) ☐ **Stay-Away Orders**
a.  ☐ I agree to the orders requested.
b.  ☐ I do not agree to the orders requested. (*Specify why you disagree in item* (11) *on page 3.*)
c.  ☐ I agree to the following orders (*specify below or in item* (11) *on page 3*):
   _____
   _____

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2018, Mandatory Form
Code of Civil Procedure, §§ 527.8 and 527.8

**Response to Petition for Workplace Violence Restraining Orders**
**(Workplace Violence Prevention)**

Case Number:

**6** ☐ **Additional Protected Persons**

a. ☐ I agree that the persons listed in item ④ of the Petition may be protected by the order requested.

b. ☐ I do not agree that the persons listed in item ④ of the Petition may be protected by the order requested.

**7** ☐ **Firearms Prohibition and Relinquishment**
If you were served with form WV-110, *Temporary Restraining Order*, you cannot own or possess any guns, other firearms, or ammunition. You must sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms in your immediate possession or control within 24 hours of being served with form WV-110. (See item ⑧ of form WV-110.) You must file a receipt with the court. You may use form WV-800, *Proof of Firearms Turned In, Sold, or Stored* for the receipt.

a. ☐ I do not own or control any guns or other firearms.

b. ☐ I ask for an exemption from the firearms prohibition under Code of Civil Procedure section 527.9(f) because carrying a firearm is a condition of my employment, and my employer is unable to reassign me to another position where a firearm is unnecessary. *(Explain):*

☐ *Check here if there is not enough space below for your answer. Put your complete answer on an attached sheet of paper and write "Attachment 7b—Firearms Surrender Exemption" as a title. You may use form MC-025, Attachment.*

_____
_____
_____
_____

c. ☐ I have turned in my guns and firearms to the police or sold them to or stored them with a licensed gun dealer. A copy of the receipt ☐ is attached. ☐ has already been filed with the court.

**8** ☐ **Other Orders**

a. ☐ I agree to the orders requested.

b. ☐ I do not agree to the orders requested. *(Specify why you disagree in item ⑪ on page 3.)*

c. ☐ I agree to the following orders *(specify below or in item ⑪ on page 3):*

_____
_____
_____
_____
_____
_____

**9** ☐ **Denial**
I did not do anything described in item ⑧ of form SV-100. *(Skip to ⑪.)*

Response to Petition for Workplace Violence
Restraining Orders
(Workplace Violence Prevention)

Case Number:

(10) ☐ **Justification or Excuse**

If I did some or all of the things that the petitioner has accused me of, my actions were justified or excused for the following reasons *(explain)*:

☐ *Check here if there is not enough space below for your answer. Put your complete answer on an attached sheet of paper and write "Attachment 10—Justification or Excuse" as a title. You may use form MC-025,* Attachment.

---
---
---
---
---
---
---
---
---
---
---
---
---

(11) ☐ **Reasons I Do Not Agree to the Orders Requested**

*Explain your answers to each order requested that you do not agree with.*

☐ *Check here if there is not enough space below for your answer. Put your complete answer on an attached sheet of paper and write "Attachment 11—Reasons I Disagree" as a title. You may use form MC-025,* Attachment.

---
---
---
---
---
---
---
---
---
---
---
---
---
---
---
---
---
---
---

Case Number: _____

(12) ☐ **No Fee for Filing**

   a. ☐ I ask the court to waive the filing fee because the petitioner claims in form WV-100 item (14) to be entitled to free filing.

   b. ☐ I request that I not be required to pay the filing fee because I am eligible for a fee waiver. *(Form FW-001, Request to Waive Court Fees, must be filed separately.)*

(13) ☐ **Costs**

   a. ☐ I ask the court to order the petitioner to pay my court costs. The amounts requested are:

| Item | Amount | Item | Amount |
|------|--------|------|--------|
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |

     ☐ *Check here if there are more items. Put the items and amounts on the attached sheet of paper and write "Attachment 13—Costs" for a title. You may use form MC-025, Attachment.*

   b. ☐ I ask the court to deny the request of the person asking for protection that I pay his or her lawyer's fees and costs.

(14) Number of pages attached to this form, if any: _____

Date: _____

_____     ► _____
*Lawyer's name (if any)*                *Lawyer's signature*

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____     ► _____
*Type or print your name*               *Sign your name*

For your protection and privacy, please press the Clear

**WV-200** **Proof of Personal Service**

Clerk stamps date here when form is filed.

**(1)** **Petitioner (Employer)**
Name: Wells Fargo Bank, N.A.

**(2)** **Employee in Need of Protection**
Name: Lorena Ocana

**(3)** **Respondent (Person From Whom Protection Is Sought)**
Name: Behrooz Mohazzabi

**(4)** **Notice to Server**
The server must:
- Be 18 years of age or older.
- Not be listed in items ①, ②, or ④ of Form WV-100.
- Give a copy of all documents checked in ⑤ below to the respondent. (You cannot send them by mail.) Then complete and sign this form and give or mail it to the petitioner.

*Fill in court name and street address:*
Superior Court of California, County of
Los Angeles
Pomona Branch
400 Civic Center Plaza
Pomona, CA 91766

*Court fills in case number when form is filed.*
Case Number:
20PSR000945

**PROOF OF PERSONAL SERVICE**

**(5)** I gave the respondent a copy of the forms checked below:
a. ☒ WV-109, *Notice of Court Hearing*
b. ☒ WV-110, *Temporary Restraining Order*
c. ☒ WV-100, *Petition for Workplace Violence Restraining Orders* (blank form)
d. ☒ WV-120, *Response to Petition for Workplace Violence Restraining Orders* (blank form)
e. ☐ WV-120-INFO, *How Can I Respond to a Petition for Workplace Violence Restraining Orders?*
f. ☐ WV-130, *Workplace Violence Restraining Order After Hearing*
g. ☐ WV-800, *Proof of Firearms Turned In, Sold, or Stored* (blank form)
h. ☐ Other *(specify):* _____

**(6)** I personally gave copies of the documents checked above to the resondent
a. On *(date):* _____ b. At *(time):* _____ ☐ a.m. ☐ p.m.
c. At this address: _____
   City: _____ State: _____ Zip: _____

**(7)** **Server's Information**
Name: _____ Telephone: _____
Address: _____
City: _____ State: _____ Zip: _____

*(If you are a registered process server):*
County of registration: _____ Registration number: _____

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____          _____
*Type or print server's name*          *Server to sign here*

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2014, Optional Form
Code of Civil Procedure, §§ 527.8, 1011

**Proof of Personal Service**
**(Workplace Violence Prevention)**

WV-200, Page 1 of 1

# Exhibit 5

1        SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT K                HON. JOHN A. SLAWSON, JUDGE

4

5    WELLS FARGO BANK, N.A.,          )
                                      )
6                   PETITIONER(S),    )
                                      )
7              VS.                    )  CASE NO.
                                      )  20PSRO00945
8    BEHROOZ MOHAZZABI,               )
                                      )
9                   RESPONDENT(S).    )
     _____ )

10

11

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS

13            THURSDAY, SEPTEMBER 3, 2020

14

15   APPEARANCES:

16   FOR THE PETITIONER      SEVERSON & WERSON
     WELLS FARGO BANK:       BY:  BENJAMIN J. HOWARD, ESQ.
17        -AND-              (PRESENT VIA L.A. COURT CONNECT)
     FOR THE PROTECTED       1 EMBARCADERO CTR
18   PARTY LORENA OCANA:     SUITE 2600
                             SAN FRANCISCO, CA  94111
19

20

21   FOR THE RESPONDENT:     IN PROPRIA PERSONA
                             (PRESENT VIA L.A. COURT CONNECT
22

23

24   ALSO PRESENT:           PROTECTED PARTY LORENA OCANA
                             (PRESENT VIA L.A. COURT CONNECT)
25

26

27                          CAROL S. HERRERA, CSR NO. 8735
                            OFFICIAL REPORTER
28

1          INDEX

2        APPEARANCE DATES

3     SEPTEMBER 3, 2020      A.M. SESSION      VOL. 1/PAGE  1
      SEPTEMBER 3, 2020      P.M. SESSION      VOL. 1/PAGE 27
4

5

6

7  CHRONOLOGICAL INDEX OF WITNESSES:                          PAGE:

8

         LORENA OCANA, CALLED AS A WITNESS ON HER
9  OWN BEHALF
         DIRECT EXAMINATION BY MR. HOWARD                      6
10        CROSS-EXAMINATION BY THE RESPONDENT                  13
         BEHROOZ MOHAZZABI, CALLED AS A WITNESS ON
11 HIS OWN BEHALF
         DIRECT EXAMINATION BY THE RESPONDENT                 16
12        CROSS-EXAMINATION BY MR. HOWARD                      19

13

14

15              EXHIBITS

16

17 PETITIONER'S

   EXHIBIT    DESCRIPTION                      MARKED   REC'D
18
   (NONE OFFERED.)
19

20

21 RESPONDENT'S

   EXHIBIT    DESCRIPTION                      MARKED   REC'D
22
   (NONE OFFERED.)
23

24

25

26

27

28

```
1    CASE NUMBER:              20PSRO00945

2    CASE NAME:                WELLS FARGO BANK VS. MOHAZZABI

3    POMONA, CALIFORNIA        THURSDAY, SEPTEMBER 3, 2020

4    DEPARTMENT K              HON. JOHN A. SLAWSON, JUDGE

5    REPORTER:                 CAROL S. HERRERA, CSR NO. 8735

6    TIME:                     A.M. SESSION

7    APPEARANCES:

8

9         THE PETITIONER AND THE PROTECTED PARTY,

10        PRESENT, REPRESENTED BY BENJAMIN J. HOWARD,

11        ESQ.; RESPONDENT, PRESENT, IN PROPRIA PERSONA.

12

13        (PROTECTED PARTY, LORENA OCANA, PRESENT VIA

14        L.A. COURT CONNECT AUDIO; BENJAMIN J. HOWARD,

15        ESQ., PRESENT VIA L.A. COURT CONNECT AUDIO;

16        RESPONDENT, BEHROOZ MOHAZZABI, PRESENT VIA

17        L.A. COURT CONNECT VIDEO.)

18

19        THE COURT:  THIS IS JUDGE SLAWSON.  ON OUR

20   CALENDAR, WE HAVE THE CASES, AND THEN THE PEOPLE ON

21   OUR PHONE.  WE HAVE THE CASE ENDING WITH 945.  THERE

22   ARE THREE DIFFERENT -- THAT'S NOT YOUR PROBLEM.  BUT

23   AGAIN, 945.  AND THEN WE ALSO HAVE ANOTHER CASE THAT

24   ENDS WITH 035.  THAT'S THE CASE NUMBER FOR THE CASES.

25        SO ARE YOU ALL ON THE LINE THEN?

26        MR. HOWARD:  THIS IS BENJAMIN HOWARD ON THE CASE

27   ENDING IN 945.

28        THE COURT:  OKAY.  WE HAVE FEEDBACK.  ON THE 945,
```

1   WHAT'S THE TIME ESTIMATE?

2        MR. HOWARD:  IT SHOULD BE MAYBE 15, 20 MINUTES.  I

3   DON'T ANTICIPATE IT BEING TOO LONG.

4        THE COURT:  ALL RIGHT.  OKAY.  SO I'M WRAPPING UP

5   ANOTHER CASE, AND SO JUST BEAR WITH US, AND WE'LL BE

6   GETTING WITH YOU GUYS.

7

8        (UNRELATED MATTERS WERE REPORTED,

9        NOT INCLUDED HEREIN.)

10

11        THE COURT:  SO NOW WE'RE READY FOR THE CASE ENDING

12   WITH 945.

13        THE CLERK:  NO. 5.

14        THE COURT:  IS THAT NO. 5?  YES.  SO THIS IS THE

15   CASE ON OUR CALENDAR OF NO. 5.  AND THE PARTIES ARE WELLS

16   FARGO BANK -- AND I'M HAVING TROUBLE PRONOUNCING IT --

17        THE RESPONDENT:  BEHROOZ MOHAZZABI.

18        THE COURT:  SIR, HOW TO YOU PRONOUNCE YOUR LAST

19   NAME AGAIN?

20        THE RESPONDENT:  MOHAZZABI.

21        THE COURT:  MOHAZZABI.  IS THAT RIGHT?

22        THE RESPONDENT:  YES.

23        THE COURT:  APPEARANCES BY COUNSEL?

24        MR. HOWARD:  GOOD MORNING, YOUR HONOR, THIS IS

25   BENJAMIN HOWARD ON BEHALF OF PETITIONER WELLS FARGO BANK

26   AND PROTECTED PARTY LORENA OCANA WHO IS ALSO ON THE PHONE

27   TODAY.

28        THE COURT:  SHE WILL BE THE WITNESS YOU'LL BE

CALLING?

MR. HOWARD:  I'LL BE MAKING THE STATEMENTS.  IF YOUR HONOR HAS ANY STATEMENTS DIRECTLY TOWARDS MS. OCANA, THEN SHE'S HAPPY TO ANSWER ANY OF THOSE QUESTIONS.

THE COURT:  ALL RIGHT.  ALL RIGHT.  SO I'M SORRY. HER LAST NAME AGAIN IS?

MR. HOWARD:  OCANA, O-C-A-N-A.

THE COURT:  OKAY.  MS. OCANA, WOULD YOU PLEASE STAND, AND ALSO, MR. MOHAZZABI, WOULD YOU --

THE RESPONDENT:  MY NICKNAME IS BRUCE.  YOU CAN CALL ME BRUCE IF IT IS HARD FOR YOU TO PRONOUNCE MY LAST NAME.

THE COURT:  IT IS HARD, BUT I'LL GET USED TO IT BECAUSE WE DON'T USE OTHER NAMES.

WOULD YOU ALSO PLEASE STAND, AND THE CLERK IS GOING TO GIVE YOU THE OATH, BOTH OF YOU.

THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

THE COURT:  RAISE YOUR HAND, SIR.

THE CLERK:  DO YOU SOLEMNLY STATE UNDER THE PENALTY OF PERJURY THAT THE TESTIMONY YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH?

THE COURT:  SIR?

THE RESPONDENT:  I DO.

THE COURT:  AND MS. OCANA?

THE PETITIONER:  YES.

THE COURT:  OKAY.  ALL RIGHT.  SO -- JUST A MINUTE.  ALL RIGHT.  THIS IS A RESTRAINING ORDER CASE.

1    JUST A MOMENT.  WHAT THIS IS CALLED IS A PETITION FOR A

2    WORKPLACE VIOLENCE RESTRAINING ORDER.  WHAT THAT MEANS IS

3    THAT WELLS FARGO BANK HAS EMPLOYEES OR WORKERS, AND THEY

4    HAVE RESPONSIBILITIES TO MAKE SURE THAT THOSE FOLKS ARE

5    SAFE.  THAT ALLOWS THE BANK, THE EMPLOYER OF MS. OCANA,

6    TO GO AHEAD AND FILE THIS RESTRAINING ORDER REQUEST.

7            THE RESPONDENT:  MAY I?

8            THE COURT:  YES.

9            THE RESPONDENT:  MAY I EXPLAIN SOMETHING?

10           THE COURT:  YES, BUT NOT YET.  SIR, THEY GET TO GO

11   FIRST ON THE CASE, BUT ARE YOU READY FOR THE HEARING,

12   SIR?  DO YOU WANT TO DO THE HEARING TODAY, SIR?

13           THE RESPONDENT:  ARE YOU TALKING WITH ME?

14           THE COURT:  I WILL BE SAYING, "SIR," TO YOU SO

15   THAT YOU'LL KNOW THAT WOULD BE YOU.  OKAY?

16           THE RESPONDENT:  OKAY.

17           THE COURT:  YOU'RE READY FOR THE HEARING, CORRECT?

18           THE RESPONDENT:  YES, YOUR HONOR.

19           THE COURT:  SO THEY'RE GOING TO BE ABLE TO TESTIFY

20   TO WHAT THEIR VERSION IS.  YOU'LL BE ABLE TO ASK SOME

21   QUESTIONS IF YOU LIKE TO ALSO, AND THEN YOU'LL BE ABLE TO

22   SAY WHAT YOUR VERSION IS.  OKAY?

23           THE RESPONDENT:  CAN I SPEAK RIGHT NOW BECAUSE

24   THIS CASE THEY CREATED IS ABOUT NOTHING.

25           THE COURT:  SIR?  SIR?

26           THE RESPONDENT:  I DID NOT CALL, AND I WAS --

27           THE COURT:  SIR, PLEASE STOP.  SIR, PLEASE STOP.

28   IT IS NOT YOUR TURN YET.  YES, YOU WILL BE ABLE TO SAY

1    WHAT YOU WANT TO SAY, BUT WHEN IT IS YOUR TURN.  THEY'RE

2    GOING TO HAVE INFORMATION THAT I'M GOING TO LISTEN TO.

3          THE RESPONDENT:  OKAY, YOUR HONOR.  WHENEVER IT IS

4    MY TURN, PLEASE LET ME KNOW.

5          THE COURT:  ALL RIGHT.  THANK YOU.

6            ALL RIGHT.  COUNSEL, SO THEN GO AHEAD THEN

7    WITH THE EVIDENCE.  DO YOU WANT TO CALL YOUR WITNESS?

8          MR. HOWARD:  I PREFER TO MAKE A BRIEF STATEMENT.

9    I KEEP INTERRUPTING.  I APOLOGIZE.  I'LL MAKE A BRIEF

10   STATEMENT AND GIVE RESPONDENT A CHANCE TO RESPOND.

11         THE COURT:  GO AHEAD.

12         MR. HOWARD:  SO I WANT TO START OFF BY SAYING THIS

13   ISN'T THE BANK'S FIRST EFFORT TO STOP RESPONDENT'S

14   BEHAVIOR TOWARDS MS. OCANA --

15         THE COURT:  PLEASE STOP.  THIS IS -- YOU'RE NOT

16   UNDER OATH.  I NEED EVIDENCE -- I'M GOING TO STRIKE THAT

17   ANYWAY BECAUSE YOU'RE NOT UNDER OATH.  I NEED EVIDENCE

18   FROM WITNESSES THAT ARE UNDER OATH.  SO THEN THAT'S WHAT

19   WE'RE GOING TO DO.  OKAY?

20         MR. HOWARD:  UNDERSTOOD.  THEN I WOULD LIKE TO

21   CALL MRS. OCANA.

22         THE COURT:  OKAY.  IS SHE THERE WITH YOU?

23         MR. HOWARD:  SHE IS NOT.

24         THE COURT:  MS. OCANA, YOU'RE THERE ON LINE,

25   CORRECT?

26         THE PETITIONER:  YES.

27         THE COURT:  SO GO AHEAD, AND YOU CAN INQUIRE OF

28   HER.

**LORENA OCANA,**

CALLED AS A WITNESS ON HER OWN BEHALF, HAVING
BEEN PREVIOUSLY SWORN, TESTIFIED AS FOLLOWS:


**DIRECT EXAMINATION**

BY MR. HOWARD:

Q.    SO GOOD MORNING, MRS. OCANA.  I KNOW WE'RE
NOT IN THE SAME ROOM, BUT I'M JUST GOING TO ASK YOU A
COUPLE OF QUESTIONS.  AND CAN YOU HEAR ME CLEARLY?

A.    YES.

Q.    OKAY.  HOW DID YOU FIRST COME INTO CONTACT
WITH MR. MOHAZZABI?

A.    THE VERY, VERY FIRST TIME WAS WHEN I WORKED
ON HIS CASE.

Q.    ABOUT WHAT YEAR WAS THAT?

A.    NOVEMBER 2016.

Q.    AND THEN DID YOU FILE A DECLARATION IN AN
ARBITRATION MATTER INVOLVING MR. MOHAZZABI?

A.    I DON'T UNDERSTAND WHAT THAT MEANS.

Q.    SO IN AN ARBITRATION MATTER, DID YOU SIGN A
LEGAL DOCUMENT PROVIDING EVIDENCE THAT YOU INVESTIGATED
MR. MOHAZZABI'S CLAIM?

A.    OH, YES, YES.

Q.    OKAY.  AND THEN ON OR ABOUT -- THE END OF
JULY, DID YOU START RECEIVING CALLS FROM AN INDIVIDUAL
DEMANDING TO SPEAK TO MRS. OCANA?

A.    YES.  MY HUSBAND STARTED RECEIVING THE
CALLS FIRST, AND THEN IT WAS MY PERSONAL CELL PHONE AS

1   WELL.

2           Q.      WHAT HAPPENED DURING THOSE CALLS?

3           A.      MY HUSBAND TOLD ME -- HE DOESN'T SPEAK

4   REALLY GOOD ENGLISH, BUT FROM WHAT HE CAN UNDERSTAND, HE

5   WAS -- THEY WERE ASKING FOR ME VERY RUDELY.  THEY WANTED

6   MY ADDRESS.  AND THEY DEMANDED TO SPEAK TO ME.  AND MY

7   HUSBAND WAS LIKE, NO, STOP CALLING.  AND HE WOULD LIKE

8   EVENTUALLY HANG UP.

9           THE COURT:  MA'AM, PLEASE STOP.  JUST MAKE THE

10  ANSWERS REALLY SHORT.  COUNSEL WAS ASKING QUESTIONS.

11          THE WITNESS:  OKAY.

12          THE COURT:  A LOT OF THE QUESTIONS CAN BE ANSWERED

13  BY YES OR NO, AND IF COUNSEL OR I ASK QUESTIONS, THEN IF

14  WE NEED OTHER INFORMATION, WE WILL ASK YOU FOR THAT.

15  OKAY?

16          THE WITNESS:  OKAY.

17          THE COURT:  AND THEN ONE OTHER THING THAT THE

18  QUESTION THAT YOU ANSWERED YOU SAID "THEY."  WHO IS

19  "THEY" THAT YOU WERE TALKING ABOUT?

20          THE WITNESS:  WHOEVER WAS CALLING US.  WE DON'T

21  KNOW -- THEY NEVER SAID THEIR NAME.

22          THE COURT:  DO YOU KNOW WHO THAT PERSON WAS?

23          THE WITNESS:  NO.  NO.  THEY NEVER SAID THEIR NAME

24  UNTIL AFTER THEY STARTED CALLING ME, AND THEN I ASKED

25  THEM -- I DEMANDED I'M NOT GOING TO GIVE YOU MY

26  INFORMATION.

27          THE COURT:  MA'AM, PLEASE DON'T DO THAT WITH THE

28  LONG SENTENCES.  OKAY?

1          THE WITNESS:  OKAY.

2          THE COURT:  JUST LISTEN TO THE QUESTIONS AND THEN

3  JUST ANSWER THE QUESTIONS.

4               ALL RIGHT.  COUNSEL GO AHEAD.

5          MR. HOWARD:  THANK YOU.

6          Q.     DID YOU HAVE CALLER I.D. ON YOUR PHONE WHEN

7  YOU RECEIVED THESE CALLS?

8          A.     YES.

9          Q.     AND DO YOU RECALL THE PHONE NUMBER USED TO

10  CONTACT YOU?

11         A.     I WROTE IT DOWN, AND I BELIEVE IT ENDED

12  WITH 0757.

13         THE COURT:  MA'AM, MA'AM, I'M GOING TO INTERRUPT

14  AGAIN BECAUSE HE DIDN'T ASK FOR THE NUMBER.  THE ANSWER,

15  JUST SAY "YES."  AND IF HE WANTS TO KNOW, HE WILL LET YOU

16  KNOW.  AND, MA'AM, WE CAN'T TALK --

17         THE WITNESS:  OKAY.

18         THE COURT:  MA'AM, WE CANNOT TALK OVER EACH OTHER

19  BECAUSE THIS IS ON A COMPUTER.  AND JUST SLOW IT DOWN.

20               AND LET'S GO FOR THE NEXT QUESTION THEN.

21         Q.     BY MR. HOWARD:  WHEN YOU RECEIVED THAT

22  CALL, DID THE PHONE NUMBER ON YOUR CALLER I.D. END IN

23  0757?

24         A.     YES.

25         Q.     AND HOW MANY CALLS DID YOU AND/OR YOUR

26  HUSBAND RECEIVE FROM THAT 0757 PHONE NUMBER?

27         A.     I BELIEVE MORE THAN FOUR.

28         Q.     OKAY.  AND THEN AFTER YOU WERE RECEIVING

1    THESE CALLS, DID YOU BLOCK THAT PHONE NUMBER?

2         A.    YES.

3         Q.    AND AFTER YOU BLOCKED THAT PHONE NUMBER,

4    DID YOU CONTINUE TO RECEIVE PHONE CALLS FROM A BLOCKED

5    NUMBER?

6         A.    YES.

7         Q.    AND THEN DID THE PERSON SAY ANYTHING DURING

8    THESE PHONE CALLS?

9         A.    THE FIRST CALLS OR THE SECOND?

10        Q.    ANY OF THE CALLS.  LET'S START WITH THE

11   FIRST.

12        A.    THE FIRST CALLS THEY DIDN'T MENTION WHO

13   THEY WERE.  THEY SAID THEY WERE REPRESENTING

14   MR. MOHAZZABI.

15        Q.    THEN DID YOU RETAIN COUNSEL TO REPRESENT

16   YOU?

17        A.    YES.

18        Q.    AND I'M YOUR COUNSEL, CORRECT?

19        A.    YES.

20        Q.    AND WERE YOU AWARE THAT WE SENT

21   MR. MOHAZZABI A CEASE AND DESIST LETTER INDICATING TO

22   STOP COMMUNICATIONS WITH YOU AND DIRECT ALL

23   COMMUNICATIONS TO COUNSEL?

24        A.    YES.

25        Q.    AND THEN WHAT HAPPENED AROUND AUGUST 9TH AT

26   11 O'CLOCK AT NIGHT?

27        A.    AN INDIVIDUAL CAME THROUGH MY -- PAST MY

28   FRONT GATES, ALL THE WAY TO MY FRONT DOOR AND KNOCKED

REALLY LOUDLY, PRETTY MUCH.

Q.    WHAT DID THE INDIVIDUAL SAY?

A.    HE WAS LOOKING FOR ME.  HE WAS ASKING FOR ME, DEMANDING TO SPEAK WITH ME.

Q.    AND THIS OCCURRED AFTER YOU RETAINED COUNSEL, CORRECT?

A.    YES.

Q.    AND WHAT DID THE INDIVIDUAL DO AFTER HE KNOCKED ON THE DOOR AND DEMANDED TO SPEAK WITH YOU?

A.    I DIDN'T ANSWER THE DOOR.  IT WAS MY HUSBAND.  I WAS TENDING TO MY CHILDREN WHO WERE SCARED FROM THE WAY HE WAS KNOCKING.  THEY WOKE UP.  MY HUSBAND ADVISED ME THAT HE WOULD NOT LEAVE, AND HE SAW HIM GET INTO HIS CAR AND PARKED RIGHT IN FRONT OF OUR HOUSE, AND IT TOOK HIM A WHILE BEFORE HE ACTUALLY LEFT.  BUT HE REALLY DIDN'T LEAVE.  HE JUST WENT FURTHER BACK DOWN THE STREET, JUST BARELY, SO THAT WE COULD BARELY SEE HIM OVER OUR FENCE.

Q.    AND HOW LONG DID HE STAY OUTSIDE YOUR RESIDENCE?

A.    I WANT TO SAY AROUND MAYBE 30, 35 MORE MINUTES AFTER.

Q.    AND THEN WHAT DID YOU DO AFTER THAT INDIVIDUAL LEFT?

A.    WELL, IT WAS ALREADY CLOSE TO MIDNIGHT, SO I SENT YOU GUYS AN E-MAIL ADVISING OF THE INCIDENT.

THE COURT:  AND UNDER EVIDENCE CODE 775, THE COURT HAS THE ABILITY TO ASK QUESTIONS ON ITS OWN.  SO I'M

1   GOING TO BREAK IN AT CERTAIN POINTS.

2          MA'AM, THE PERSON WHO CAME TO THE DOOR OR

3   TO YOUR HOUSE, DID YOU SEE THE PERSON?  YES OR NO?

4       THE WITNESS:  ME, PERSONALLY, NO.

5       THE COURT:  OKAY.  THANK YOU.

6       Q.    BY MR. HOWARD:  BACK UP A LITTLE BIT.  WERE

7   YOU SERVED WITH A LAWSUIT IN REGARDS -- I'M SORRY.

8   STRIKE THAT.

9          WERE YOU SERVED WITH A LAWSUIT FROM

10  MR. MOHAZZABI?

11      A.    NO, NOT THAT I'M AWARE OF.

12      Q.    DO YOU KNOW OF A LAWSUIT THAT WAS FILED

13  AGAINST YOU BY MR. MOHAZZABI?

14      A.    YES, I WAS TOLD OF THAT.

15      Q.    WERE YOU AWARE THAT COUNSEL ACCEPTED

16  SERVICE ON YOUR BEHALF?

17      A.    YES.

18      Q.    AND THIS IS ALL BEFORE THIS INDIVIDUAL CAME

19  TO YOUR HOUSE, CORRECT?

20      A.    YES.

21      Q.    THEN THE NEXT DAY AFTER THIS INDIVIDUAL

22  LEFT, WHAT DID YOU DO WITH YOUR MINOR CHILDREN?

23      A.    I TOOK THEM TO MY MOTHER'S HOUSE.

24      Q.    WHY DID YOU DO THAT?

25      A.    IT WAS A REALLY SCARY INCIDENT THE WAY THE

26  MAN WAS TALKING -- SORRY -- THE WAY HE WAS YELLING,

27  ASKING FOR ME.

28      THE COURT:  MA'AM, MA'AM, HOLD ON.  JUST TAKE A

1   LITTLE BREAK, AND THEN JUST TELL US WHEN YOU'RE READY

2   AGAIN BECAUSE IT IS HARD TO HEAR.  SO JUST LET US KNOW --

3   IT IS OKAY.  BUT WHEN YOU'RE READY FOR THE NEXT QUESTION,

4   JUST LET US KNOW.

5          THE WITNESS:  OKAY.  I'M READY.

6          THE COURT:  TAKE A BREAK IF YOU NEED TO AT OTHER

7   TIMES.  GO AHEAD.

8          Q.    BY MR. HOWARD:  THANK YOU.  AND I'M SORRY,

9   AGAIN, BUT JUST TO REITERATE, YOU SAID THAT YOU TOOK YOUR

10  MINOR CHILDREN TO YOUR MOTHER'S HOME BECAUSE IT WAS

11  SCARY, AND THE MAN WAS YELLING; IS THAT CORRECT?

12         A.    YES.  THE TONE OF VOICE, THE WAY THAT HE

13  KNOCKED AT THE DOOR, THE FACT THAT HE PUSHED THROUGH MY

14  FRONT GATE TO COME ALL THE WAY UP TO MY FRONT DOOR AT THE

15  TIME OF NIGHT IT WAS.  YES.

16         THE COURT:  AGAIN, MA'AM, WHAT TIME WAS IT?

17         THE WITNESS:  IT WAS 11:04 AT NIGHT ON A SUNDAY.

18         THE COURT:  THANK YOU.  GO AHEAD.

19         Q.    BY MR. HOWARD:  JUST ONE SECOND PLEASE.

20  AND TO THIS DAY, DO YOU STILL FEEL THREATENED BY THIS

21  INDIVIDUAL?

22         A.    YES.

23         MR. HOWARD:  AND THAT'S ALL THE QUESTIONS I HAVE

24  FOR NOW, YOUR HONOR.

25         THE COURT:  ARE YOU RESTING YOUR CASE THEN?

26         MR. HOWARD:  YES.  UNLESS THERE IS SOMETHING THAT

27  RESPONDENT SAYS, I WOULD PREFER A REBUTTAL AFTERWARDS.

28         THE COURT:  YOU'LL BE ABLE TO CROSS BASED UPON --

1    YOU WOULD -- IF HE TESTIFIES, YOU CAN CROSS-EXAMINE HIM

2    IF YOU WOULD LIKE.  BUT YOUR CASE IN CHIEF, ARE YOU

3    RESTING ON THAT NOW?

4          MR. HOWARD:  YES, YOUR HONOR.

5          THE COURT:  OKAY.

6               MR. MOHAZZABI, NOW IS YOUR OPPORTUNITY, IF

7    YOU WANT, TO ASK QUESTIONS OF MS. OCANA.  THAT'S CALLED

8    CROSS-EXAMINATION.  IF YOU DON'T HAVE ANY QUESTIONS,

9    THAT'S OKAY.  THEN YOU CAN TESTIFY TO WHAT YOUR VERSION

10   IS.  SO DO YOU HAVE ANY QUESTIONS FOR HER?

11

12                    CROSS-EXAMINATION

13   BY THE RESPONDENT:

14         Q.   HOW MANY TIMES SHE HAS SEEN MY TELEPHONE

15   NUMBER THAT I CALLED HER?  SHE SAID 12.

16         THE COURT:  SIR, IF YOU'RE ASKING QUESTIONS -- ARE

17   YOU ASKING A QUESTION FROM HER?

18         THE RESPONDENT:  HOW MANY TIMES?

19         THE COURT:  SO JUST ASK THE QUESTION.  STOP, AND

20   THEN LET HER ANSWER.  YOU CAN'T SAY THE ANSWER.

21         THE RESPONDENT:  OKAY.  YES, SIR.  YES, YOUR

22   HONOR.

23         THE COURT:  ONE MORE TIME, IF YOU'LL STATE THAT

24   QUESTION AGAIN FOR HER.  AND THEN STOP ONCE YOU HAVE

25   STATED IT.  GO AHEAD.

26         Q.    BY THE RESPONDENT:  HOW MANY TIMES SHE HAS

27   SEEN MY TELEPHONE NUMBER APPEAR IN HER CALL THAT I CALLED

28   HER?

1    THE COURT:  OKAY, MA'AM.  YOUR ANSWER?

2    THE WITNESS:  WELL, I NEED TO KNOW IF THAT'S HIS

3    NUMBER OR NOT.  I'M SAYING 0757 WAS THE NUMBER WE'RE

4    RECEIVING THE CALLS ON.

5    Q.    BY THE RESPONDENT:  THAT IS MY NUMBER.

6    THE COURT:  NEXT QUESTION, PLEASE, IF YOU HAVE ANY

7    OTHER QUESTIONS.  SIR, DO YOU HAVE ANY OTHER QUESTIONS

8    FOR HER?

9    Q.    BY THE RESPONDENT:  HAS SHE SEEN MY

10   COMPLAINT THAT I WAS GOING TO SERVE HER?

11   THE COURT:  MA'AM, DO YOU UNDERSTAND THAT

12   QUESTION?

13   THE WITNESS:  NO.

14   THE COURT:  SHE DOESN'T UNDERSTAND THAT QUESTION.

15   YOU CAN REPHRASE IT IF YOU WANT.

16   Q.    BY THE RESPONDENT:  YES.  I FILED A

17   COMPLAINT ON JULY 22ND AND --

18   THE COURT:  SIR, NO, DON'T TELL ME THIS.  IF YOU

19   WANT HER TO ANSWER, SHE DIDN'T UNDERSTAND --

20   THE RESPONDENT:  I'M ASKING HAS SHE SEEN MY

21   COMPLAINT.

22   THE COURT:  WHAT'S THE RELEVANCE OF WHETHER SHE

23   SAW YOUR COMPLAINT OR NOT?  WHAT'S THE IMPORTANCE OF

24   THAT?  THIS IS --

25   THE RESPONDENT:  BECAUSE I NEEDED TO SERVE A COPY

26   OF THE COMPLAINT AND THE PROOF OF SERVICE TO THE COURT.

27   THE COURT:  PROOF OF SERVICE OF WHAT?

28   THE RESPONDENT:  I FILED A COMPLAINT ON 22ND

 1    JULY IN CIVIL COURT IN LOS ANGELES AND AGAINST ONLY HER.

 2          THE COURT:  ALL RIGHT.  SO THAT'S A DIFFERENT

 3    CASE.  IT IS NOT THIS CASE, CORRECT?

 4          THE RESPONDENT:  IT IS RELATED TO THIS CASE,

 5    EXACTLY.  THE --

 6          THE COURT:  SIR, WHAT YOU'RE HERE FOR IS THE CASE

 7    OF A RESTRAINING ORDER AGAINST YOU.  THAT'S WHAT SHE --

 8    THAT'S WHAT THE BANK IS REQUESTING.  OKAY?  SO WE'RE NOT

 9    INVOLVED WITH THIS OTHER CASE THAT THERE MAY HAVE BEEN.

10    SO DO YOU HAVE ANY OTHER QUESTIONS FOR HER?

11          THE RESPONDENT:  NO.  I WAS GOING TO SEE WHETHER

12    SHE HAS SEEN THE COMPLAINT OR NOT.

13          THE COURT:  OKAY.  SO THAT IS JUST NOT RELEVANT TO

14    THE COURT HERE.

15                ALL RIGHT.  SO NOW IF THERE ARE NO OTHER

16    QUESTIONS, NOW IT IS YOUR OPPORTUNITY TO SAY WHAT YOU

17    WANT TO SAY.  BUT I'M GOING TO ASK A COUPLE OF QUESTIONS

18    OF YOU FIRST.

19                DID YOU GO TO HER HOUSE?

20          THE RESPONDENT:  NO.  COULD YOU SAY IT AGAIN,

21    PLEASE?

22          THE COURT:  DID YOU GO --

23          THE RESPONDENT:  I'M NOT --

24          THE COURT:  YOU'RE NOT WHAT?  I COULDN'T

25    UNDERSTAND.

26          THE RESPONDENT:  I'M NOT AWARE OF THAT THING THAT

27    SHE SAID THAT 11 O'CLOCK SOMEBODY WENT THERE.  I'M NOT

28    AWARE OF IT.

1    THE COURT:  BUT IT WASN'T YOU?

2    THE RESPONDENT:  EXCUSE ME?

3    THE COURT:  WAS IT YOU THAT WAS AT HER HOUSE?  YES

4    OR NO?

5    THE RESPONDENT:  NO, I DID NOT GO TO HER HOUSE.

6    THE COURT:  OKAY.  ALL RIGHT.  ANYTHING ELSE THAT

7    YOU WANT TO SAY BEFORE I MAKE MY DECISION?  DID YOU WANT

8    TO TELL ME YOUR VERSION?

9

10                    BEHROOZ MOHAZZABI,

11    CALLED AS A WITNESS ON HIS OWN BEHALF, HAVING

12    BEEN PREVIOUSLY SWORN, TESTIFIED AS FOLLOWS:

13

14                    DIRECT EXAMINATION

15    BY THE RESPONDENT:

16                    OKAY.  I GOT HER TELEPHONE NUMBER FROM THE

17    LETTER THAT IT IS FROM HER THAT YOU -- SHE MENTIONED THIS

18    TELEPHONE NUMBER RIGHT HERE.  I CALLED THIS TELEPHONE

19    NUMBER, WELLS FARGO, AND I ASKED HER TELEPHONE NUMBER.

20    THEY PROVIDE ME WITH HER TELEPHONE NUMBER.  AND THAT'S WHY

21    I CALLED ONLY ONCE.  AND FOR A FEW SECONDS EXACTLY NOBODY

22    ANSWERED.  I DISCONNECTED THE LINE.

23                    I THINK ONE AND A HALF HOURS BASED ON A

24    DOCUMENT THAT I HAVE, SHE CALLED ME BACK.  AND I EXPLAINED

25    TO HER -- I INTRODUCED MYSELF, AND I SAID THE PURPOSE OF

26    MY CALL WHICH SHE GOT VERY UPSET, ANGRY, INSULT AND

27    EVERYTHING, AND SHE REFUSED TO --

28                    THE COURT:  SIR, THANK YOU, SIR.  WE HAVE A LITTLE

```
 1   PROBLEM ON THE PHONE.  SOMETIMES THERE'S FEEDBACK.  AND
 2   WE COULDN'T -- I COULDN'T UNDERSTAND ONE OF THE LAST
 3   WORDS THAT YOU HAD SAID.
 4               YOU SAID SHE GOT ANGRY.  AND THEN COULD YOU
 5   PICK IT UP FROM THERE AND TELL US WHAT THE OTHER WORDS
 6   WERE?
 7          THE RESPONDENT:  SHE DID NOT PROVIDE ME WITH HER
 8   ADDRESS THAT I COULD SERVE HER THE COPY OF COMPLAINT FOR
 9   THE COURT THAT I TOLD YOU.  SHE DID NOT.  AND THAT WAS
10   THE END.  I NEVER CALLED HER BACK.  AND I SEND YOU THE
11   DOCUMENT OF ALL MY TELEPHONE CALLS THAT I DID FROM --
12   DURING THE 8-23 TO I THINK -- TO THE END OF THIS
13   DISCUSSION.  ALL TELEPHONE CALLS OF MINE FROM 7-24-2020
14   TO 8-23-2020, I SEND IT TO YOU.  YOU NEVER SEE MY CALL
15   HERE, AND THAT'S IT.  THIS IS THE DOCUMENT FROM MY
16   PROVIDER AT&T WHICH I GOT IT.  SO THERE IS NO CALL EVER.
17   JUST ONE TIME THAT SHE CALLED ME, I CALLED HER.  SO THIS
18   IS REALLY -- THEY MADE THE CASE ON ALL ACCUSATIONS.
19          THE COURT:  OKAY.  ALL RIGHT.  SO THEN THAT'S WHAT
20   YOU WANTED ME TO KNOW, TOO, OF WHAT YOU JUST SAID,
21   CORRECT?
22          THE RESPONDENT:  YES.  I SEND YOU THE DOCUMENT.
23   HARD EVIDENCE.
24          THE COURT:  OKAY.  ALL RIGHT.  SO THEN THAT
25   FINISHES WHAT YOU WANT ME TO KNOW, CORRECT?
26          THE RESPONDENT:  THIS IS ONE PART.  THERE ARE
27   OTHER THINGS IF YOU -- I NEVER CALLED OR RELATED
28   SITUATION TO WELLS FARGO BANK BECAUSE WELLS FARGO BANK, I
```

1   DIDN'T COMPLAIN AGAINST THEM.  YOU SEE --

2        THE COURT:  SIR -- SIR, I'M GOING TO STOP YOU.

3   SIR, I'M GOING TO STOP YOU AGAIN.  THIS IS NOT ABOUT

4   ANYTHING -- LET ME -- HOLD ON JUST A SECOND.

5            I'M SORRY.  MR. HOWARD, COUNSEL, THAT'S

6   YOUR NAME, CORRECT?

7        MR. HOWARD:  CORRECT.

8        THE COURT:  SO THE THRUST OF THIS IS ALL FOR

9   MS. OCANA AS AN EMPLOYEE OF WELLS FARGO, CORRECT?

10       MR. HOWARD:  CORRECT.

11       THE COURT:  SO THAT'S WHAT THIS IS FOR, TO TRY TO

12  PROTECT THE WORKER THAT THEY HAVE.  SO --

13       THE RESPONDENT:  ARE YOU -- EXCUSE ME.  YOUR

14  HONOR, ARE YOU TALKING TO ME?

15       THE COURT:  YES, I AM.  SO YOU'RE CLEAR.  SO I

16  HAVE A COUPLE OF OTHER QUESTIONS.

17       THE RESPONDENT:  I NEVER --

18       THE COURT:  YOU NEVER WHAT?

19       THE RESPONDENT:  I NEVER CALLED, FILED ANY

20  COMPLAINT AGAINST WELLS FARGO BANK.  SO I DON'T KNOW WHY

21  THEY APPEARED.  THE ONLY THING I DID, I FILED A COMPLAINT

22  AGAINST MRS. BARBA, AND THIS IS ALL I DID.  ALL I DID.

23  AND I WANTED TO SERVE HER A COPY.  THERE IS NOTHING

24  ILLEGAL OR ANYTHING HAPPENED.

25            NOW I SEE WELLS FARGO BANK, THEIR ATTORNEY,

26  WHICH IS -- THIS IS CONFLICT OF INTEREST.  AND THEN

27  ANOTHER GUY, SO-CALLED MATT, WHICH I REPORTED TO THE

28  POLICE, FROM THE WELLS FARGO SECURITY.

1    THE COURT:  SIR, PLEASE STOP.  SIR, PLEASE STOP.

2    IF YOU DON'T STOP AND YOU KEEP GOING ON LIKE THAT, I'M

3    GOING TO END THE CALL.  DON'T DO THAT.  IT HAS NOTHING TO

4    DO WITH WELLS FARGO.  IT IS ABOUT THE ISSUE OF MS. OCANA.

5    THAT'S WHAT IT IS ABOUT.  YOU HAVE SAID IT.  I HAVE HEARD

6    YOU, AND I'VE LISTENED TO IT.  SO THAT'S YOUR TESTIMONY.

7              COUNSEL, DO YOU HAVE ANY CROSS-EXAMINATION?

8    MR. HOWARD:  YES, VERY BRIEFLY.

9    THE COURT:  GO AHEAD.  HE'S GOING TO ASK YOU

10   QUESTIONS NOW, SIR.

11

12                  CROSS-EXAMINATION

13   BY MR. HOWARD:

14        Q.    MR. MOHAZZABI, DID YOU RECEIVE A CEASE AND

15   DESIST LETTER FROM MY OFFICE ON JULY 29TH, 2020?

16        A.    YES, I DID.

17        Q.    DID YOU CALL MS. OCANA AFTER JULY 29TH,

18   2020?

19        A.    NO.

20        Q.    HAVE YOU EVER CALLED MS. OCANA BEFORE?

21        A.    NO.

22        Q.    IS YOUR PHONE -- DOES YOUR PHONE NUMBER END

23   0757?

24        A.    YES, SIR.  CAN I SAY SOMETHING?

25   THE COURT:  NO, YOU CAN'T.  HE'S ASKING QUESTIONS

26   NOW.

27        Q.    BY MR. HOWARD:  ON AUGUST 5TH, DID YOU

28   RECEIVE AN E-MAIL FROM ME TO DIRECT ALL COMMUNICATIONS TO

1    ME AND TO NOT CONTACT MS. OCANA?

2         A.    YES, I SAW IT.

3         Q.    DID YOU SEND AN E-MAIL IN 2017 TO WELLS

4    FARGO THREATENING TO HARM YOURSELF?

5         A.    NOT RELATED TO THIS MATTER.

6         Q.    I'LL ASK IT AGAIN.  DID YOU SEND AN E-MAIL

7    TO WELLS FARGO IN 2017 THREATENING TO HARM YOURSELF?

8         A.    THIS IS NOT RELATED TO THIS SUBJECT MATTER.

9         THE COURT:  SIR, I FIND THAT IT IS.  I FIND IT IS

10   DIRECTLY.  SO YOU NEED TO ANSWER HIS QUESTION.  IF YOU

11   DON'T WANT TO ANSWER HIS QUESTION, THAT'S OKAY.  BUT THEN

12   I'M NOT GOING TO BE -- I'M GOING TO GO AHEAD AND GRANT

13   THE ORDER BECAUSE YOU CAN'T -- YOU HAVE TO ANSWER THE

14   QUESTION.  IT IS A REASONABLE QUESTION.  SO IF YOU WANT

15   TO ANSWER IT --

16        THE WITNESS:  BECAUSE I CANNOT ANSWER LIKE THIS.

17   THIS WAS DIFFERENT CIRCUMSTANCES, DIFFERENT SITUATION,

18   AND NOTHING TO DO WITH WELLS FARGO RIGHT NOW.  WELLS

19   FARGO IS MISREPRESENTING MRS. OCANA -- MRS. BARBA AND NOT

20   RELATED TO THIS SUBJECT.  THIS NEEDS A LOT OF DISCUSSION

21   UNDER WHICH I WROTE THESE THINGS.

22        THE COURT:  SIR -- SIR, PLEASE DON'T DO THAT

23   BECAUSE I'M GOING TO HANG UP ON YOU IF YOU CONTINUE TO DO

24   THAT.  SO WHAT I'M THINKING IS BASED UPON COUNSEL'S

25   QUESTION TO YOU, ARE YOU GOING TO ANSWER THAT QUESTION?

26   YES OR NO?

27        THE WITNESS:  YES.

28        THE COURT:  OKAY.  SO GO AHEAD AND ANSWER IT THEN.

```
1            THE WITNESS:  CAN I?

2            THE COURT:  YOU CAN ANSWER HIS QUESTION.  I'LL ASK

3    HIM TO REPEAT IT AGAIN.

4            OKAY.  COUNSEL, GO AHEAD.

5            Q.    BY MR. HOWARD:  IN 2017, DID YOU SEND AN

6    E-MAIL TO WELLS FARGO THREATENING TO HARM YOURSELF?

7            A.    YES.

8            MR. HOWARD:  OKAY.  NO FURTHER QUESTIONS FROM ME,

9    YOUR HONOR.

10           THE COURT:  OKAY.  SO I HAVE --

11           MR. HOWARD:  I WOULD LIKE TO ADD ONE QUICK THING,

12   YOUR HONOR.  I KNOW THERE WERE TWO DECLARATIONS SUBMITTED

13   ON THE TRO.  I WANT TO MAKE SURE THOSE ARE ALSO SUBMITTED

14   INTO EVIDENCE ON THIS RESTRAINING ORDER HEARING.

15           THE COURT:  ALL RIGHT.  SO -- BUT -- YES, THAT

16   DOCUMENTATION IS HERE IN THE CASE.  BUT NOW WHAT I WANT

17   TO ASK YOU BECAUSE --

18                YOU'RE DONE WITH YOUR CASE IN CHIEF,

19   CORRECT?

20           MR. HOWARD:  CORRECT.

21           THE COURT:  OKAY.  SO THE -- MY UNDERSTANDING IN

22   THIS CASE IS THAT MS. OCANA IS WHY THE BANK FILED THE

23   RESTRAINING ORDER REQUEST, FOR HER SAFETY, CORRECT?

24           MR. HOWARD:  YES.

25           THE COURT:  OKAY.  AND THAT'S REALLY WHAT THIS IS

26   ALL ABOUT, IS HER SAFETY AND HER FAMILY'S, TOO.  CORRECT?

27           MR. HOWARD:  CORRECT, YES.  SHE HAS TWO MINOR

28   CHILDREN.
```

1   THE COURT:  SO WHAT EVIDENCE DO I HAVE THAT HE WAS

2   THE PERSON WHO WENT TO HER HOUSE?  SHE INDICATED -- SHE

3   WAS VERY HONEST AND SAID SHE DIDN'T SEE WHO IT WAS.  SO

4   HOW DO I KNOW WHO WAS THE PERSON WHO WENT TO HER HOUSE?

5   MR. HOWARD:  IT IS BASED ON THE INDICATION THAT

6   MR. MOHAZZABI SENT A PROCESS SERVER TO HER HOUSE IN THE

7   MIDDLE OF THE NIGHT AFTER SHE RETAINED COUNSEL, AND THIS

8   IS LAID OUT IN THE DECLARATION.  WE -- SHE RETAINED

9   COUNSEL, AND WE SAID WE WERE ACCEPTING SERVICE, AND WE

10  HAD 20 DAYS FOR NOTICE OF ACKNOWLEDGMENT OR RECEIPT.

11  MR. MOHAZZABI --

12  THE COURT:  COUNSEL, PLEASE STOP.  SO DO YOU AGREE

13  THAT IT WASN'T THE RESPONDENT WHO CAME TO HER HOUSE?

14  MR. HOWARD:  WE AREN'T SURE WHO CAME TO HER HOUSE,

15  BUT WE BELIEVE THAT IT WAS SOMEONE SENT ON HIS BEHALF.

16  THE COURT:  OKAY.  AND THE BURDEN OF PROOF -- WE

17  DON'T GET MANY OF THESE.  BUT THE BURDEN OF PROOF, IS IT

18  CLEAR AND CONVINCING EVIDENCE?  HAVE YOU RESEARCHED THAT

19  YET?

20  MR. HOWARD:  YOUR HONOR, I THINK THE CLEAR AND

21  CONVINCING EVIDENCE WOULD BE MS. OCANA'S TESTIMONY THAT

22  AN INDIVIDUAL CALLING HER FROM MR. MOHAZZABI'S ADMITTED

23  PHONE NUMBER REPEATEDLY DEMANDING WHERE SHE LIVED SAID HE

24  RECEIVED, AS HE TESTIFIED, CEASE AND DESIST LETTERS AFTER

25  SHE RETAINED COUNSEL --

26  THE COURT:  THAT'S NOT MY QUESTION.  MY QUESTION

27  IS WHAT IS THE BURDEN OF PROOF ON A WORKPLACE VIOLENCE

28  RESTRAINING ORDER?

1    MR. HOWARD:  I WOULD HAVE TO RESEARCH THE EXACT

2  BURDEN OF PROOF.

3    THE COURT:  OKAY.  BUT THE THEORY IS THAT THE

4  RESPONDENT HERE HAD SOMEBODY ELSE GO TO HER HOUSE TO GIVE

5  HER PAPERS, CORRECT?

6    MR. HOWARD:  CORRECT.

7    THE COURT:  OKAY.  BUT -- AND WHAT EVIDENCE DO YOU

8  HAVE ON THAT?

9    MR. HOWARD:  THE EVIDENCE WOULD BE THAT SOMEONE

10  WAS CALLING HER REPEATEDLY, DEMANDING WHERE SHE LIVED.

11  HE WAS TRYING TO SERVE A COMPLAINT AFTER WE ALREADY

12  ACCEPTED SERVICE.  SO THE EVIDENCE WOULD BE THAT HE WAS

13  TRYING TO SERVE HER AND SENT SOMEONE TO HER HOUSE.

14  THERE'S NO OTHER REASON FOR SOME INDIVIDUAL TO GO TO HER

15  HOUSE WITH THIS -- IF YOU ADD UP ALL THE EVENTS AND CHAIN

16  OF EVENTS AND THIS INCIDENT, IT IS ONLY A COUPLE OF DAYS

17  AFTER SHE RETAINED COUNSEL, AND WE INDICATED WE WOULD

18  ACCEPT SERVICE.

19    MR. MOHAZZABI THEN SENT AN E-MAIL, WHICH IS

20  PART OF THE DECLARATION OF MR. WRAIGHT, STATING THAT HE

21  WILL SEEK ALL LEGAL AVENUES TO SERVE HER.  I BELIEVE IT

22  IS ON PAGE 42 OF OUR SUBMISSION, AND IT IS EXHIBIT C OF

23  MR. WRAIGHT'S DECLARATION.  AND HE SAYS (READING):

24    SHE SHOULD HAVE ACCEPTED THE

25    COMPLAINT A LONG TIME AGO.  I HAVE SERVED

26    YOU THE COMPLAINT A WEEK AGO.  YOU HAVE NOT

27    RETURNED THE PROOF OF SERVICE.  I HAVE RENDERED

28    THE SERVICES OF A REGISTERED SERVER AND

1   **PROFESSIONAL PARALEGAL, BUT YOU HAVE BEEN**

2   **ACCUSING ME FALSELY, THREATENING ME AND**

3   **HARASSING ME.**

4               SO BASED ON THIS E-MAIL WHICH WAS SENT ON

5   AUGUST 5TH TO ME, THEN FOUR DAYS LATER A PROCESS

6   SERVER -- I'M SORRY -- AN INDIVIDUAL SHOWS UP TO HER

7   HOUSE FOUR DAYS LATER IN THE MIDDLE OF THE NIGHT

8   DEMANDING RUDELY TO SPEAK TO HER IN A THREATENING AND

9   INTIMIDATING WAY.  THERE WAS NO REASON TO SEND SOMEONE

10  THERE.  SO THE EVIDENCE WOULD BE IN THAT E-MAIL THAT HE

11  HIRED A REGISTER SERVER AFTER COUNSEL WAS RETAINED FOR

12  MS. OCANA.

13          THE COURT:  OKAY.  LAST QUESTION OF MINE --

14  ACTUALLY, NEVER MIND.  THE ISSUE IS MS. OCANA ON THAT.

15              ALL RIGHT.  SO, FOLKS --

16          MR. HOWARD:  THERE'S ONE MORE THING I WOULD LIKE

17  TO ADD, YOUR HONOR.

18          THE COURT:  COUNSEL, YOU SAID THIS WAS GOING TO BE

19  A SHORT CASE, SOMEWHAT SHORT.  OKAY?  SO, NO, THIS HAS

20  TAKEN UP A LOT OF THINGS IN OUR COURTROOM HERE.

21              SO WHAT I'M GOING TO DO IS I'M GOING TO GO

22  TO -- ONCE IT COMES TO NOONTIME, THEN I'M GOING TO GO

23  THROUGH AND GO THROUGH THE DOCUMENTS AGAIN.  AND A LOT OF

24  IT IS NOT REALLY RELEVANT TO THE COURT.  AND THEN WHAT

25  I'M GOING TO DO IS HAVE YOU GUYS CALL US AT 2:00 -- MAKE

26  IT AT 2:30.  AND THEN I WILL GO AHEAD AND STATE WHAT MY

27  DECISION IS GOING TO BE IN THIS CASE.  OKAY?  SO --

28          MR. HOWARD:  THANK YOU, YOUR HONOR.  IS IT THE

```
 1    SAME CALL-IN INFORMATION THAT WE PREVIOUSLY USED?
 2         THE COURT:  IT IS.
 3              CORRECT, TA'KEISHA?
 4              WE'RE HOPING SO.  THIS WAS OUR FIRST ONE ON
 5    THE VIDEO.  WE'VE DONE A LOT OF ONES ON TELEPHONE.  BUT I
 6    THINK IT WOULD BE THE SAME THING.  IF NOT, YOU CAN JUST
 7    CALL THE COURTROOM.
 8         THE CLERK:  WE HAVE TOO MANY PARTIES TO CALL THE
 9    COURTROOM.
10         THE RESPONDENT:  YOUR HONOR, TO ME, WHAT SHOULD WE
11    DO NOW?  BECAUSE I MISSED THE LAST PART.
12         THE COURT:  SO WHAT YOU WOULD DO, I'M GOING TO
13    LOOK AT SOME OTHER PAPERS IN THE CASE.  AND THEN AT
14    2:30 -- AT 2:30, I WANT YOU TO CALL BACK, JUST LIKE YOU
15    DID TO GET ON THIS CALL THAT WE'VE DONE.
16         THE RESPONDENT:  TODAY?  TODAY AT 2:30?
17         THE COURT:  YES, SIR, AT 2:30.
18              OKAY.  SO THAT'S IT.  WE'RE GOING TO END
19    THIS CALL.
20              AND, GENTLEMEN, WE'LL HEAR FROM YOU BOTH AT
21    2:30, AND THEN I'LL GIVE MY DECISION.
22              OKAY.  THANK YOU.
23         MR. HOWARD:  JUST ONE QUICK THING, CLARIFICATION,
24    DOES MRS. OCANA NEED TO CALL IN AT 2:30?
25         THE COURT:  YES.  SHE WILL HAVE TO ALSO.  I MAY
26    HAVE SOME QUESTIONS FOR HER TOO.
27              OKAY.  FOLKS, I HAVE GOT TO GO.  SO WE'LL
28    HEAR FROM YOU AT 2:30.
```

1          THE PETITIONER:  THANK YOU.

2          MR. HOWARD:  THANK YOU, YOUR HONOR.

3          THE COURT:  SO EVERYBODY CAN PUSH YOUR BUTTONS AND

4     TURN THIS OFF, AND WE'LL SEE YOU AT 2:30.

5               SIR, WE ARE DONE.

6          THE RESPONDENT:  ARE WE GOING TO GIVE YOU A CALL

7     JUST RIGHT NOW?

8          THE COURT:  WE'RE DONE.  THE SAME THING, ON THE

9     PHONE, YOU DON'T HAVE TO PAY ANOTHER FEE FOR IT THOUGH.

10    SO THAT'S IT.  I'M GOING TO HANG UP NOW.  WE'LL TALK TO

11    YOU AT 2:30.  THANK YOU.  CONNECT THE SAME WAY YOU DID TO

12    GET ON THE LINE RIGHT NOW.  DO THE SAME THING.  OKAY?

13    SIR?

14         THE RESPONDENT:  YES, THE SAME.  THANK YOU SO

15    MUCH, YOUR HONOR.

16         THE COURT:  THANK YOU.

17

18         (AT 11:38 A.M. THE PROCEEDINGS WERE

19          CONTINUED TO THE AFTERNOON SESSION.)

20

21

22

23

24

25

26

27

28

```
 1    CASE NUMBER:            20PSRO0094
 2    CASE NAME:              WELLS FARGO BANK VS. MOHAZZABI
 3    POMONA, CALIFORNIA      THURSDAY, SEPTEMBER 3, 2020
 4    DEPARTMENT K            HON. JOHN A. SLAWSON, JUDGE
 5    REPORTER:               CAROL S. HERRERA, CSR NO. 8735
 6    TIME:                   P.M. SESSION
 7    APPEARANCES:            AS HERETOFORE NOTED.

 8

 9            THE COURT:  SO WE'RE ON THE CASE AGAIN, NO. 5,
10    WELLS FARGO BANK --
11            THE CLERK:  DO YOU WANT ME TO PUT THEM ON?
12            THE COURT:  YES, SORRY.
13               MR. HOWARD, ARE YOU THERE?
14            MR. HOWARD:  YES, GOOD AFTERNOON, YOUR HONOR.
15    BENJAMIN HOWARD IS HERE.
16            THE COURT:  MR. -- I NEED MORE HELP WITH YOUR NAME
17    AGAIN.  SIR, COULD YOU PRONOUNCE IT AGAIN FOR ME?  CAN
18    YOU HEAR WHAT I'M SAYING?
19            THE CLERK:  MR. MOHAZZABI?
20            THE COURT:  MR. MOHAZZABI?  GENTLEMEN, CAN YOU
21    HEAR ME NOW?  SIR?
22            THE CLERK:  NO.  HE CAN'T HEAR YOU.
23            THE COURT:  MR. HOWARD, WE'RE HAVING A TECHNICAL
24    PROBLEM ON THIS.  WE'RE WORKING ON IT HERE.  I DON'T
25    WANT -- WE'LL NEED TO SEE IF YOU GUYS SHOULD HANG UP AND
26    CALL BACK.  BUT THE RESPONDENT CAN'T HEAR ANYTHING.  HE'S
27    NOT ABLE TO HEAR US.  SO SORRY FOR THAT, BUT JUST STAY ON
28    THE LINE, AND WE'LL GET IT FIXED.  OKAY?
```

```
 1          MR. HOWARD:  OKAY.  NO PROBLEM.

 2          THE RESPONDENT:  YOUR HONOR, I CAN HEAR.

 3          THE COURT:  DID YOU JUST START BEING ABLE TO HEAR

 4   IT JUST NOW, OR HAVE YOU HEARD IT THE WHOLE TIME?

 5          THE RESPONDENT:  YES, I CAN HEAR YOU.

 6          THE COURT:  COULD YOU HEAR THE -- WHEN YOU CAME ON

 7   AND DIALED US, COULD YOU HEAR IT RIGHT FROM THEN?  NEVER

 8   MIND.  YOU CAN HEAR US.  WE'LL LEAVE IT AT THAT.  OKAY.

 9               OKAY.  SO THE FIRST ISSUE IS THE BURDEN OF

10   PROOF.  AND -- JUST A MOMENT.  IN LOOKING AT THE STATUTE,

11   IT IS CLEAR AND CONVINCING EVIDENCE UNDER CIVIL CODE

12   527.8.

13               HAVE YOU SEEN THAT ALREADY, TOO,

14   MR. HOWARD?

15          MR. HOWARD:  YES, I HAVE, YOUR HONOR.

16          THE COURT:  DO YOU AGREE THE BURDEN IS CLEAR AND

17   CONVINCING EVIDENCE?

18          MR. HOWARD:  I DO.

19          THE COURT:  OKAY.  SO --

20          MR. HOWARD:  TO ADD TO THAT, I THINK THERE'S THE

21   CREDIBLE THREAT OF VIOLENCE WITH THAT.  I DON'T SEE THAT

22   THAT EXCLUSIVELY SAID CLEAR AND CONVINCING EVIDENCE, BUT

23   I HAVE SEEN THAT STATUTE.

24          THE COURT:  IT SAYS IT RIGHT IN THERE, (J) OF

25   527.8 AT THE END, AT (J), IT SAYS CLEAR AND CONVINCING

26   EVIDENCE.  SO -- BUT I HAVE SOME OTHER QUESTIONS.

27               SIR, WERE YOU -- DID YOU FILE A LAWSUIT FOR

28   MS. OCANA, SIR?
```

```
1          THE RESPONDENT:  ARE YOU ASKING ME, YOUR HONOR?

2          THE COURT:  YES.  WHEN I SAY, "SIR," THAT'S WHEN

3    I'M ADDRESSING YOU.

4                   HAVE YOU FILED A RESTRAINING ORDER AGAINST

5    HER?  YES OR NO?  HAVE YOU FILED A LAWSUIT AGAINST HER?

6          THE RESPONDENT:  ARE YOU ASKING ME -- I'M NOT

7    UNDERSTANDING YOUR QUESTION.

8          THE COURT:  OKAY.  MY QUESTION IS HAVE YOU FILED A

9    CASE, A LAWSUIT, AGAINST HER?  YES OR NO?

10         THE RESPONDENT:  YES, I DID ON JULY 22ND.

11         THE COURT:  OKAY.  AND WHAT IS THE CASE ABOUT?

12         THE RESPONDENT:  THE CASE IS ABOUT SHE LIED UNDER

13   OATH, AND SHE --

14         THE REPORTER:  I NEED HIM TO REPEAT THAT.

15         THE COURT:  HOLD ON FOR A MINUTE.

16                   MA'AM, I DON'T WANT TO KEEP YOU.

17

18         (UNRELATED MATTER REPORTED, NOT INCLUDED HEREIN.)

19

20         THE COURT:  OKAY.  SO WE'RE BACK, SIR.  SO THE

21   CASE THAT YOU FILED AGAINST HER WAS BECAUSE OF PERJURY?

22   IS THAT WHAT YOU SAID?

23         THE RESPONDENT:  YES.  SHE LIED UNDER PENALTY OF

24   PERJURY UNDER CALIFORNIA LAW.

25         THE COURT:  HOW DID SHE LIE?  BY ORAL OR WRITING?

26   WHAT WAS IT?

27         THE RESPONDENT:  BY WRITING.

28         THE COURT:  AND WHAT DID SHE WRITE THAT YOU
```

BELIEVE WAS A LIE?

      THE RESPONDENT:  ARE YOU ASKING ME, SIR?

      THE COURT:  YES.  YES.

      THE RESPONDENT:  COULD YOU REPEAT IT AGAIN.
SORRY.

      THE COURT:  YES, MY QUESTION IS WHAT DID SHE WRITE
THAT WAS A LIE?

      THE RESPONDENT:  SHE WROTE THAT SHE HAD GOT A
VIDEO FROM ME THAT I WAS WITHDRAWING THE MONEY THAT WAS
NOT -- IT WAS A LIE.  SHE HAS SAID THAT SHE HAD GOT TWO,
THREE VIDEOS OF THE -- VIDEO FROM ME THAT I'M WITHDRAWING
MONEY FROM A BRANCH IN LAS VEGAS THAT SHE COULD NOT --
SHE LIED BECAUSE SHE DID NOT HAVE MORE THAN TWO VIDEOS
WHICH IS -- AND THE POLICE ALSO SAID INVESTIGATION FROM
WELLS FARGO BANK THEY REPORTED TO POLICE THAT THERE IS NO
VIDEO.

      THE COURT:  SIR, PLEASE STOP.  HAVE YOU ALSO FILED
A LAWSUIT AGAINST WELLS FARGO BANK?

      THE RESPONDENT:  YES, I DID, SIR.  I DID, YOUR
HONOR.

      THE COURT:  WHAT ARE YOU SUING THEM FOR?

      THE RESPONDENT:  I'M NOT SUING THE BANK AT ALL.  I
DON'T HAVE ANY BUSINESS WITH THE BANK.  I DON'T KNOW WHY
THE BANK, AND THEY ARE MISREPRESENTING HER BECAUSE THEY
ARE NOT --

      THE COURT:  STOP.  SIR, STOP PLEASE.  BOTTOM LINE
IS YOU'RE SAYING YOU HAVE NOT SUED THE BANK; IS THAT
CORRECT?

1    THE RESPONDENT:  YES.

2    THE COURT:  AND, MR. HOWARD, IS THAT ACCURATE?

3    MR. HOWARD:  NO, YOUR HONOR.

4    THE COURT:  HAS HE FILED --

5    MR. HOWARD:  YES, I APOLOGIZE.  HE FILED AN ACTION

6  IN NEVADA STATE COURT WHICH WAS MOVED TO FEDERAL COURT

7  AND THEN COMPELLED TO ARBITRATION.  IN ARBITRATION,

8  MS. OCANA AUTHENTICATED OUR EVIDENCE AND SIGNED A

9  DECLARATION.

10    MR. MOHAZZABI IS NOW CLAIMING THAT SHE

11  COMMITTED PERJURY IN HER DECLARATION, AND THAT'S THE

12  REASON FOR HIS NEWEST COMPLAINT AGAINST MS. OCANA.  THE

13  ARBITRATION AGAINST WELLS FARGO HAS BEEN DISMISSED.  THE

14  ARBITRATOR GRANTED OUR MOTION FOR SUMMARY JUDGMENT BASED

15  ON ALL THE EVIDENCE.  SO NOW MR. MOHAZZABI HAS TURNED TO

16  THE DECLARANT PERSONALLY TO SUE HER.

17    THE COURT:  OKAY.  AND THERE WERE PLEADINGS FILED

18  WHEN THE CASE WAS STARTED?

19    MR. HOWARD:  YES, YOUR HONOR.

20    THE COURT:  AND THAT WAS A FEDERAL CASE?

21    MR. HOWARD:  IT WAS ORIGINALLY FILED IN NEVADA

22  STATE COURT AND THEN REMOVED TO FEDERAL COURT AND THEN

23  ULTIMATELY COMPELLED INTO ARBITRATION IN CALIFORNIA.

24    THE COURT:  SIR, IS THAT RIGHT?

25    THE RESPONDENT:  YES.  IT IS RIGHT, BUT ALL THE

26  THINGS HAPPENED BECAUSE --

27    THE COURT:  SIR, PLEASE STOP.  SO IF IT IS

28  CORRECT, MY QUESTION TO YOU WAS DID YOU SUE WELLS FARGO?

1   AND YOU SAID NO.  NOW YOU'RE SAYING YES.

2         THE RESPONDENT:  NO.  NO, I DID NOT FILE THE

3   LAWSUIT ON JULY 22ND AGAINST WELLS FARGO.  I FILED THE

4   COMPLAINT AGAINST MRS. LORENA BARBA.

5         THE COURT:  YES, BUT YOU --

6               ALL RIGHT.  I AM GOING TO GRANT THE

7   REQUEST, THE WORKPLACE VIOLENCE.  AND I DON'T -- I FIND

8   THAT THERE IS CLEAR AND CONVINCING EVIDENCE IN THIS CASE.

9   SO IT MEETS THE REQUIREMENTS.

10         THE RESPONDENT:  CAN I SAY SOMETHING?

11         THE COURT:  YES, ONE LAST THING WHILE I'M WRITING

12   UP THIS DOCUMENT.  GO AHEAD.  QUICKLY.

13         THE RESPONDENT:  I SENT YOU SOME DOCUMENT WHICH IS

14   FROM AT&T THAT WAS SENT TO ME THAT I DID NOT CALL --

15         THE COURT:  SIR, WE'RE DONE.  I ALREADY MADE MY

16   DECISION.  YOU HAVE SAID YOUR VERSION.  I AM GOING TO

17   GRANT THE RESTRAINING ORDER.

18               SO I'M GOING TO GO AHEAD AND FILL OUT THE

19   FORMS NOW FOR THE ORDER.  THIS IS NOT A CRIMINAL CASE

20   THOUGH THAT WE'RE TALKING ABOUT.  THIS IS A CIVIL CASE,

21   NOT A CRIMINAL CASE.

22               ALL RIGHT.  SO AS FAR AS THE EXPIRATION

23   DATE, WHAT IS BEING REQUESTED, MR. HOWARD?

24         MR. HOWARD:  WE WOULD REQUEST A REASONABLE TIME OF

25   TWO YEARS.

26         THE COURT:  ALL RIGHT.  ALL RIGHT.  SO THE

27   RESTRAINING ORDER THAT I'M GOING TO GRANT WILL BE GOOD

28   FOR TWO YEARS.  THE STATUTE DOES ALLOW IT FOR THREE

YEARS, BUT I AGREE THAT I'M GOING TO CUT IT DOWN TO TWO

YEARS LIKE YOU WANT IT.  IF THERE ARE OTHER PROBLEMS, YOU

CAN ALWAYS TRY TO RENEW IT.  AND IF IT IS SUCCESSFUL, IT

WILL BE THE REST OF HIS LIFE THAT HE WILL HAVE THAT, BUT

I HOPE NONE OF THAT STUFF HAPPENS.  I HOPE.

THE RESPONDENT:  I HAVE GOT A QUESTION, YOUR

HONOR.

THE COURT:  NO, SIR.  WE'RE DONE WITH THE

QUESTIONS.  I'M JUST FILLING OUT THE FORMS, AND THEN

WE'LL BE FINISHED.  BUT YOU'LL BE ABLE TO HEAR WHAT I'M

PUTTING IN THE COURT ORDER THOUGH.

THE RESPONDENT:  SIR, HOW COULD I --

THE COURT:  SIR, IF YOU CONTINUE TO TALK -- SIR --

SIR, IF YOU CONTINUE TO TALK, WE'RE GOING TO HANG UP ON

YOU.  SO YOU'RE WELCOME TO STAY AND LISTEN TO THIS, BUT

IF YOU CONTINUE TO KEEP INTERRUPTING, WE'RE GOING TO TAKE

YOU OUT OF THE -- OFF THE INTERNET HERE.

MR. HOWARD, DID YOU FOLKS FILL OUT THE

WV-130 FORM?

THE CLERK:  WE DID NOT HAVE ONE.  I FILLED THAT

OUT.

THE COURT:  THE CLERK DID THAT.  OKAY.  DO YOU

HAVE THAT FORM IN FRONT OF YOU?

MR. HOWARD:  I DO, YOUR HONOR.

THE COURT:  OKAY.  SO ON PAGE NO. 2, PARAGRAPH

NO. 6(B)(1), SO 6(B)(1), IT ASKS FOR THE PETITIONER'S

EMPLOYER'S NAME.  SO WHAT DO YOU WANT -- IS THAT WELLS

FARGO?

1    MR. HOWARD:  YES, WELLS FARGO BANK, N.A. IS THE

2    OFFICIAL TITLE.

3        THE COURT:  SO I PUT IN WELLS FARGO BANK.  WAS

4    THERE SOMETHING ELSE?

5        MR. HOWARD:  YES.  COMMA, N, PERIOD, A, PERIOD,

6    FOR NATIONAL ASSOCIATION.

7        THE COURT:  ARE YOU AN EMPLOYEE OF WELLS FARGO?

8        MR. HOWARD:  I'M THE ATTORNEY FOR WELLS FARGO.

9    LORENA OCANA IS THE EMPLOYEE.

10       THE COURT:  BUT YOU HAVE YOUR OWN PRACTICE OR

11   FIRM?  BECAUSE THIS --

12       MR. HOWARD:  CORRECT.  WE ARE OUTSIDE COUNSEL.

13       THE COURT:  THIS DOES SAY THE PETITIONER SLASH

14   EMPLOYER.  AND -- BUT 6(B) SAYS THE PEOPLE WERE AT THE

15   HEARING.  SO --

16       MR. HOWARD:  CORRECT.  I WOULD BE REPRESENTING

17   WELLS FARGO.  I BELIEVE YOU CAN WRITE WELLS FARGO BANK,

18   N.A., AND I WAS THE LAWYER FOR THE EMPLOYER UNDER (B)(2).

19       THE COURT:  YES.  BUT THE REALITY IS THESE FORMS

20   WERE MADE IN 2018 BEFORE WE HAD THE ABILITY TO CALL ON

21   THE PHONE.  SO THAT'S THE PROBLEM.  YOU WERE HERE WITH

22   YOUR VOICE AND EVERYTHING ELSE AND --

23           WHAT I'M GOING TO DO TO SATISFY BOTH OF US

24   IS ON PARAGRAPH 6 -- JUST A MINUTE.  6(B)(3), YOU'LL SEE

25   THE EMPLOYEE AND THE LAWYER WHICH IS YOU.  SO I'M JUST

26   GOING TO TAKE OFF WELLS FARGO BANK, BUT WE'LL LEAVE YOUR

27   NAME IN THERE THAT YOU WERE REPRESENTING THEM.

28       MR. HOWARD:  OKAY.  THAT WORKS FOR US.

1          THE COURT:  OKAY.  ALL RIGHT.  SO ON PARAGRAPH

2     NO. 7, PERSONAL CONDUCT ORDERS -- JUST A MOMENT.  I'M

3     LOOKING AT THE WV-100 FORM AGAIN.  SO PERSONAL CONDUCT IS

4     NO. 7 PARAGRAPH.  AND -- DO YOU SEE THAT PARAGRAPH?

5          MR. HOWARD:  I DO.

6          THE COURT:  SO WHAT -- NO. 7, THE ONE THAT WE HAVE

7     ON THE ORIGINAL FORM DOESN'T HAVE MANY THINGS IN HERE.

8     SO WHAT IS BEING REQUESTED IN PARAGRAPH 7?  THIS WILL BE

9     FOR THE --

10         MR. HOWARD:  I BELIEVE IT IS IN PARAGRAPH 8 OF THE

11    WV-100.

12         THE COURT:  SO THEN THERE'S NOTHING BEING

13    REQUESTED IN PARAGRAPH 7?

14         MR. HOWARD:  I'M LOOKING AT WV-100, AND I THINK IT

15    IS SIMILAR TO THE WV-130, PARAGRAPH 7, AND WE'VE CHECKED

16    THE ASSAULT, BATTER OR ABUSE BOX ALONG WITH --

17         THE COURT:  JUST TELL ME WHAT YOU WANT.

18         MR. HOWARD:  OKAY.  PARAGRAPH 7, NO. 1, NO. 2 --

19         THE COURT:  HOLD ON A MINUTE, PLEASE.

20         MR. HOWARD:  SURE.

21         THE COURT:  SEVEN -- WE RARELY DO THESE THINGS,

22    AND THE PARTIES SHOULD BE HAVING THIS GIVEN TO THE COURT.

23    BUT IN ANY EVENT, IT IS 7(A), IT SAYS, "YOU ARE ORDERED

24    NOT TO DO THE FOLLOWING THINGS TO THE EMPLOYEE."  AND

25    RIGHT UNDER THAT, THERE IS A BOX THAT SAYS "AND TO THE

26    OTHER PROTECTED PERSON LISTED IN 4."  SO DO YOU WANT THAT

27    CHECKED?

28         MR. HOWARD:  YES, PLEASE, YOUR HONOR.  IN OUR

1  ORIGINAL FILING FOR THE TEMPORARY RESTRAINING ORDER, WE

2  LIST PEOPLE IN BOX 4, WHICH I BELIEVE IS THE ADDITIONAL

3  PROTECTED PERSONS ON THE FIRST PLACE.  IT LISTS

4  MS. OCANA'S FAMILY.

5       THE COURT:  I UNDERSTAND THAT.  I SEE THAT.  THEN

6  YOU WANT REGULAR OLD BOX NO. 1 IN NO. 7, CORRECT?

7       MR. HOWARD:  CORRECT.

8       THE COURT:  NO HARASSING, ET CETERA.  ANYTHING

9  ELSE IN BOX 7?

10      MR. HOWARD:  YES.  NO. 2.

11      THE COURT:  ALL RIGHT.

12      MR. HOWARD:  NO. 4.

13      THE COURT:  ALL RIGHT.

14      MR. HOWARD:  AND I BELIEVE THAT'S ALL WE CAN DO AT

15 THIS POINT SINCE HE ALREADY HAS THE ADDRESS OF THE

16 PETITIONER.

17      THE COURT:  SO THEN WE GO TO NO. 8, STAY AWAY

18 ORDERS.

19      MR. HOWARD:  I BELIEVE WE INDICATED 100 YARDS.

20      THE COURT:  YES.  THAT'S THE COMMON AMOUNT WE USE.

21 YOU'RE REQUESTING THAT?

22      MR. HOWARD:  YES, PLEASE.

23      THE COURT:  ANYTHING ELSE IN BOX NO. 8?

24      MR. HOWARD:  I WOULD JUST SAY THAT NUMBERS --

25 BOX 1 AND 2 BE CHECKED AS WELL.

26      THE COURT:  OKAY.  THAT'S IT --

27      MR. HOWARD:  AND BOX 4 AND 6.

28      THE COURT:  ALL RIGHT.  AS FAR AS FIREARMS?

1    MR. HOWARD:  WE HAVE NO KNOWLEDGE OF ANY FIREARMS.

2    SO I DON'T THINK THAT BOX IS RELEVANT.

3         THE COURT:  ALL RIGHT.  NO. 10?

4         MR. HOWARD:  WE'RE WILLING TO WAIVE ALL COSTS AT

5    THIS POINT.

6         THE COURT:  SO THERE'S NOT GOING TO BE ANY COSTS

7    THAT YOU HAVE TO PAY, SIR, FOR THIS AT ALL.

8         MR. HOWARD:  OKAY.

9         THE COURT:  NO. 11, LEAVE THAT BLANK?

10        MR. HOWARD:  YES, YOUR HONOR.

11        THE COURT:  14, THAT'S FOR US.  SO I'LL CHECK

12   THAT.  THAT WOULD BE 12(B) IS WHAT I HAVE CHECKED FOR

13   THINGS THE CLERKS HAVE TO DO.

14             NO. 13, I'M CHECKING NUMBER (A).  ACTUALLY,

15   NO.  THAT'S NOT RIGHT.  AGAIN, NEITHER ONE OF YOU ARE

16   HERE PHYSICALLY.  SO THAT CAUSES MORE ISSUES.  JUST A

17   MINUTE.

18        MR. HOWARD:  YOUR HONOR, IF I MAY, IT IS MY

19   UNDERSTANDING THAT APPEARING TELEPHONICALLY AND IN PERSON

20   HAS THE SAME EFFECT ON THIS KIND OF HEARING.

21        THE COURT:  MINE TOO, BUT THE FORMS DON'T MAKE

22   THAT, AND IT IS GOING TO BE CONFUSING BECAUSE THE

23   SHERIFF'S OFFICE VERY OFTEN CAN REJECT SOME OF THESE AND

24   NOT SERVE THEM.  SO -- ALL RIGHT.  I'LL JUST LEAVE IT

25   WITH (A).

26             YOU'RE BOTH GOING TO GET YOUR FORMS BY

27   MAIL.  AND THEN IF YOU WANT, YOU CAN MAKE A COPY OF YOURS

28   AND SEND THAT OVER TO THE RESPONDENT.

1              (THE COURT AND CLERK CONFER OFF THE RECORD.)

2

3         THE COURT:  SO THAT COMPLETES IT.  ANYTHING ELSE,

4    MR. HOWARD?

5         MR. HOWARD:  NOTHING FROM ME, YOUR HONOR.

6         THE COURT:  ALL RIGHT.  SO I'M GOING TO END THE

7    CALL THEN, AND THE PAPERS WILL BE COMING OUT TO BOTH

8    SIDES.

9         THE RESPONDENT:  AM I GOING TO HAVE THE RIGHT TO

10   SAY ONE OBJECTION?  ONE OBJECTION?

11        THE COURT:  ONE MORE THING, YES, SIR.  GO AHEAD.

12        THE RESPONDENT:  BASED ON A CALL THAT I GOT FROM

13   MY PROVIDER, AT&T, WHICH I SEND YOU A COPY, I NEVER

14   CALLED MRS. LORENA BARBA.  I NEVER CALLED.  THE FORM IS

15   HERE, AND I SENT YOU A COPY.

16        THE COURT:  THANK YOU.  SO THAT'S -- WE'RE GOING

17   TO END THE CALL NOW.  AND I HOPE THINGS GO WELL FOR BOTH

18   OF YOU FOLKS.  THANK YOU.  THAT'S IT.

19        MR. HOWARD:  THANK YOU, YOUR HONOR.

20        THE COURT:  SIR, YOU CAN GO AHEAD AND HANG UP NOW.

21   WE'RE GOING TO -- SIR, WE'RE GOING TO CUT YOU OFF NOW.

22   AND THAT'S IT.  GOODBYE.

23

24             (AT 3:05 P.M. THE PROCEEDINGS WERE CONCLUDED.)

25

26

27

28

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT K                    HON. JOHN A. SLAWSON, JUDGE

4

5    WELLS FARGO BANK, N.A.,          )
                                      )
6              PETITIONER(S),         )
                                      )
7              VS.                    )  CASE NO. 20PSRO00945
                                      )
8    BEHROOZ MOHAZZABI,               )
                                      )
9              RESPONDENT(S).         )
     ─────────────────────────────   )

10

11

12              I, CAROL S. HERRERA, CSR NO. 8735, OFFICIAL

13   REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

14   FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

15   FOREGOING PAGES, 1 THROUGH 38, INCLUSIVE, COMPRISE A FULL,

16   TRUE, AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HELD IN

17   THE ABOVE-ENTITLED MATTER ON THURSDAY, SEPTEMBER 3, 2020.

18

19              DATED THIS_____DAY OF_____, 2020.

20

21

22   _____, CSR 8735
     CAROL S. HERRERA, CSR NO. 8735
23   OFFICIAL REPORTER

24

25

26

27

28

# Exhibit 6

1   MARK I. WRAIGHT (State Bar No. 228303)
    BENJAMIN J. HOWARD (State Bar No. 320682)
2   BJH@severson.com
    SEVERSON & WERSON
3   A Professional Corporation
    One Embarcadero Center, Suite 2600
4   San Francisco, California 94111
    Telephone: (415) 398-3344
5   Facsimile: (415) 956-0439

6
    Attorneys for Respondent
7   WELLS FARGO BANK, N.A.

8              **AMERICAN ARBITRATION ASSOCIATION**

9   BEHROOZ MOHAZZABI,                    Case No. 01-19-0003-2880

10            Claimant,                   **DECLARATION OF LORENA BARBA
                                          OF WELLS FARGO RE "BRANCH
11        vs.                             VIDEO" PURSUANT TO MARCH 10,
                                          2020 ORDER**
12  WELLS FARGO BANK, N.A.,

13            Respondent.

14

15

16        I, Lorena Barba, state and declare as follows:

17        1.   I have been employed by Wells Fargo Bank, N.A. for over 16 years.  I am currently

18  employed as a Fraud and Claims Ops Specialist at Wells Fargo Bank, N.A. ("Wells Fargo" or

19  "Bank"). I make this declaration on behalf of Wells Fargo Bank, N.A. in response to the

20  Arbitrator's March 10, 2020 Order which states in relevant part:

21        The Bank is instructed to include within its production the "branch video . . .
          obtained of the disputed transaction" that is referred to both in the letter dated
22        November 21, 2016 from Lorena Barba to Claimant (Appendix 4 to Claimant's
          submission) and in the letter dated January 9, 2017 from Gregory G. Hopkin to
23        Claimant (Appendix 5 to 2 Claimant's submission). If the referenced branch video
          is not available for production, the Bank is instructed to provide a declaration under
24        penalty of perjury by a Bank employee with personal knowledge as to why the
          video is not available for production.
25
          2.   Based on my 16 years of employment with the Bank, and in my capacity as a Fraud
26
    and Claims Ops Specialist, I am personally familiar with the Bank's policies, procedures, and
27
    practices relating to the use of surveillance cameras in branches.  Moreover, I am personally
28

07685.2360/15302546.1

**DECLARATION OF LORENA BARBA  OF WELLS FARGO RE "BRANCH VIDEO" PURSUANT TO
MARCH 10, 2020 ORDER**

1   familiar with the system of records maintained by Wells Fargo for recording data from in-branch

2   surveillance cameras. Part of my duties as a Fraud and Claims Ops Specialist include obtaining

3   copies of the data recorded by the cameras.

4          3.      All Wells Fargo branches have multiple surveillance cameras. The number of

5   cameras and the locations of the cameras vary from branch to branch. However, all branches have

6   cameras focused on the teller windows. The surveillance cameras are always recording – 24 hours

7   a day, seven days a week. Data from the cameras are saved to a network video recorder ("NVR").

8   The NVR is physically located inside each branch. Data saved to the NVR can be accessed

9   remotely through a network. Data is generally saved on the NVR for a period of 90 days. Older

10  surveillance video is converted into transactional snapshots, (still images), and eventually

11  overwritten altogether. Data from the NVR is not backed-up. Moreover, the surveillance system

12  does not record audio.

13         4.      In mid-November 2016, I was assigned to research Mr. Mohazzabi's claim relating

14  to an alleged unauthorized withdrawal. In connection with my work on the claim, I requested and

15  was provided transactional snapshots from the Wells Fargo Tower Branch.

16         5.      Attached hereto as Exhibit A are true and correct copies of transactional snapshots

17  from the NVR at the Wells Fargo Tower Branch from October 25, 2016. Additional data recorded

18  from the in-branch surveillance cameras is no longer available – it was likely overwritten in early

19  2017.

20         6.      Attached hereto as Exhibit B are true and correct copies of transactional snapshots

21  from the NVR at the Wells Fargo Tower Branch from October 27, 2016. Additional data recorded

22  from the in-branch surveillance cameras is no longer available – it was likely overwritten in early

23  2017.

24         7.      Attached hereto as Exhibit C are true and correct copies of transactional snapshots

25  from the NVR at the Wells Fargo Tower Branch from October 28, 2016. Additional data recorded

26  from the in-branch surveillance cameras is no longer available – it was likely overwritten in early

27  2017.

28

1    8.   Attached hereto as Exhibit D are true and correct copies of transactional snapshots
2  from the NVR at the Wells Fargo Tower Branch from October 29, 2016.  Additional data recorded
3  from the in-branch surveillance cameras is no longer available – it was likely overwritten in early
4  2017.
5    9.   The images comprising Exhibits A-D were originally obtained as part of the
6  research into Mr. Mohazzabi's claim, which was filed on November 15, 2016.
7    10.   As part of my work on Mr. Mohazzabi's claim, I prepared and sent him a letter
8  dated November 21, 2016.  In that letter I wrote "… branch video was obtained …" My reference
9  to "video" was intended to refer to the transactional snapshots (i.e. still images) attached hereto.
10  As far as I know, video in the traditional sense of a moving image was not obtained from the
11  Wells Fargo Tower Branch from October 2016. I never received moving images, but only still
12  images attached hereto.
13    I declare under penalty of perjury under the laws of California and the United States that
14  the foregoing is true and correct. Executed at El Monte, California this 31st day of March.
15
16
17    LORENA BARBA
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A







Appliance: AU 00052 4th & Brannan
Camera: 4, IP2 Teller 4
Time: 10/26/2016 1:30:42 PM

Transaction
ATM/Teller ID: x077
Type: T100
Sequence: 0040
Cashline: 02
Account Number: XXXXXX3494
Date: 10/26/2016
Time: 13:30:39
Mapped: yes
Text: SD0492CF4E01448





Appliance: AU 00052 4th & Brennen
Camera: 4, IP2 Teller 4
Time: 10/25/2016 1:30:48 PM

Transaction
ATM/Teller ID: x077
Type: T100
Sequence: 0040
Cashline: 02
Account Number: XXXXXX3494
Date: 10/25/2016
Time: 133039
Mapped: yes
Text: 50040CF4ED1448

# EXHIBIT B



Appliance: AU 06482-1 Spring
Mountain Arvile
Camera: 5, IP5 Teller 5
Time: 10/27/2016 4:53:28 PM

Motion Event



Appliance: AU 06482-1 Spring

Mountain Arville

Camera: 5, IP3 Teller 5

Time: 10/27/2016 4:53:28 PM

Motion Event



Appliance: AU 0648-2-1 Spring
Mountain Arville
Camera: 5, IP3 Teller 5
Time: 10/27/2016 4:53:32 PM

Motion Event

# EXHIBIT C

Transaction
ATM/Teller ID: x079
Type: T100
Sequence: 0018
Cashline: 01
Account Number: XXXXX3494
Date: 10/28/2016
Time: 10:20:10
Mapped: yes
Text: SD00023472C74D



Appliance: AU 06457 Las Vegas Tower
Camera: 6, IP3 Teller 6
Time: 10/28/2016 10:20:15 AM

Transaction
ATM/Teller ID: x079
Type: T100
Sequence: 0018
Cashline: 01
Account Number: XXXXXX3494
Date: 10/28/2016
Time: 10:20:18
Mapped: yes
Text: SD000323472C74D



Appliance: AU 05467 Las Vegas Tower
Camera: 6, IP3 Teller 6
Time: 10/28/2016 10:20:18 AM

Transaction
ATM/Teller ID: x079
Type: T100
Sequence: 0018
Cashline: 01
Account Number: XXXXX3494
Date: 10/28/2016
Time: 10/28/16
Mapped: yes
Text: SD00232472C74D



Appliance: AU 06457  Las Vegas Tower
Camera: 6, IP3 Teller 6
Time: 10/28/2016 10:20:21 AM

Transaction
ATM/Teller ID: x079
Type: T100
Sequence: 0918
Cashline: 01
Account Number: XXXXXX3494
Date: 10/28/2016
Time: 10:20:18
Napped: yes
Text: SD0023472C74D



Appliance: AU 00457  Las Vegas Tower
Camera: 6, IP3 Teller 6
Time: 10/28/2016 10:20:24 AM

Transaction
ATM/Teller ID: x079
Type: T100
Sequence: 0018
Cashline: 01
Account Number: XXXXXX3494
Date: 10/28/2016
Time: 10:20:18
Mapped: yes
Text: SD0002324472C74D



Appliance: AU 08457 Las Vegas Tower
Camera: 6. IP3 Teller 6
Time: 10/28/2016 10:20:27 AM

Transaction
ATM/Teller ID: x068
Type: T100
Sequence: 0044
Cashline: 05
Account Number: XXXXX3494
Date: 10/28/2016
Time: 12:06:43
Mapped: yes
Text: SD000232473E2A3



Imagine what business credit can do for you

Appliance: AU 06457 Las Vegas Tower
Camera: 2, IP1 Teller 2
Time: 10/28/2016 12:06:40 PM



Transaction
ATM/Teller ID: x068
Type: T100
Sequence: 0044
Cashline: 05
Account Number: XXXXXX3494
Date: 10/28/2016
Time: 12:06:43
Mapped: yes
Text: SD0002324/73E2A3

Imagine what
business
credit can do
for you.

Appliance: AU 06457 Las Vegas Tower
Camera: 2, IP: Teller 2
Time: 10/28/2016 12:06:43 PM

Transaction
ATM/Teller ID: x068
Type: T100
Sequence: 0044
Cashline: 05
Account Number: XXXXX3494
Date: 10/28/2016
Time: 12:06:43
Mapped: yes
Text: 50000232473E2A3



Imagine what
business
credit can do
for you

Appliance: AU 06497 Las Vegas Tower
Camera: 2, IP1 Teller 2
Time: 10/28/2016 12:06:46 PM

Transaction
ATM/Teller ID: x068
Type: T100
Sequence: 0044
Cashline: 05
Account Number: XXXXX3494
Date: 10/26/2016
Time: 12:06:43
Mapped: yes
Text: SD00023247324A3



Imagine what
business
credit can do
for you.

Appliance: AU 06457  Las Vegas Tower
Camera: 2, IP1 Teller 2
Time: 10/26/2016 12:06:49 PM



Transaction
ATM/Teller ID: x068
Type: T100
Sequence: 0044
Cashline: 05
Account Number: XXXXXX3494
Date: 10/28/2016
Time: 12:06:43
Mapped: yes
Text: SD000232473E2A3

Imagine what
business
credit can do
for you

Appliance: AU 08457 Las Vegas Tower
Camera: 2, IP1 Teller 2
Time: 10/28/2016 12:08:52 PM

# EXHIBIT D



Appliance: AU 06483 Maryland Parkway
Camera: 3, IP2 Teller 3
Time: 10/29/2016 10:41:11 AM

Transaction
ATM/Teller ID: x683
Type: T400
Sequence: 0029
Cashline: 11
Account Number: XXXXXX3494
Date: 10/29/2016
Time: 10:52:05
Mapped: yes
Text: 5D9AC162D0092D0



Appliance: AU 06483 Maryland Parkway
Camera: 3, JP2 Teller 3
Time: 10/28/2016 10:41:14 AM

Transaction
ATM/Teller ID: x083
Type: T400
Sequence: 0039
Cashline: 11
Account Number: XXXXXX3494
Date: 10/28/2016
Time: 10:52:06
Mapped: yes
Text: SD0AC162D0092D0



Appliance: AU 05/63 Maryland Parkway
Camera: 3. IP2 Teller 3
Time: 10/28/2016 10:41:17 AM

Transaction
ATM/Teller ID: x083
Type: T400
Sequence: 0029
Cashline: 11
Account Number: XXXXX3494
Date: 10/28/2016
Time: 10:52:05
Mapped: yes
Text: SD/AC16ZD0/09200



Appliance: AU 06463 Maryland Parkway
Cameras: 3, IP2 Teller 3
Time: 10/29/2016 10:41:20 AM

Transaction
ATM/Teller ID: x883
Type: T450
Sequence: 0029
Cashline: 11
Account Number: XXXXXX3494
Date: 10/29/2016
Time: 10:52:05
Mapped: yes
Text: SO5AC162D0092D0



Appliance: AU 08463 Maryland Parkway
Camera: 3 IP2 Teller 3
Time: 10/29/2016 10:41:23 AM

Transaction
ATMrTeller ID: x083
Type: T400
Sequence: 0029
Cashline: 11
Account Number: XXXXX3494
Date: 10/29/2016
Time: 10:52:06
Mapped: yes
Text: SD/AC162D009200



Appliance: AU 08463 Maryland Parkway
Camera: 3.IP2 Teller 3
Time: 10/29/2016 10:43:15 AM

Transaction
ATM/Teller ID: x083
Type: T631
Sequence: 0030
Cashline: 1
Account Number: XXXXXX3494
Date: 10/29/2016
Time: 10:54:09
Mapped: yes
Text: 5D5AC192D009200



Appliance: AU 06463 Maryland Parkway
Camera: 3, IP2 Teller 3
Time: 10/29/2016 10:43:19 AM

Transaction
ATM/Teller ID: x083
Type: TI31
Sequence: 0030
Cashline: 11
Account Number: XXXXXX3494
Date: 10/29/2016
Time: 10:54:09
Mapped: yes
Text: SO3AC162D0039ZD0



Appliance: AT0 08463 Maryland Parkway
Camera: 3, IP2 Teller 3
Time: 10/29/2016 10:43:21 AM

Transaction:
ATM/Teller ID: x083
Type: T631
Sequence: 0030
Cashline: 11
Account Number: XXXXXX3494
Date: 10/29/2016
Time: 10:54:09
Mapped: yes
Text: 50/AC16ZD0092D0



Appliance: AU 05463 Maryland Parkway
Camera: 3, IP2 Teller 3
Time: 10/29/2016 10:43:24 AM

Transaction
ATM/Teller ID: x083
Type: T831
Sequence: 0030
Cashline: 11
Account Number: XXXXXX3494
Date: 10/29/2016
Time: 10:54:09
Mapped: yes
Text: SC0AC1620093D0



Appliance: AU 05453 Maryland Parkway
Camera: 3, IP2 Teller 3
Time: 10/29/2016 10:43:27 AM

Transaction
ATM/Teller ID: x683
Type: T631
Sequence: 0030
Cashline: 11
Account Number: XXXXX5494
Date: 10/29/2016
Time: 10:54:09
Mapped: yes
Text: SD5AC16200092D0

# Exhibit 7

Lorena Barba,

Financial Crimes Specialist

P.O.Box 5810

MAC E2001-913

El Monte ca 91784-1810

In ref. to your letter dated Nov. 28, 2016 and our Telephone conversation I would Like to respond followings:

The Branch (Tower Building Branch) with possible connection with the help of others..?? In Wells Fargo Bank, used illegal use of my Ca State issued Driver's Licence without my present to withdraw $20,000.00 from my account on the afternoon of Oct. 28, 2016.

In your letter dated Nov. 2016 stated "Furthermore, Branch video was obtained of the disputed transactions and upon reviewing the branch video, Personal Banker JASON PAUL DAVIS othe MISSION BAY BRANCH WHICH LOCATED 266 KING ST. SAN FRANCISCO CA 94107 has identified you as performing transaction.". Your statement is completely misleading, untrue but also has bad intention of elderly abuse, but it is also malicing embedded with bad faith and harassment, and totally false accusation. Which is obviously crime.

you used the Pictures (not video as you mentioned in your letter) of my withdrawal of Oct. 27, 2016 for morning Oct. 28, 2016. Which I withdraw $20,000.00, I asked you "have checked time versus videos" which you responded "yes", which is very untrue, since I withdraw $28,000.00 on the morning of Oct. 28 , but if you would have had seen the video of picture for the morning Oct. 28 that you emailed to the Branch in San Francisco clearly shows I got $20,000.00.

During our tel. Conversation, I requested you the video of Oct. 27, 2016, which still I do not know your position.

There was no conversation between me and Mr. Jason Paul Davis, except my comment "I did not know that my hair could grow that fast in 2 hours". But when I received your letter I went back to him to cross check that you emailed pictures not videos to him.

I went to that particular (Tower Building) Branch in Las Vegas only two times, first time was on Oct 27, 2016 and the second time was on the morning (10:20 AM) Oct 28, 2016. But you are trying to replace the evidence of my withdraw on Oct 27 with my withdraw for the morning of Oct. 28, 2016, and replacing my actual withdrawal of morning Oct. 2016 for withdraw (stolen) $20,000.00 by The Branch. I am sure you know this is serious crime, but do you know this kind action is heartbreaking, some people like me at age 72, cannot take it, and will hurt him mentally and physically.

God Bless you

Behrooz mohezzabi

My email address: Brucemohazzabi@gmail.com Tel: (650)495-0694

12 – 28 – 2016

APPENDIX 8

# Exhibit 8

12/3/2019

M Gmail                                    bruce mohazzabi <brucemohazzabi@gmail.com>

## copy of detective Craig
1 message

bruce mohazzabi <brucemohazzabi@gmail.com>                    Mon, Feb 5, 2018 at 1:36 AM
To: gwf@fdlawlv.com

Hello Gus,
 following is the copy of the emails of Detective Craig to me.

———— Forwarded message ————
From: Craig MacGregor <C6256M@lvmpd.com>
Date: Fri, Feb 3, 2017 at 2:05 PM
Subject: RE: Send data from MFP07927661 02/03/2017 12:52
To: bruce mohazzabi <brucemohazzabi@gmail.com>

I'm glad to hear that they are compensating you back the money.

I had two WF investigators confirm that there was no surveillance
video of the $20,000 withdrawal on the afternoon of the 28th so there
is no way to know who the suspect is.

        bruce mohazzabi <brucemohazzabi@gmai        4/21/17
        l.com>

        to Craig

    Thank you for your email, could you please kindly provide me the full
    name of two people you talked to from Wells Fargo investigation team.
    Respectfully

        Craig MacGregor <C6256M@lvmpd.com>        4/21/17

        to me

    Translate message
    Turn off for: English
    Bruce, I do not have their last names but I do have their first names and contact
    numbers:

    Wells Fargo Investigators:
    Theresa: 702-368-5781
    Jennifer: 702-368-5785

                                        APPENDIX 6

Exhibit 9

# APPENDIX 1

 Gmail                                    bruce mohazzabi <brucemohazzabi@gmail.com>

---

**Fw: Wells Fargo Store Transaction Record**
1 message

**behrooz, behrooz mohazzabi, mohazzabi** <bmohazzabi@yahoo.com>          Tue, Apr 14, 2020 at 7:59 PM
To: Bruce Mohazzabi <brucemohazzabi@gmail.com>

----- Forwarded Message -----
**From:** Wells Fargo Online <alerts@notify.wellsfargo.com>
**To:** "bmohazzabi@yahoo.com" <bmohazzabi@yahoo.com>
**Sent:** Tuesday, October 25, 2016, 1:32:52 PM PDT
**Subject:** Wells Fargo Store Transaction Record

wellsfargo.com



## Your store transaction record

Here is the electronic transaction record you requested from a Wells Fargo store.

```
        Wells Fargo Bank
        Transaction Receipt


Store #0000052 2              Cash Chk


                     Check Amount(s)

                  $15,000.00

  Check(s) Total    $15,000.00


     Fee Total      $0.00

  Loose Currency
  $100                $15,000.00
    Sub total         $15,000.00
        Cash Paid to Customer
                      $15,000.00


Transaction # 033 0040
01:30PM  10/25/16


Thank you, ROCKY
```

# APPENDIX 2

**Withdrawal/Retiro:**

7279

WELLS FARGO

(Check One)
(Marque uno)   ☑ Checking/Cuenta de Cheques   ☐ Savings/Ahorros   ☐ Money Market Access   ☐ Command

Account Number/
Numero de cuenta

✱ 857 448 5814

Date/Fecha  25 Oct 2016

I authorize this withdrawal from the account listed above. I acknowledge that Please sign in teller's presence for cash back. Two forms of ID may be required.

Please print Name / Letra de imprenta: Nombre

Behrooz Mohazzab.

Please print: Street Address, City, State, Zip Code / Letra de imprenta: Dirección, Ciudad, Estado, Código Postal

X. Behrooz

00/00                                    $ 15000.—

Fifteen thousand                         Dollars

---

If you have questions, please call us at 1-800-TO-WELLS (1-800-869-3557). We're available 24 hours a day, 7 days a week.

wellsfargo.com | Fraud Information Center

Please do not reply to this email directly.

e7cbde6b-54e5-4b0a-a19c-fc16abcb5ed2

APPENDIX 3

 **Gmail**

bruce mohazzabi <brucemohazzabi@gmail.com>

---

## Fw: 10/25 - Transportation Request
1 message

Tue, Apr 21, 2020 at 9:37 PM

behrooz, behrooz mohazzabi, mohazzabi <bmohazzabi@yahoo.com>
To: Bruce Mohazzabi <brucemohazzabi@gmail.com>

----- Forwarded Message -----
**From:** Howard, Katlyn <katlyn.howard@wynnlasvegas.com>
**To:** "maryann.pascal@wynnlasvegas.com" <maryann.pascal@wynnlasvegas.com>; "anika.frazier@wynnlasvegas.com"
<anika.frazier@wynnlasvegas.com>; "Transportation@wynnmacau.com"
**Cc:** "Joglaine.Owensolivier@wynnlasvegas.com" <Joglaine.Owensolivier@wynnlasvegas.com>;
"bmohazzabi@yahoo.com" <bmohazzabi@yahoo.com>
**Sent:** Tuesday, October 25, 2016, 5:43:37 PM PDT
**Subject:** RE: 10/25 - Transportation Request

The guests cell phone number is: 650-495-0894. I attempted to call him once again, and no answer.

He stated he would be arriving around 7pm?

KATLYN HOWARD
VIP Services Assistant Manager

WYNN LAS VEGAS
3131 Las Vegas Blvd. South, Las Vegas, NV 89109
tel (702) 770-4051 fax (702) 770-1952

Katlyn.Howard@wynnlasvegas.com



**From:** Pascal, Maryann
**Sent:** Tuesday, October 25, 2016 5:41 PM
**To:** Frazier, Anika <anika.frazier@wynnlasvegas.com>; Howard, Katlyn <Katlyn.Howard@wynnlasvegas.com>;
Transportation <Transportation@wynnmacau.com>; 'bmohazzabi@yahoo.com'
**Cc:** Owens - Olivier, Joglaine <Joglaine.Owensolivier@wynnlasvegas.com>;

APPENDIX 4

 **Gmail**

bruce mohazzabi <brucemohazzabi@gmail.com>

## Fw: Behrooz Mohazzabi's 10/25 Las Vegas trip (BBB22D): Your reservation is confirmed.

1 message

behrooz, behrooz mohazzabi, mohazzabi <bmohazzabi@yahoo.com>
To: Bruce Mohazzabi <brucemohazzabi@gmail.com>

Tue, Apr 21, 2020 at 9:33 PM

----- Forwarded Message -----
**From:** Southwest Airlines <southwestairlines@ifly.southwest.com>
**To:** "bmohazzabi@yahoo.com" <bmohazzabi@yahoo.com>
**Sent:** Sunday, April 12, 2020, 5:54:17 PM PDT
**Subject:** Behrooz Mohazzabi's 10/25 Las Vegas trip (BBB22D): Your reservation is confirmed.

Here's your itinerary and other important travel information.
View our mobile site | View in browser

**Southwest** ❤️          Manage Flight | Flight Status | My Account



**Hi Behrooz,**

We're looking forward to flying together! It can't come soon enough. Below you'll find your itinerary, important travel information, and trip receipt. See you onboard soon!

**OCTOBER 25 - OCTOBER 28**

# SFO ✈ LAS

San Francisco to Las Vegas

| | |
|---|---|
| Confirmation # **BBB22D** | Confirmation date: 10/29/2016 |
| **PASSENGER** | **Behrooz Mohazzabi** |
| RAPID REWARDS # | 283182572 |
| TICKET # | 5262458987903 |
| EXPIRATION[1] | October 25, 2017 |
| EST. POINTS EARNED | 0 |

Rapid Rewards® points are only estimations.

## Your itinerary

Flight 1:       Tuesday, 10/25/2016       Est. Travel Time: 1h 30m

|  | **DEPARTS** | | **ARRIVES** |
|---|---|---|---|
| FLIGHT # 2447 | **SFO 05:20**PM |  | **LAS 06:50**PM |
| | | | Las Vegas |

APPENDIX 5

Flight 2:        Friday, 10/28/2016    Est. Travel Time: 1h 30m

FLIGHT      **DEPARTS**                          **ARRIVES**
# 2212      **LAS 12:40**PM                      **SFO 02:10**PM
            Las Vegas                            San Francisco

## Payment information

Total cost

| | | | Payment |
|---|---|---|---|
| **Air - BBB22D** | | | **Mastercard ending in 3213** |
| Base Fare | $ | 156.06 | Date: October 25, 2016 |
| Exclse Taxes | $ | 11.70 | **Payment Amount: $195.96** |
| Segment Fee | $ | 8.00 | |
| Passenger Facility Charge | $ | 9.00 | |
| Security Fee | $ | 11.20 | |
| **Total** | $ | **195.96** | |

Fare Rules: If you decide to make a change to your current Itinerary it may result In a fare increase. In the case you're left with travel funds from this confirmation number, you're In luck! We're happy to let you use them towards a future flight for the individual named on the ticket, as long as the new travel Is completed by the expiration date.

Your ticket number: 5262458987903

## Prepare for takeoff

### Download the Southwest® app now.
### Get Free inflight entertainment.



For free movies[1], TV[2], music[2], messaging[3], plus all your travel details, be sure you have our app before your flight.

 

 **24 hours** before your departure:
Check-in on Southwest.com® or using the Southwest Mobile App. Use your mobile device and receive a mobile boarding pass.

 **30 minutes** before your departure:
Arrive at the gate prepared to board.

 **10 minutes** before your departure:
This is the last opportunity to board your flight if you are present in the gate area and have met all check-in requirements.

**If you do not plan to travel on your flight:** Things happen, we understand! Please let us know at least 10 minutes prior to your flight's scheduled departure if you won't be traveling. If you don't notify us, you may be subject to our No Show Policy.

See more travel tips

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Behrooz Mohazzabi
766 Edgewater Blvd, Apt 104
Foster City, CA 94404

TELEPHONE NO.: (925) 368-0757     FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, 94102
BRANCH NAME: San Francisco Courthouse

NO SUMMONS ISSUED
FILED
San Francisco County Superior Court
MAY 03 2021
CLERK OF THE COURT
BY: _____
Deputy Clerk

CASE NAME: Behrooz Mohazzabi, an individual v. Wells Fargo Bank

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CGC 21-591218 |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 7
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: April 6, 2021

Behrooz Mohazzabi
(TYPE OR PRINT NAME)     ▶ /s/ Behrooz Mohazzabi
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use  Judicial Council of California  CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;  Cal. Standards of Judicial Administration, std. 3.10  *www.courtinfo.ca.gov* |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or*
  *toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil*
  *harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36) Other
  Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer*
      *or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally*
  *complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex*
  *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-*
    *domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
  *above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-*
    *harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified*
  *above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]   **CIVIL CASE COVER SHEET**   Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com